**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | **Bankruptcy No. 24-70275-JAD** |
| | ) | |
| **STEVE ANGELO MARITAS,** | ) | **Chapter 7** |
| | ) | |
| Debtor. | ) | **Related to ECF No. 32** |
| ———————————————X | | |
| | ) | |
| **INTERNATIONAL UNIONS,** | ) | |
| **SECURITY, POLICE AND FIRE** | ) | |
| **PROFESSIONALS OF AMERICA;** | ) | |
| **DAVID L. HICKEY;** | ) | |
| **& JOSEPH MCCRAY,** | ) | |
| | ) | |
| **Movants,** | ) | |
| | ) | |
| -vs.- | ) | |
| | ) | |
| **STEVE ANGELO MARITAS,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| ———————————————X | | |
| | ) | **Bankruptcy No. 24-70277-JAD** |
| IN RE: | ) | |
| | ) | **Chapter 7** |
| **LAW ENFORCEMENT OFFICERS** | ) | |
| **SECURITY UNION,** | ) | **Related to ECF No. 27** |
| | ) | |
| Debtor. | ) | |
| ———————————————X | | |
| | ) | |
| **INTERNATIONAL UNIONS,** | ) | |
| **SECURITY, POLICE AND FIRE** | ) | |
| **PROFESSIONALS OF AMERICA;** | ) | |
| **DAVID L. HICKEY;** | ) | |
| **& JOSEPH MCCRAY,** | ) | |
| | ) | |
| **Movants,** | ) | |
| | ) | |
| -vs.- | ) | |
| | ) | |
| **LAW ENFORCEMENT OFFICERS** | ) | |
| **SECURITY UNION,** | ) | |
| | ) | |

**Respondent.**                    )
_____**X**

## MEMORANDUM OPINION

Pending before this Court are two motions each titled *Motion of International Unions, Security Police and Fire Professionals of America, David L. Hickey its International President, and Joseph McCray for Abstention and Relief From the Automatic Stay Pursuant to 11 U.S.C. §362(d)* (individually referred to as the "Maritas Motion For Relief From Stay" and the "LEOSU Motion For Relief From Stay," and together, the "Motions").[1] For the reasons set forth below, the Court shall enter orders granting relief from the automatic stay as requested by the Motions.

## I.
## GENERAL BACKGROUND

Debtors, Steve Angelo Maritas ("Debtor Maritas") and the Law Enforcement Officers Security Union ("Debtor LEOSU") (collectively, the "Debtors") each filed for chapter 7 bankruptcy relief on July 8, 2024. These filings were made on the eve of a jury trial in the United States District Court for the Eastern District of Michigan (the "Federal Lawsuit"), involving claims of defamation, tortious interference, and trademark infringement brought by the International Union, Security Police and Fire Professionals of America ("SPFPA"), its International

---

[1] This Court has the requisite subject-matter jurisdiction to hear and decide the Motions on a final basis. See *Order of Reference* entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984, and 28 U.S.C. §§ 157(b)(1), 157(b)(2)(G), and 1334.

President David L. Hickey ("Hickey"), and Joseph McCray (collectively, the "Movants" or "SPFPA Parties").

In addition to the Federal Lawsuit, the SPFPA Parties have also brought related claims in two state court proceedings: the Michigan Lawsuit and the Hawaii Lawsuit (collectively, the "State Lawsuits"). These lawsuits involve similar allegations of defamation and intentional torts against Debtor Maritas, Debtor LEOSU, and various non-debtor individuals and entities.

The SPFPA Parties seek relief from the automatic stay under 11 U.S.C. § 362(d)(1), arguing that "cause" exists to allow the pre-petition litigation to proceed in the non-bankruptcy forums. They also request abstention under 28 U.S.C. § 1334(c)(1), to allow the State Lawsuits to be resolved in the state courts where they were filed, citing principles of judicial economy and comity.

