# SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into this October _____, 2025 (the "Effective Date") by and among Law Enforcement Officers Security Unions (LEOSU) and Law Enforcement Officers Security & Police Benevolent Association LEOS-PBA and United Federation LEOS-PBA (the "Union") and Eric Bononi, the Chapter 7 Trustee (the "Trustee" and collectively with the Debtor referred to as the "Parties") for the estate of Law Enforcement Officers Union (the "Debtor"), pending in the United States Bankruptcy Court for the Western District of Pennsylvania at case no. 24-70277. All capitalized terms not defined in this Agreement shall have the meanings ascribed to them in the Motion to Approve Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion").

WHEREAS, on July 8, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Pennsylvania at case no. 24-70277 (the "LEOSU Case");

WHEREAS, on July 10, 2024, Eric Bononi was appointed as the Trustee in the LEOSU Case;

WHEREAS, on March 27, 2025, the Trustee submitted his Application to Employ Forensic Accountant and Private Investigator (the "Application to Employ") wherein the Trustee sought to employ Charles P. Dahlmann and Chuck Dahlmann Investigations ("CDI") as a Forensic Accountant and Private Investigator;

WHEREAS, on April 24, 2025, the Court entered an order granting the Application to Employ.

WHEREAS, on July 10, 2025, the Trustee filed the Motion for Mediation and to Appoint a Mediator (the "Motion to Appoint Mediator");

WHEREAS, among the bases for the Motion to Appoint Mediator, the Trustee identified, inter alia, certain preference(s), insider transactions, fraudulent transfers and alleged successor liability claims (the "Claims and Causes of Action") per the report of CDI;

WHEREAS, the Union disputes the validity and merits of the Claims and Causes of Action;

WHEREAS, on August 14, 2025, the Court entered an order directing the parties to participate in the mediation (the "Mediation");

WHEREAS, on August 22, 2025, the Court appointed Leonard F. Spagnolo as the mediator and scheduled the Mediation to be held on September 9, 2025;

WHEREAS, the parties conducted a two day Mediation September 9, 2025 and concluded on September 10, 2025;

WHEREAS, as a result of participating in the Mediation, the Parties reached an agreement that resolves all issues and Claims and/or Causes of Action (the "Agreement");

WHEREAS, the Parties engaged in negotiations that resulted in an amicable resolution of the Claims and Causes of Action.

**AGREEMENT**

Now, therefore, intending to be legally bound, and in consideration of the foregoing recitals and the promises and commitments set forth below, the Parties hereby agree as follows:

1. **Settlement Payment.** In consideration for the Trustee's execution and delivery of this Agreement and performance of its obligations hereunder and the releases contained herein, the Union shall pay to the Trustee a one-time, lump sum payment in the amount of one hundred and forty thousand dollars ($140,000.00) (the "Settlement Payment"). The Settlement Payment shall be made payable to the order of Eric Bononi 20 North Pennsylvania Avenue, Greensburg, PA 15601 and shall be paid to the Trustee within ten (10) business days from the later of both (a) the full execution of this Agreement and (b) a final order of the Bankruptcy Court approving in a manner acceptable to the Union. The Settlement Payment shall be forwarded to the Trustee via check.

2. **General Representations.** The Parties hereby represent that they were and at all times remain fully and legally authorized and competent to execute, enter into and perform their obligations under this Agreement. The Parties further represent and warrant that their execution, entry into, and performance in accordance with this Agreement does not and will not violate any applicable law or agreement by which the Parties are bound.

3. **Releases and Covenant Not to Sue.** In consideration for the payment set forth in Paragraph 1 of this Agreement and effective upon receipt of same, the Trustee releases and discharges the Union, its affiliated unions and divisions, including, but not limited to:

   **(i)** United Federation LEOS-PBA;

   **(ii)** LEOS-PBA;

   **(iii)** PROA;

   **(iv)** NUSPO;

   **(v)** UFSPSO;

   **(vi)** United Federation K9 Handlers;

   **(vii)** LEOSU-DC;

   **(viii)** LEOSU-VA;

   **(ix)** FPSOA;

**(x)** NUNSO;

**(xi)** LEOSU-CA;

**(xii)** SPSOA;

**(xiii)** PSONU;

**(xiv)** LEOSPU;

**(xv)** and United Federation LEOS-PBA Hawaii, Guam, Saipan and American Samoa,

its officers and directors, including, but not limited to:

(i) Jean-Giles Brikener (d/b/a Brik Unlimited LLC);

(ii) Calvin Wells;

(iii) Robert Sottilare;

(iv) Steve Maritas; and

(v) Thomas Ahrens,

and its successors, operating units, assigns, affiliates, parents, subsidiaries, related entities and all of its and their respective past and/or present employees, supervisors, members, managers, shareholders, officers, directors, agents, officials, insurers, attorneys, and/or any person or entity which can or could be held jointly and/or severally liable with any of them (collectively, the "Union Parties"), from the Claims and Causes of action and/or any and all past, present or future claims, liabilities, demands, causes of action, and/or other claims known or unknown, fixed or contingent, which the Trustee may now have or which may hereafter accrue, including, without limitation, claims arising out of or in any way connected to its business dealing with Debtor, any of the other Union Parties and/or any litigation, including claims for successor liability, alter ego, piercing the corporate veil, equitable relief, compensatory, punitive, or other damages, expenses (including attorneys' fees) and reimbursements or compensation of any kind.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee, on behalf of the Debtor and its bankruptcy estate forever releases and discharges the Union Parties, including without limitation each of their officers, directors, agents, affiliates, successors and assigns from each and every right, claim, demand, account, action, cause of action, obligation, suit, proceeding, loss, liability, and lien of every kind and character whatsoever, including but not limited to any claim for subrogation, indemnification, or contribution, and under any federal, state, city, foreign or local statute, ordinance, regulation, and/or order, all as amended, and under the common law of any jurisdiction from the beginning of time up to and including the date of this Agreement, whether now known or unknown, whether based in contract, tort, statute or other legal or equitable theory of recovery, whether asserted or unasserted, contingent or noncontingent, liquidated or unliquidated, disputed or undisputed, or secured or unsecured, whether in rem or in personam, whether at law, at equity, or otherwise, arising out of or relating to any claims, rights, or interests that the Trustee, on behalf of the Debtor and its bankruptcy estate had, have, or may have against the Union Parties.

This Agreement shall permanently enjoin, restrain, and bar any person or entity who has held, holds, or could hold or assert any claim, action, or cause of action of any kind, both known and unknown, against the Union Parties that was or could have been raised by the Trustee.

In further consideration, and for the avoidance of doubt, for the payment set forth in Paragraph 1 of this Agreement, and in order to induce such payment, in addition to the releases set forth above, the Trustee agrees to forever waive, fully and finally release all, Claims and Causes of Actions, *inter alia*, including:

- Any right to recover and authority to commence, prosecute and compromise all of the Debtor's and the estate's claims and causes of actions, including actions under sections 547, 549, and 550 of the Bankruptcy Code to recover payments made to the Debtor's creditors prior to the Petition Date;
- Any right to and authority to commence, prosecute and compromise all of the Debtor's and the estate's claims and causes of actions, including actions under an *alter ego* or piercing the corporate veil theory;
- Any right to and authority to commence, prosecute and compromise all of the Debtor's and the estate's claims and causes of actions, including actions for successor liability.

4. **Effect of Termination.** Upon the termination of this Agreement, all Parties shall be released from their commitments, undertaking and agreements under or related to this Agreement, and there shall be no liability or obligation on the part of any Party arising out of this Agreement and all Parties rights are restored.

5. **Mutual Termination Event.** Except as set forth in paragraph 5 above, this Agreement may be terminated only by the mutual agreement of and among (a) the Debtor and (b) the Trustee.

6. **Specific Performance.** This Settlement Agreement shall be enforceable by specific performance.

7. **Consideration.** The Trustee acknowledges that the sums and/or benefits provided to it pursuant to Paragraph 1 of this Agreement are good and valuable consideration to which it is not otherwise entitled.

8. **Exclusions.** The Trustee is not waiving any rights or claims that cannot legally be waived by this Agreement.