Debtor Maritas asserts that the purpose of his bankruptcy filing is to discharge his debts under 11 U.S.C. § 727. However, the SPFPA Parties have filed a non-dischargeability action in Adversary Proceeding No. 24-70275-JAD, contending that Debtor Maritas' liabilities arising from the Federal Lawsuit and State Lawsuits are non-dischargeable under 11 U.S.C. § 523(a)(6), as they stem from alleged willful and malicious conduct. The Movants further argue that allowing the Federal and State Lawsuits to proceed will streamline the adversary proceeding, as any judgments obtained in the non-bankruptcy litigation may serve as collateral estoppel or res judicata on liability issues. See, e.g., DeMarco v. Gay (In re Gay), Adversary No. 23-02041-JAD, 2024 WL 2947614 (Bankr.

W.D. Pa. June 11, 2024)(state court jury verdict operated as res judicata or collateral estoppel in non-dischargeability action).

The purpose of the chapter 7 filing for Debtor LEOSU is less clear, because Debtor LEOSU is not eligible for a discharge under chapter 7 as only individuals are eligible for a discharge under that chapter. See 11 U.S.C. § 727(a)(1).

Moreover, the parties have stipulated that any judgments obtained in the non-bankruptcy litigation will not be enforced without prior approval of this Court.

The Motions were fully briefed and argued before this Court on September 11, 2024. After careful consideration of the parties' arguments and the relevant law, the Court finds that "cause" exists to lift the automatic stay and allow the litigation to proceed in the non-bankruptcy forums.

## II.
## ANALYSIS

### A.
### Legal Standard for Relief from Stay under 11 U.S.C. § 362(d)(1)

Section 362(d)(1) of the Bankruptcy Code provides that a court "shall grant relief from the stay... for cause, including the lack of adequate protection of an interest in property[.]" 11 U.S.C. § 362(d)(1).[2] The term "cause" is not defined in

---

[2]    Under section 362(d)(1) of the Bankruptcy Code, a party seeking relief from the automatic stay bears the initial burden of establishing a prima facie case for cause. Once the movant meets this burden, the burden shifts to the debtor to demonstrate that there is no cause for relief. See Lord v. True Funding, LLC, 618 B.R. 588, 592 (Bankr. S.D. Fla. 2020). See also 11 U.S.C § 362(g).  Courts may grant relief if the continuation of the stay causes undue hardship or significantly interferes with the movant's rights, thus outweighing the debtor's need for protection. However, courts are not required to hold an evidentiary hearing unless there are material factual disputes that necessitate such a proceeding. As established in Blaise v. Wolinsky (In re Blaise), motions for relief from stay may be resolved on the pleadings and record where the facts are not in dispute. 219 B.R. 946, 949 (B.A.P. 2d Cir. 1998).

the Bankruptcy Code, but courts have considerable discretion to determine what constitutes cause based on the facts and circumstances of each case. See In re Chan, 355 B.R. 494, 498 (Bankr. E.D. Pa. 2006); Piombo Corp. v. Castlerock Props. (In re Castlerock Props.), 781 F.2d 159, 163 (9th Cir. 1986).

In determining whether "cause" exists to lift the stay and allow pre-petition litigation to proceed, courts typically balance several factors, including:

1. judicial economy;
2. trial readiness;
3. the potential for interference with the bankruptcy case;
4. the impact on the bankruptcy estate and creditors;
5. the likelihood of success on the merits in the non-bankruptcy litigation;
6. the presence of non-debtor parties in the litigation;
7. the applicable forum's familiarity with the underlying legal issues;
8. the presence of state law issues; and
9. whether allowing the litigation to proceed will aid in resolving the bankruptcy case.

See In re Chan, 355 B.R. at 498-500; Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir.

---

In Halkias v. Great Atlantic & Pacific Tea Co., Inc. (In re Great Atlantic & Pacific Tea Co., Inc.), the court found no need for an evidentiary hearing when the record, including affidavits and documentation, provided sufficient evidence to resolve the issue. 618 B.R. 57 (S.D.N.Y. 2020). The court exercised its discretion in determining that an evidentiary hearing was unnecessary since the appellant in that case had ample opportunity to present objections to the service process (which was at issue) but failed to do so. Id. at 65-66.