9. **Waiver and Amendment.** No provision of or rights under this Agreement may be waived or modified unless in writing and signed by all Parties. Waiver of any one provision herein shall not be deemed to be a waiver of any other provision herein (whether similar or not), nor shall such waiver constitute a continuing waiver unless otherwise expressly so provided. This Agreement may not be amended except through an instrument in writing signed by all Parties hereto.

10. **Effectiveness.** This Agreement shall be effective and binding upon the Parties upon entry of a final order of the Bankruptcy Court approving this Agreement (the "Settlement Order") acceptable to the Union.

11. **Settlement Order.** The Trustee shall within five (5) Business Days of the execution of this Agreement, file the Motion (in form and substance reasonably acceptable to the Parties) seeking the entry of the Settlement Order, and use its reasonable best efforts, at its own expense, to obtain Bankruptcy Court approval of the Settlement Order.

12. **Waiver of Attorneys' Fees and Costs.** The Trustee waives any and all claims it has or may have against the Debtor for attorneys' fees and costs.

13. **Non-Admission of Liability.** By entering into this Agreement, neither Debtor nor the Trustee directly or indirectly or by implication admit any violation of any law, statute, regulation, or ordinance.

14. **Governing Law.** This Agreement shall be performed, interpreted, and enforced according to the laws of the Commonwealth of Pennsylvania without regard to any choice of law provisions.

15. **Venue.** The Parties irrevocably and unconditionally consent to submit to the sole and exclusive jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to this Agreement.

16. **Settlement Discussions.** In the event that this Agreement is terminated, this Agreement will be deemed part of a proposed settlement of matters that is and could otherwise be the subject ligation among the Parties. Nothing in this Agreement shall be deemed an admission of any kind. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement shall not, and no negotiations relating to this Agreement shall be, admissible into evidence in any proceeding other than to prove the existence of this Agreement or in a proceeding to enforce the terms of this Agreement.

17. **Due Authorization.** Subject to the approval of the Bankruptcy Court with respect to the Debtor, each of the Parties represent and warrant to the other that the person executing this Agreement on its behalf is duly authorized to execute and deliver the Agreement and that it has taken all necessary action to authorize such execution, delivery and performance of this Agreement.

18. **Successors and Assigns.** This Agreement and all of its terms shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns.

19. **Good-Faith Cooperation; Further Assurances.** The Parties shall cooperate with each other in good faith in respect of matters concerning the implementation and consummation of this Agreement, and execution and delivery of documents to confirm or implement of this Agreement.

20. **Counterparts.** This Agreement may be executed in any number of counterparts and by original or facsimile signature, each of which shall be deemed to be an original instrument and all of which together shall be deemed one and the same instrument.

21. **Entire Agreement.** This Agreement embodies the sole and entire agreement between Debtor and the Trustee, and it cannot be modified except by a writing signed by the Trustee and authorized representatives of the Debtor. The Trustee has read this agreement in its entirety, reviewed it with their counsel, and signed it with the intent to be legally bound by its terms. In entering into this Agreement, the Trustee has not relied on any representations or statements made by or on behalf of Debtor, other than what is enumerated in this Agreement. Further, both Parties have cooperated in drafting and preparing this Agreement. Hence, this Agreement shall not be construed against any Party as the drafter of the Agreement. No oral statement of any person whatsoever shall in any manner or degree modify or otherwise affect the terms and provisions of this Agreement. To the extent the terms of this Agreement and any other Agreements conflict, the terms of this Agreement shall govern and supersede such inconsistent terms.

22. **Severability.** This Agreement and each of its parts shall be severable and, if any provision is determined to be void, invalid, or unenforceable, the remainder of this Agreement shall be fully enforced without such term(s).

23. **Headings.** Headings in this Agreement are for convenience only and shall have no legal effect, nor shall they control the meaning or interpretations of any of the provisions of the Release.

24. **Right to Counsel.** The Trustee has hereby been advised by and represented by legal counsel before executing this Agreement. The Trustee has had a full opportunity to review this Agreement with legal counsel. The Trustee understands the nature of the general release of all claims contained in this Agreement and intends to be legally bound by it.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

CHAPTER 7 TRUSTEE

By: ________________________________
Eric Bononi
October __, 2025

Authorized Representative

By: ________________________________
Steve Angelo Maritas
October __, 2025