Similarly, in the case involving Debtor Maritas and Debtor LEOSU, the admissions and concessions of record are robust enough to obviate the need for further evidence. These Debtors have either not opposed, or have conceded, key facts relevant to the outcome of the Motions, and there are no significant factual disputes that would require an evidentiary hearing on the same. The Court, therefore, has ample discretion to grant relief from the stay based on the existing record, as in Great Atlantic & Pacific Tea Co., where the lack of material factual disagreement allowed the court to decide the issue without further evidence or hearings. To be clear, in rendering this decision, the Court recognizes that the Debtors contest liability and a number of the allegations asserted in the State and Federal Lawsuits. Nothing contained in this *Memorandum Opinion* should be construed as a determination (either positively or negatively) as to those contested matters.

1990); <u>Garzoni v. K-Mart Corp. (In re Garzoni)</u>, 35 F. App'x. 179, 181 (6th Cir. 2002).

**B.**
**Judicial Economy and Trial Readiness**

In <u>In re Chan</u>, the court emphasized the importance of judicial economy when determining whether to lift the automatic stay. In that case, the court declined to lift the stay because the state court litigation had not progressed to any substantial degree and because continuing the state court action would not materially expedite the resolution of the bankruptcy case. <u>Chan</u>, 355 B.R. at 501-02.

In contrast, the Federal Lawsuit here has been pending since 2018, with all discovery completed and the case fully trial-ready. Pre-trial materials, including witness lists and motions *in limine*, were submitted to the United States District Court for the Eastern District of Michigan (the "<u>District Court</u>"), and a jury trial was scheduled to commence on July 16, 2024, just one week after Debtor Maritas and Debtor LEOSU filed for bankruptcy. Given the advanced stage of the litigation, judicial economy strongly favors lifting the stay to allow the trial to proceed in the forum where it was set to begin. <u>See Int'l Bus. Mach. v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)</u>, 938 F.2d 731, 737 (7th Cir. 1991) (lifting stay to allow trial to proceed in non-bankruptcy forum where litigation had reached an advanced stage).

Moreover, the SPFPA Parties have asserted claims against non-debtor defendants, including Calvin Wells and United Federation LEOS-PBA ("<u>LEOS-PBA</u>"), in the Federal Lawsuit. Consequently, even if this Court were to deny relief

from stay and have the SPFPA Parties pursue their claims in the adversary proceeding, the SPFPA Parties would still need to litigate their Federal Lawsuit claims in the District Court against the non-debtor parties. To the extent that the Debtors may be called as witnesses (as this Court is unaware of any precedent pursuant to which the bankruptcy stay would preclude participation in that capacity), such continued ligation of the Federal Lawsuit claims in the District Court may nonetheless still necessitate the participation the Debtors. (Thus, the Debtors may not completely avoid the time and expense associated with participating in litigation outside of this Court.)

Litigating the same facts and legal issues in both this Bankruptcy Court and the District Court would result in duplicative proceedings, increased costs, and the risk of inconsistent judgments—all of which support the granting of relief from stay to proceed with the litigation in the forum of the Federal Lawsuit.

This same argument applies equally to the Hawaii and Michigan Lawsuits, where, in addition to the Debtors, several non-debtor parties are named as defendants. See Maritas Motion For Relief From Stay, 24-70275-JAD, ECF No. 32 ¶¶ 14 & 16 (setting forth the captioned parties to the Michigan and Hawaii Lawsuits); *Response in Opposition to Motion of International Unions, Security Police and Fire Professionals of America, David L. Hickey its International President, and Joseph McCray for Abstention and Relief From the Automatic Stay Pursuant to 11 U.S.C. §362(d)* (the "Maritas Response") 24-70275-JAD, ECF No. 38 ¶¶ 14 & 16 (admitting paragraphs 14 and 16 of the Maritas Motion For Relief From Stay).

To that end, this Court is cognizant that granting relief from stay will not consolidate all of the proceedings (i.e. the Federal and State Lawsuits) into a single action. However, granting such relief will nonetheless simplify the litigation given the involvement of multiple non-debtor parties and the fact that the Debtors would still be subject to discovery in all matters. In effect, granting relief from stay may reduce the number of trials the Debtors have to face from four to three (since the non-dischargeability complaint could be subject to disposition by operation of res judicata or collateral estoppel).[3]

---

[3] Of course, whether Debtor Maritas would ultimately be precluded from challenging the dischargeability of his debts (if any) on the basis of a finding of liability in the State and Federal Lawsuits depends on the specific findings of the adjudicating courts as reflected in the record made in those proceedings, including judgments entered, the jury verdict slips, jury instructions, and jury findings, etc. As observed in Baner v. Charles (In re Charles):

> . . . an award for defamation of a private person may support nondischargeability under § 523(a)(6), if there is a specific finding that the statements were made with the intent to harm or the debtor was substantially certain they would harm that person. Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 832 (B.A.P. 9th Cir. 2006) ("The arbitrator found that Khaligh's false and defamatory statements were made with the intent to harm Hadaegh.").

Adv. Proc. No. 17-01205-gs, 2023 WL 3066684, at *19 (Bankr. D. Nev. April 24, 2023)(citing Stewart v. Kauanui (In re Kauanui), Adv. Pro. No. 14-90018, 2015 WL 359088 (Bankr. D. Haw. Jan. 23, 2015)), aff'd, 2024 WL 449971 (9th Cir. B.A.P. 2024). As to the elements generally, the court in Charles wrote:

> "Section 523(a)(6) excepts from discharge debts 'for willful and malicious injury by the debtor to another entity or to the property of another entity.' Both willfulness and maliciousness must be proven to block discharge of a debt under § 523(a)(6)." Dekhtyar v. Chernyavsky (In re Dekhtyar), 2019 WL 1282753, at *3 (B.A.P. 9th Cir. Mar. 19, 2019) (citing Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010)). To prevail on a claim under § 523(a)(6), the plaintiff must prove both willfulness and maliciousness by a preponderance of the evidence. Transamerica Commercial Finance Corp. v. Littleton (In re Littleton), 942 F.2d 551, 554 (9th Cir. 1991) (citing Grogan v. Garner, 498 U.S. 279, 289-90 (1991)).

> For § 523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself. Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57, 61-62 (1998). Section 523(a)(6)'s willful injury requirement is met "only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." [Carrillo v. ]Su[ (In re Su)], 290 F.3d [1140,] 1142 [9th Cir.

In short, allowing the Federal and State Lawsuits to proceed will consolidate the resolution of all claims and parties in their respective forums, promoting judicial economy and avoiding the unnecessary duplication of efforts.

## C.
## Likelihood of Success on the Merits

Courts often consider the movant's likelihood of success on the merits when deciding whether to lift the stay. While likelihood of success need not be certain, the movant must show that their chances are "materially more than negligible[.]" Roberts v. Vara (In re Roberts), 659 B.R. 271, 281 (Bankr. W.D. Pa. 2024) (applying the standard for injunctive relief in the context of a motion to reopen). In this case, the SPFPA Parties have demonstrated a likelihood of success in the Federal Lawsuit.

First, the SPFPA Parties and Hickey have survived multiple dispositive motions, including motions for summary judgment filed by Debtor Maritas and Debtor LEOSU. Additionally, the Special Master appointed in the Federal Lawsuit found that Debtor Maritas had willfully destroyed evidence during the

---

2002]. "The [d]ebtor is charged with the knowledge of the natural consequences of his actions." Ormsby, 591 F.3d at 1206. "In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1106 (9th Cir. 2005), amended, 2005 WL 843584 (9th Cir. Apr. 11, 2005) (quoting Su, 290 F.3d at 1146 n.6).

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001) (citations and internal quotations omitted). "Malice may be inferred based on the nature of the wrongful act." Ormsby, 591 F.3d at 1207.

In re Charles, 2023 WL 3066684, at *8.

litigation, including emails, text messages, and social media posts that were central to the SPFPA Parties' claims. The Special Master's report, which was pending before the District Court at the time of the bankruptcy filing, recommended that the court impose adverse inferences against Debtor Maritas and Debtor LEOSU and impose substantial monetary sanctions against them. The imposition of adverse inferences against Debtor Maritas and Debtor LEOSU support the SPFPA Parties' defamation and tortious interference claims, and ultimately a finding that the SPFPA Parties likelihood of success is more than negligible in the Federal Lawsuit.

Unlike the Federal Lawsuit, the records of the State Lawsuits are not so developed in that the cases are only in the pleading stage and have not yet reached the discovery phase in each matter. Moreover, the Debtors aver that they have filed a pretrial motion in the Michigan Lawsuit to dismiss that action asserting jurisdictional grounds for relief which remains pending. See Maritas Response ¶60.

Considering the same "likelihood of success" standard as applied in the Federal Lawsuit, the Court believes that the Movants' claims appear to be more than negligible, though not certain, in both the Hawaii Lawsuit and the Michigan Lawsuit.  In any event, much of the conduct complained of in the Hawaii Lawsuit (with exception of the alleged assault)[4] and Michigan Lawsuit appear to be substantially similar to the conduct complained of in the Federal Lawsuit.

---

[4]     The Movants contend that certain of the allegations asserted in the Hawaii Lawsuit are related to criminal conduct of Debtor Maritas to which he had previously entered a plea of "no contest." See Maritas Motion For Relief From Stay ¶17.  It is the Movants' position that this plea weighs in favor of finding a

Nonetheless, the burden has been met specific to the Federal Lawsuit and, as discussed herein, this Court believes that allowing the lawsuits to proceed in the state courts of Michigan and Hawaii would foster judicial economy, primarily due to the "special circumstances" of multiple non-debtor parties and state law specific issues, making Michigan and Hawaii state courts the more appropriate forums to try the claims pending in the State Lawsuits.

### D.
### The Presence of State Law Issues and Non-Debtor Parties

The Michigan and Hawaii Lawsuits present additional considerations regarding state law issues and the involvement of non-debtor parties. In <u>In re Chan</u>, the court noted that when a case involves state law issues and non-debtor parties, it is often more efficient to allow the litigation to proceed in the original forum. <u>Chan</u>, 355 B.R. at 501.

Here, both the Michigan and Hawaii Lawsuits assert claims for defamation, false light, tortious interference, and other intentional torts under state law. These are factually intensive claims that are best adjudicated in the

---

likelihood of success on the merits. <u>See</u> Maritas Motion For Relief From Stay ¶60. However, Debtor Maritas contends that a "no contest" plea cannot be used in a civil proceeding to establish liability. Maritas Response ¶60.

In proceedings in which the Federal Rules of Evidence govern, Rule 410(a) prohibits the use of a nolo contendere plea in civil cases except in limited circumstances. However, there is a fair debate with respect to the admissibility of the conviction resulting from a nolo contendere plea. <u>See</u> Galvan v. City of La Habra, No. SACV 12–2103 JGB (RNBx), 2014 WL 1370747, at *9-*12 (C.D. Cal April 8, 2014). <u>See also</u> Sharif v. Picone, 740 F.3d 263, 271-274 (3d Cir. 2014)(discussing admissibility of conviction resulting from nolo contendere plea).

Thus, the relevance of Debtor Maritas' no contest plea and resulting conviction to the Hawaii Lawsuit is unclear. This uncertainty supports allowing the Hawaiian court to hear and decide the pending tort claims.

courts where they originated. Additionally, both lawsuits involve non-debtor defendants who cannot be bound by this Court's rulings. For example, the Michigan Lawsuit names multiple non-debtor defendants, including Charles Strebeck and Brikener Jean-Giles, as well as two non-debtor security unions that are controlled by Debtor Maritas. Similarly, the Hawaii Lawsuit involves claims against non-debtor entities such as the United Federation LEOS-PBA Hawaii and its affiliates.

Litigating these claims in state court will avoid the risk of inconsistent judgments and ensure that all claims—including those against the non-debtor defendants—are resolved in a single forum. Courts have consistently recognized that in cases involving multiple non-debtor defendants, it is often appropriate to lift the stay to allow the litigation to proceed in the original forum. See O'Neal Steel, Inc. v Chatkin (In re Chatkin), 465 B.R. 54, 62-63 (Bankr. W.D. Pa. 2012).

### E.
### Impact on the Bankruptcy Estate

Lifting the stay will not unduly burden the bankruptcy estates or harm other creditors. The SPFPA Parties have agreed that any judgments obtained in the non-bankruptcy litigation will not be a judgment lien against any of the bankruptcy estates' assets and will not be enforced without prior Court approval, therefore preserving the bankruptcy estates' resources while allowing the SPFPA Parties to liquidate their claims. Additionally, any issues regarding the dischargeability of Debtor Maritas' liabilities will be resolved in subsequent proceedings before this Court, ensuring that Debtor Maritas' fresh start is protected.

Conversely, refusing to lift the stay would force the SPFPA Parties to litigate the claims four times—against the non-debtor parties in the (1) Hawaii Lawsuit, (2) Michigan Lawsuit, and (3) Federal Lawsuit, and against the Debtors in the (4) adversary proceeding before this Court. Whereas, granting relief from stay will eliminate litigation before this Court as to the Debtors' liability and damages owed (if any).

Thus, denying relief from the stay would result in a waste of judicial resources and increased litigation costs for the parties, without providing any meaningful benefit to the bankruptcy estates.

### F.
### Lifting the Stay to Permit State Lawsuits to
### Proceed Also Fosters Judicial Economy

It is true that, unlike the Federal Lawsuit, the State Lawsuits are only in the pleading stage of litigation. This fact, however, does not mean that permitting the cases to proceed is not judicially economical.

This Court believes it would be imprudent to delve into the merits of the non-dischargeability adversary proceeding before establishing Debtor Maritas' liability in the appropriate non-bankruptcy forums. The courts engaged in the underlying federal and state litigation are uniquely positioned to ascertain both liability and damages, particularly in light of the precedent set in In re Stewart, 649 B.R. 755 (Bankr. N.D. Ill. 2023). In Stewart, the bankruptcy court underscored the importance of adjudicating personal injury tort claims— including defamation and similar torts—in non-bankruptcy courts, as mandated by 28 U.S.C. § 157(b)(5). In re Stewart, 649 B.R. at 760; contra Markwood Invs.

13

Ltd. v. Neves (In re Neves), 500 B.R. 651, 659 (Bankr. S.D. Fla. 2013)(holding bankruptcy court may liquidate claim as part of non-dischargeability action).

The Court recognizes that there are limitations to the application of 28 U.S.C. § 157(b)(5) in instances where a litigant has knowingly and voluntarily waived rights afforded by that section. See In re Tribune Media Co., 902 F.3d 384, 393-94 (3d Cir. 2018). *Sub judice*, the SPFPA Parties only had one choice with respect to seeking to have the debts allegedly owed by Debtor Maritas' be found non-dischargeable—that is to file an action under 11 U.S.C. § 523(a)(6) with this Court. Therefore, the SPFPA Parties can hardly be said to have voluntarily consented to adjudication of the non-bankruptcy causes of action before this Court (or, in other words, waived their right to present their underlying legal claims before the juries to be empaneled in the Lawsuits). Cf. Stern v. Marshall, 564 U.S. 462, 493 n. 8 (2011)("consent" not found where creditor was afforded only one option to assert a claim and share in distribution from the estate); Stewart v. JP Morgan Chase Bank, N.A. (In re Stewart), 473 B.R. 612, 627-28 (Bankr. W.D. Pa. 2012), aff'd, No. Adv. 10-2654, 2013 WL 4041963 (W.D. Pa. Aug. 8, 2013).

The Court's conclusion in this regard is particularly acute in light of the fact that the SPFPA Parties filed the Motions with this Court requesting that the stay be lifted contemporaneously with the filing of the non-dischargeability adversary proceeding so that they can liquidate the non-bankruptcy causes of action in the courts before which they were previously commenced.  Thus, this is not a case of gamesmanship or belated objection; nor is it an instance where

the SPFPA Parties waited to see how they would fare before this Court prior to deciding whether to withhold consent. See Byrnes v. Byrnes (In re Byrnes), 639 B.R. 239 (Bankr. D.N.M. 2022)(parties are required to state their consent or non-consent at the outset to avoid waiver or forfeiture of their right to try personal injury suit in non-bankruptcy forum). Instead, the SPFPA Parties have promptly and unequivocally made their position known from the outset, and they preserved their ability to resume the prior pending actions (subject to this Court granting relief from stay).

Even if this Court possesses the ability or power to liquidate the state law claims at issue, the reasoning in Stewart demonstrates that proceeding with the non-dischargeability analysis without a prior determination of liability would be premature and inefficient. It is this Court's view that the non-bankruptcy courts need to adjudicate the state law issues of liability and damages, because they will likely have a preclusive effect in the adversary proceeding before this Court. See Gay, supra.

As conceded by Debtor Maritas' counsel at the hearing held on the Motions, first obtaining a resolution of liability and damages would significantly reduce the issues which must be decided by the Bankruptcy Court to finally determine the non-dischargeability adversary proceeding. See Audio of September 11, 2024 Hearing at 12:11:50-12:12:20.

In addition, the non-bankruptcy litigation involves events, other parties, and witnesses who appear to be outside this Court's subpoena power pursuant to Federal Rule of Bankruptcy Procedure 9016 and Federal Rule of Civil

15

Procedure 45. Given the contentiousness of the proceedings, it is this Court's view that the production of witnesses and documents will most likely require further ancillary proceedings in forums outside of this Court.  Thus, it is logical to lift the stay and allow the litigation to proceed in the proper forums that have the requisite subpoena power.  It is also logical to lift the stay to permit the cases to move forward before the courts that are familiar with both the local processes and the pending lawsuits, thereby avoiding duplicative/piecemeal litigation and ensuring that this Court only addresses the question of dischargeability once the necessary findings have been made as to liability and damages, if any, that may be attributed to Debtor Maritas.

### III.
### CONCLUSION

Based on the foregoing analysis, the Court finds that "cause" exists under 11 U.S.C. § 362(d)(1) to lift the automatic stay and allow the SPFPA Parties to proceed with the Federal, Michigan, and Hawaii lawsuits. Lifting the stay will promote judicial economy, consolidate the resolution of all claims in their respective forums, and avoid duplicative litigation.  By agreement of the parties, any judgments obtained in the non-bankruptcy litigation will not be enforced without prior approval of this Court and such judgments shall not become a judicial lien against any assets of the bankruptcy estates.

Additionally, with the consent of the parties as set forth on the record at the hearing held on the Motions, this Court will stay the Adversary Proceeding pending final adjudication of the Federal and State Lawsuits. Given the stay

imposed by the Court, the abstention request made by the SPFPA Parties shall be denied without prejudice.

The SPFPA Parties are directed to file status reports regarding the litigation that is the subject of this *Memorandum Opinion*, and such status reports shall be filed with this Court every six months beginning March 1, 2025.

Orders consistent with these findings shall be entered.

Date: September 27, 2024

_____
Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:    All Parties in Interest

FILED
9/27/24 10:17 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA