# EXHIBIT A

Opinion and Order Granting in Part and Denying in Part Motion for Summary Judgment by the SPFPA Parties, dated March 30, 2023,
EDMI, Case No. 19-cv-10743

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNIONS, SECURITY POLICE AND FIRE PROFESSIONALS OF AMERICA, et al.,

Plaintiffs,

v.

MARITAS, et al.,

Defendants.

Case No. 2:19-cv-10743

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT BY THE SPFPA PARTIES [49]**

In the interest of judicial economy, the Court will adopt the introduction section from its previous opinion and order, ECF 69, PgID 2387–89. This Order will resolve the summary judgment motion filed by the SPFPA Parties.[1] ECF 49 (motion for summary judgment); ECF 51 (response brief); ECF 55 (reply brief).[2]

**BACKGROUND**

SPFPA and LEOSU are competing unions that organize police, security police, special police, protective service officers, security guards, and other security

[1] In this Opinion and Order, the "SPFPA Parties" are International Unions, Security Police and Fire Professionals of America (SPFPA), David L. Hickey, and Dwayne Phillips. *See* ECF 49, PgID 1126. And the "Maritas Parties" are Law Enforcement Officers Security Unions (LEOSU) and Steven Maritas. *Id.*

[2] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

professionals. *Maritas II*,[3] ECF 8, PgID 541. Each union initiated advertising campaigns against the other; as a result of the campaigns, each union filed suit against the other for defamation, false light, and more besides. *Id.* at 542–44; ECF 13, PgID 401–02.

After the Maritas Parties filed their five-claim complaint, the SPFPA Parties moved to dismiss it in part. *Maritas II*, ECF 12. The Court granted in part and denied in part the motion. *Maritas II*, ECF 16. Now before the Court is the SPFPA Parties' motion for summary judgment. ECF 49. In light of the Court's Order granting in part the partial motion to dismiss, ECF 69, the following claims remain: (1) defamation as to "statements posted [or] published after September [1]6, 2019" and "statements that do not contain a clear date of publication";[4] (2) false light as to "statements posted [or] published after September[1]6, 2019" and "statements that do not contain a clear date of publication"; (3) tortious interference with an advantageous business relationship with union members (but not potential union members); (4) knowing misrepresentation of copyright claims under the Digital Millennium Copyright Act; and (5) permanent injunctive relief. *Maritas II*, ECF 16, PgID 1640, 1653–54; *see Maritas II*, ECF 8, PgID 544–48.

---

[3] As noted in the Court's previous Opinion and Order, *Maritas II* refers to the second, pre-consolidated matter, *Maritas v. Int'l Unions, Sec. Police & Fire Pros. of Am.* No. 4:20-cv-12544 (E.D. Mich. Sept. 16, 2020). All citations not designated as *Maritas II* are citations to the above-captioned matter, 2:19-cv-10743.

[4] The Court specifically noted that the postings identified at ECF 8, PgID 555–58, 586–90, 619–20, 638, 641, 655–56, and 660–63 "are the claims that are not time-barred." *Maritas II*, ECF 16, PgID 1640.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Court will first discuss the defamation and false light claims. After, the Court will resolve the tortious interference claim. The Court will then resolve the

Digital Millennium Copyright Act claim and will last determine the request for permanent injunctive relief.

I. <u>Defamation and False Light Claims</u>

To establish defamation in Michigan, a plaintiff must show "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication." *Thomas M. Cooley L. Sch. v. Doe I*, 300 Mich. App. 245, 262 (2013) (footnote omitted). The "plaintiff must also comply with constitutional requirements that depend on the public- or private-figure status of the plaintiff, the media or nonmedia status of the defendant, and the public or private character of the speech." *Id.* (cleaned up). What is more, "[a] plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Id.* (footnote omitted).

To establish a claim based on false light, "a plaintiff must show that the defendant broadcast[ed] to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Found. for Behav. Res. v. W. E. Upjohn Unemployment Tr. Corp.*, 332 Mich. App. 406, 410 (2020) (quotation omitted). Importantly, defamation and false light claims both require a plaintiff to establish the existence of a false statement. *Id.* (explaining that falsity is an element of a false light claim); *Hawkins*

*v. Mercy Health Servs., Inc.*, 230 Mich. App. 315, 333 (1998) ("[I]f the gist of an article or the sting of the charge is 'substantially accurate,' the defendant cannot be liable.").

The SPFPA Parties argued that the Court should dismiss the defamation and false light claims for two reasons. First, the "Maritas Parties have not identified any specific language they claim to be defamatory—they merely identified general categories of language." ECF 49, PgID 1144 (cleaned up). Second, "the allegedly defamatory statements are true and[] not defamatory." *Id.* at 1142. The Court will discuss each argument in turn.

### *A. Specific Defamatory Statements*

During discovery, the SPFPA Parties "requested that [the] Maritas Plaintiffs identify what specific language . . . [the] Maritas Plaintiffs claimed was untrue." ECF 49, PgID 1144. In response, the Maritas Parties identified fifty allegedly untrue statements. *Id.*; ECF 49-2, PgID 1167–68. But despite the disclosure, the SPFPA Parties argued that "those [fifty] allegedly untrue statements are merely general[] categories of statements, not specific statements identified in the [first amended complaint]. For example, [the] first broad category is '[a]llegations of litigation avoidance.'" ECF 49, PgID 1144 (quoting ECF 49-2, PgID 1167).

The SPFPA Parties submitted a chart that endeavored to connect the statements identified by the Maritas Parties at ECF 49-2, PgID 1167–68 with the postings in the first amended complaint that were not barred by the relevant limitations period. ECF 49, PgID 1145–49. The chart also tried to depict why each of the statements was true "based on [] demonstrable facts." *Id.* at 1145. The Maritas

Parties then submitted their own chart that endeavored to connect the statements identified by the Maritas Parties at ECF 49-2, PgID 1167–68 with the postings in the first amended complaint. ECF 51, PgID 1596–98. The Maritas Parties' chart tried to show why each of the statements was "untruthful and defamatory." *Id.* at 1596.

The Court reviewed the charts offered by both parties, and it independently compared the statements identified by the Maritas Parties with the postings they offered as evidence. *See Maritas II*, ECF 8-2; 8-3; 8-4. Nearly half of the statements identified by the Maritas Parties referred to postings that were barred by the limitations period. For instance, the Maritas Parties contended that "Steve Maritas and criminal friends" was a defamatory statement by the SPFPA Parties. ECF 49-2, PgID 1168. Yet that statement related to a barred exhibit, ECF 8-3, PgID 614. *See* ECF 16, PgID 1640 ("The postings identified at ECF No. 8, PageID.555–58, 586, 587, 588, 589, 590, 619, 620, 638, 641, 655–56, 660, 661, 662, and 663 are the claims that are not time-barred."). And some statements were too general or unspecific such that neither the parties nor the Court could connect the statement to an exhibit that was not time barred.

Accordingly, the Court will *not* consider the following twenty-two statements that either refer to exhibits barred by the relevant limitations period or were too general or unspecific to match with an exhibit, ECF 49-2, PgID 1167–68:

- Statement #1: "Allegations of litigation avoidance"[5]

---

[5] Too general or unspecific to connect the statement to an exhibit not time barred.

- Statement #16: "The content of videos outlining the above allegations"[6]
- Statement #17: "Steve Maritas attacked a retired Army veteran"[7]
- Statement #21: "Fired by SPFPA"[8]
- Statement #22: "Fired by every union Steve Maritas worked for"[9]
- Statement #23: "Embroiled in a multi-million-dollar lawsuit"[10]
- Statement #25: "Serves only himself"[11]
- Statement #30: "LEOSU is lawless, felon or fraud"[12]
- Statement #34: "That LEOSU is facing multiple federal investigations"[13]
- Statement #35: "That LEOSU has failed its members"[14]
- Statement #36: "Steve Maritas will say anything"[15]
- Statement #37: "Steve Maritas went missing for one year"[16]
- Statement #38: "LEOSU is a fake union"[17]
- Statement #40: "Steve Maritas is familiar with being under arrest"[18]
- Statement #42: "LEOSU or Steve Maritas are scammers"[19]

---

[6] Too general or unspecific to connect the statement to an exhibit not time barred.
[7] Referring to barred exhibit at ECF 8-2, PgID 565.
[8] Referring to barred exhibit at ECF 8-2, PgID 566.
[9] Referring to barred exhibit at ECF 8-2, PgID 566.
[10] Referring to barred exhibits at ECF 8-2, PgID 566; ECF 8-3, PgID 594.
[11] Referring to barred exhibit at ECF 8-2, PgID 566.
[12] Referring to barred exhibits at ECF 8-2, PgID 552, 559, 570, 573, 579; ECF 8-3, PgID 594, 597–98, 601–10, 632, 637.
[13] Referring to barred exhibits at ECF 8-2, PgID 577; ECF 8-3, PgID 628.
[14] Referring to barred exhibit at ECF 8-2, PgID 578.
[15] Referring to barred exhibits at ECF 8-2, PgID 578; ECF 8-3, PgID 613, 616–17.
[16] Referring to barred exhibits at ECF 8-2, PgID 578; ECF 8-3, PgID 617.
[17] Referring to barred exhibits at ECF 8-2, PgID 578; ECF 8-3, PgID 616–17.
[18] Referring to barred exhibit at ECF 8-3, PgID 591.
[19] Referring to barred exhibit at ECF 8-3, PgID 613.

- Statement #43: "Steve Maritas and criminal friends"[20]
- Statement #45: "Steve Maritas is not a friend to security professionals"[21]
- Statement #46: "Steve Maritas filed false copyright claims"[22]
- Statement #47: "LEOSU is a repeat labor law offender"[23]
- Statement #48: "LEOSU spreads fraudulent information"[24]
- Statement #49: "LEOSU has a smear campaign"[25]
- Statement #50: "LEOSU is lawless"[26]

The remaining statements, however, are sufficiently specific when considered alongside the non-barred exhibits from the second amended complaint. Indeed, both parties were able to chart the statements and connect them with the non-barred exhibits. *See* ECF 49, PgID 1145–49; ECF 51, PgID 1596–98. The Court will therefore proceed with the SPFPA Parties' second argument: whether the defamation and false light claims must fail because the remaining statements based on the non-time-barred exhibits were truthful.

*B. Substantially True Statements*

The Court found that nineteen of the exhibits attached to the amended complaint were not time barred. *Maritas II*, ECF 16, PgID 1640 (citing ECF 8-2, PgID

[20] Referring to barred exhibit at ECF 8-3, PgID 614.
[21] Referring to barred exhibit at ECF 8-3, PgID 617.
[22] Referring to barred exhibit at ECF 8-3, PgID 626.
[23] Referring to barred exhibits at ECF 8-2, PgID 577, 579; ECF 8-3, PgID 628.
[24] Referring to barred exhibit at ECF 8-3, PgID 629.
[25] Referring to barred exhibit at ECF 8-3, PgID 629.
[26] Referring to barred exhibits at ECF 8-2, PgID 552, 559, 570, 573, 579; ECF 8-3, PgID 594, 597–98, 601–10, 632, 637.

555–58; ECF 8-3, PgID 586–90, 619–20, 638, 641; ECF 8-4, PgID 655–56, 660–63). The Maritas Parties divided the exhibits into six categories: (1) alleged threats; (2) prison time; (3) child support; (4) tax issues; (5) final judgments; and (6) criminal activity of LEOSU and Mr. Maritas. ECF 51, PgID 1598–1603. The Court will address the exhibits based on those six categories.

*1. Alleged threats*

In two exhibits from the first amended complaint, SPFPA stated that Mr. Maritas "threatened to kill his girlfriend and his baby daughter" and "was arrested for stalking her." ECF 8-2, PgID 555; *see id.* at 558 ("Served time in a California Prison for STALKING and THREATENING to KILL his girlfriend and her infant daughter?"). Mr. Maritas claimed in an affidavit that the allegation was "false and unfounded." ECF 51-8, PgID 1639. And the Maritas Parties argued that because the SPFPA Parties offered "no independent information to support the truthfulness of statements made by the prosecutor" about the charges, and given that "the felony charge was dismissed," the statements about alleged threats by SPFPA could not be "deemed a fair and true report" for the purposes of defamation. ECF 51, PgID 1998 (internal quotation marks omitted).

To show that the statements were truthful, the SPFPA Parties offered a legal brief filed by the People of the State of California, *see* ECF 49-3, in a criminal prosecution in which Mr. Maritas was Defendant. *See id.* The brief opposed a motion to dismiss the criminal information that had been filed against Mr. Maritas. ECF 49-3. In the brief, the government explained that Mr. Maritas allegedly "caused [his

girlfriend] to be concerned because he called her constantly threatening to take his life, their daughter's life[,] and [his girlfriend's] life." *Id.* at 1183. The government added that Mr. Maritas "threatened to kill her and her daughter and then kill himself." *Id.* Mr. Maritas admitted the truth of the government's brief. ECF 55-3, PgID 2102 ("Mr. Maritas constantly called, stating he was going to take his life as well as her life and the life of their daughter.").

Mr. Maritas later pleaded guilty and admitted that he "stalked Alma Vallarta," his girlfriend. ECF 55-4, PgID 2112–13. He also "stipulate[d] to PE Transcript for factual basis." *Id.* at 2113. The "PE Transcript" appears to be the transcript of the preliminary examination of Mr. Maritas that both he and the government cited in their statements of facts for the motion to dismiss briefing. *See id.*; ECF 49-3, PgID 1183–87; ECF 55-3, PgID 2101–06.

Based on the filings from the California criminal case, the statement that Mr. Maritas threatened to stalk and kill his girlfriend and their daughter was "substantially true." *Nichols v. Moore*, 396 F. Supp. 2d 783, 787 (E.D. Mich. 2005) (quoting *Fisher v. Detroit Free Pres*, 158 Mich. App. 409, 414 (1987)). The Court therefore finds no genuine issue of material fact that the statements about Mr. Maritas stalking and threating to kill his girlfriend and child were true for defamation and false light purposes.[27] And because "[t]ruth is an absolute defense to

[27] The Maritas Parties claimed that the SPFPA Parties "failed to mention the felony charge was dismissed." ECF 51, PgID 1598. Because the Maritas Parties included no evidence to support the statement, the Court will assume that they are referring to the Penal Code section 646.9(b) charge, which Mr. Maritas was arraigned on before

an action for defamation," *Nichols*, 396 F. Supp. 2d at 787, and falsity is an essential element of a false light claim, *Found. for Behav. Res.*, 332 Mich. App. at 410, the Court will dismiss the defamation and false light claims that relate to allegations about Mr. Maritas's threats to kill and stalk his girlfriend and daughter.

*2. Prison time*

In two exhibits, SPFPA claimed that Mr. Maritas served time in prison. ECF 8-2, PgID 558; ECF 8-3, PgID 589. Based on the evidence before the Court, there is no genuine dispute of fact that Mr. Maritas has spent time in jail, not prison. *See* ECF 49-4, PgID 1208 (Maritas Deposition); ECF 51, PgID 1599; ECF 55, PgID 2081 (noting that Maritas claimed he "was only ever in jail, not prison"). In the context of criminal procedure, jail and prison carry different meanings. *See* ECF 51, PgID 1599 (citing Black's Law Dictionary). The question then is whether SPFPA's use of the word "prison" was "substantially true" given that Mr. Maritas spent time in jail.

"The [Michigan] common law has never required defendants to prove that a publication is literally and absolutely accurate in every minute detail. For example, the Restatement of Torts provides that "slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." *Hawkins*, 230 Mich. App. at 332 (cleaned up). And "if the gist of an article or the sting of the charge is 'substantially accurate,' the defendant cannot be liable." *Id.* at 333 (quotation omitted).

---

he pleaded guilty to stalking under Penal Code section 646.9(a). *See* ECF 49-3, PgID 1182; ECF 55-4, PgID 2112–13. That fact does not change the Court's analysis.

Here, the Court finds that the commonly understood meanings of the words "jail" and "prison" are substantially similar. *Compare Prison*, Merriam-Webster Dictionary (11th ed. 2003) ("a state of confinement or captivity"), *with Jail*, Merriam-Webster Dictionary (11th ed. 2003) ("a place of confinement for persons held in lawful custody"). *Cf. Geary v. C&K Mufflers, Inc.*, No. 267105, 2006 WL 1540805, at *8 (Mich. Ct. App. June 6, 2006) ("It is particularly apt to refer to a dictionary because lawyers and judges may comprehend the word 'trial' differently from its commonly understood meaning."). Plus, the Maritas Parties never argued that their defamation claim concerned defamation by implication. *See* ECF 51, PgID 1599; *see generally Hawkins*, 230 Mich. App. at 329. Thus, even if the term might suggest a conviction, the question here is only whether the fact that Mr. Maritas spent time in prison is "substantially accurate." *Hawkins*, 230 Mich. App. at 332. Mr. Maritas spent time in jail, and he in fact *pleaded guilty* to stalking. *See* ECF 49-2, PgID 1171 ("The length of [jail] time was approximately [three] weeks . . . . The matter was eventually concluded with a plea to a misdemeanor with no jail time."), So, the implication that Mr. Maritas served time in connection with a crime of which he was guilty is true.

All told, while an individual highly familiar with criminal proceedings would understand the difference between a stay in prison versus jail, a layperson would view the terms as interchangeable. Thus, the Maritas Parties cannot show that the statements relating to Mr. Maritas spending time in prison was false for purposes of their defamation and false light claims. The Court will accordingly dismiss the defamation and false light claims that relate to that statement.

*3. Child support*

In five exhibits, SPFPA claimed that Mr. Maritas failed to make child support payments and appended a "WANTED" poster issued by the Oakland County Sheriff's Office that stated Mr. Maritas was wanted for "Non-Payment of Support." ECF 8-2, PgID 556; ECF 8-3, PgID 587, 619–20, 638. The Maritas Parties claimed that the child support obligations owed by Mr. Maritas "were removed as [Mr.] Maritas paid child support directly." ECF 51, PgID 1600. And "the warrant was dismissed once the [c]ourt was made aware of the direct payments." *Id.* Beyond that, the Maritas Parties claimed that the Oakland County Sheriff's Office created the "WANTED" poster at the direction of the SPFPA Parties. *Id.* Mr. Maritas confirmed that he was told by a "detective or police officer" at the Oakland County Sheriff's Office that "the police created the poster," but that "SPFPA [was] behind it." ECF 51-4, PgID 1621.

To support the truthfulness of the child support statements, the SPFPA Parties attached two arrest warrants issued by the Macomb County Circuit Court, ECF 49-5, and the Oakland County Circuit Court, ECF 49-6. Both arrest warrants explained that Mr. Maritas failed to timely make support payments. ECF 49-5, PgID 1242 ("As of October 31, 2014, the respondent owes $13,905.00 in arrears under the support order."); ECF 49-6, PgID 1254 ("As of September 12, 2017, the respondent owes $504.27 in past-due support."). And SPFPA party David Hickey stated that he knew Mr. Maritas owed child support because a sheriff had "com[e] to arrest him at [SPFPA] headquarters . . . multiple times. And the last time he came with a warrant

for [Mr. Maritas's] arrest and a poster. That's how [Hickey] got that information." ECF 49-8, PgID 1268.

The undisputed fact is that the Oakland County Sheriff's Office created the "WANTED" poster. ECF 49, PgID 1136; ECF 51-4, PgID 1621. Accordingly, whether SPFPA helped the Oakland County Sheriff's Office create the poster is of no moment. And the Maritas Parties conceded that the arrest warrants were among the "public records of [Mr.] Maritas'[s] family court matters." ECF 51, PgID 1599. At bottom then, the Court must decide whether SPFPA falsely claimed that Mr. Maritas owed child support.

SPFPA did not claim in any of the five exhibits, ECF 8-2, PgID 556; ECF 8-3, PgID 587, 619–20, 638, that Mr. Maritas was *currently* wanted by law enforcement or that he was *currently* delinquent in making child support payments. Indeed, the "WANTED" posters largely appear without any accompanying text about support payments. *See* ECF 8-2, PgID 556; ECF 8-3, 619–20, 638. And in the one exhibit that contains text about support payments, the text states, "This is the actual wanted poster delivered to the International Office by a Deputy Sheriff looking to arrest Maritas for delinquent child support." ECF 8-3, PgID 587. While the statement does not provide a date for the occurrence, it also does not claim that Mr. Maritas was wanted by law enforcement at that time. *See id.* And the statement that the poster was "delivered to the International Office by a Deputy Sheriff looking to arrest Maritas for delinquent child support" was corroborated by Hickey at his deposition. *Id.*; ECF 49-8, PgID 1268.

What is more, the court records offered by the Maritas Parties which purportedly show that Mr. Maritas had fulfilled his child support obligations, ECF 51-3, PgID 1617–18, do not undercut the other court records offered by the SPFPA Parties. For the Oakland County case, the order explaining that Mr. Maritas had made "direct payments" was submitted on May 16, 2016. ECF 51-3, PgID 1617. Yet on May 18, 2016, the Oakland County Circuit Court issued an arrest warrant based on $641.27 in past-due support payments. ECF 49-6, PgID 1248, 1250. And on September 5, 2017, the court noted that Mr. Maritas owed $504.27 in past-due support. *Id.* at 1254. Thus, even if Mr. Maritas had fulfilled his support obligations in May 2016, he had apparently failed to do so in September 2017. *See id.* The May 16, 2016 document therefore creates no genuine issue of material fact as to whether a warrant had issued to arrest Mr. Maritas for failure to make timely support payments.

All told, the Maritas Parties failed to point to evidence that would create a genuine issue of material fact that Mr. Maritas in fact owed child support payments and that the Oakland County Sheriff's Office created a "WANTED" poster in connection with his support payment obligations. The Court therefore finds that the statements relating to Mr. Maritas's failure to timely fulfill his support obligations was not false for purposes of the defamation and false light claims. The Court will accordingly dismiss the defamation and false light claims that relate to those statements.

*4. Tax issues*

In four exhibits, SPFPA claimed that Mr. Maritas had tax evasion issues or other tax trouble. ECF 8-2, PgID 555; ECF 8-3, PgID 588–89; ECF 8-4, PgID 661. In three exhibits, SPFPA claimed that Mr. Maritas "owes back taxes to the IRS," was having "tax trouble," and had "severe tax, lawsuit[,] and collections problems." ECF 8-2, PgID 555; ECF 8-3, PgID 589; ECF 8-4, PgID 661. In the fourth exhibit, SPFPA claimed that Mr. Maritas had "long standing tax evasion issues and owes over $100,000 dollars in State and federal taxes." ECF 8-3, PgID 588 (alterations omitted).

In an August 2019 deposition, Mr. Maritas confirmed that "[a] tax case commenced by the Internal Revenue Service" (IRS) had been filed against him. ECF 49-4, PgID 1202. He explained that he owed "more than a hundred [thousand]" in "[b]ack taxes" and that the IRS had filed tax liens against him. *Id.* And as of that deposition, Mr. Maritas assumed that the tax liens were still pending and had not "been extinguished or paid." *Id.* Mr. Maritas later stated in an affidavit that he had "never been under investigation, charged[,] or found guilty of any tax related matters" with regard to felony tax evasion under 26 U.S.C. § 7201. ECF 51-8, PgID 1639–40; *see* ECF 51, PgID 1601. He also stated that his "attorney was handling the matter and [he] was not aware of the amount owed." ECF 51-8, PgID 1640. Thus, argued Mr. Maritas, the SPFPA Parties took "a singular line without providing the context" when they referenced his deposition testimony to confirm that he owed over $100,000 in taxes. *Id.*

Simply put, there is no genuine issue of material fact that Mr. Maritas was experiencing tax issues in the amount of $100,000. Mr. Maritas confirmed as much in his deposition and affidavit. ECF 49-4, PgID 1202; ECF 51-8, PgID 1640. Thus, the three exhibits that reference "tax trouble" or "tax . . . problems" relating to "back taxes to the IRS" were not false. ECF 8-2, PgID 555; ECF 8-3, PgID 589; ECF 8-4, PgID 661. The Court will grant summary judgment on the defamation and false claims based on exhibits ECF 8-2, PgID 555; ECF 8-3, PgID 589; and ECF 8-4, PgID 661.

But the statement that Mr. Maritas "has long standing tax evasion issues and owes over $100,000 dollars in State and federal taxes" is at minimum misleading. ECF 8-3, PgID 588 (alterations omitted). For one, 'back taxes' and 'tax evasion' are not interchangeable terms. Indeed, tax evasion is a federal crime under 26 U.S.C. § 7201, but the case against Mr. Maritas was a proceeding "commenced by the [IRS]" and not the Department of Justice. ECF 49-4, PgID 1202.

For another, using the present-tense "owes over $100,000 dollars" rather than the past-tense "owed" suggests that Mr. Maritas owed that amount at the time SPFPA posted the statement. And there is a genuine issue of material fact as to whether that statement is true. Indeed, Mr. Maritas stated in his deposition that he believed the amount he owed "*was* more than a hundred [thousand]" and that his "attorneys *took* care of it." ECF 49-4, PgID 1202 (emphasis on past tense added). Moreover, although he did not believe that the tax liens had been extinguished or paid, he never stated that the full $100,000 amount was still outstanding. *See id.* In

the end, there is no evidence before the Court to confirm the amount of taxes that were outstanding when SPFPA made the statements, but there is a genuine issue of material fact as to whether the amount was "over $100,000." ECF 8-3, PgID 588.

The SPFPA Parties moved for summary judgment on the defamation and false light claims as to the statements about Mr. Maritas having tax issues based on only the fact that the statements were truthful. ECF 49, PgID 1142–50. Because there is a genuine dispute of material fact as to whether the statement "Maritas has long standing tax evasion issues and owes over $100,000 dollars in State and federal taxes" was false, ECF 8-3, PgID 588 (alterations omitted), the Court will deny summary judgment on the defamation and false light claims as to that one statement.

5. *Final judgments*

In two exhibits, SPFPA claimed that Mr. Maritas had "collections problems" and financial judgments against him. ECF 8-3, PgID 589; ECF 8-4, PgID 661. The Maritas Parties claimed that while Mr. Maritas had creditors in 2013, *see* ECF 49-17, PgID 1337, 1346–51, 1372, there was no evidence that he still had creditors in 2019 or 2020, when SPFPA made the allegedly defamatory statements. ECF 51, PgID 1601–02. In reply, the SPFPA Parties stated that an "attached register of actions from another lawsuit shows a May 18, 2006 judgment against [Mr.] Maritas, which was renewed on April 25, 2016 . . . and, to date, has not been satisfied." ECF 55, PgID 2083; ECF 55-5, PgID 2115–17 (order to renew judgment filed April 25, 2016).

Simply put, the Maritas Parties failed to point to "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587

(emphasis omitted) (quoting Fed. R. Civ. P. 56(e)). The only evidence the Maritas Parties offered to dispute the evidence submitted by the SPFPA Parties was the affidavit by Mr. Maritas that stated, “These sites falsely allege that I have creditors and final judgments against me and asserted these claims at a time when no final judgments were entered against me.” ECF 51-8, PgID 1640 (affidavit dated May 19, 2022). “Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment.” *Ace Am. Ins. Co. v. Gerling & Assocs., Inc.*, ---F. Supp. 3d---, 2022 WL 4468584 (S.D. Ohio 2022) (citation omitted). And when compared with the 2016 judgment renewal, there is no genuine issue of fact that Mr. Maritas had “collections problems” and financial judgments against him. ECF 8-3, PgID 589; ECF 8-4, PgID 661. The Court will accordingly dismiss the defamation and false light claims that relate to judgment and collections statements.

*6. Criminal activity of LEOSU and Mr. Maritas*

Last, the Maritas Parties complained that SPFPA falsely and defamatorily claimed that LEOSU and Mr. Maritas engaged in criminal activity.[28] ECF 8-3, PgID 619, 641; ECF 8-4, PgID 655, 660, 662–63. The Maritas Parties argued that one exhibit suggested that LEOSU had a criminal record. ECF 8-4, PgID 660 (“leosu/Maritas’ Criminal Record Exposed!” “Maritas’ Criminal History Exposed!”). And six exhibits specifically targeted Mr. Maritas as having a criminal record or being a criminal. ECF 8-3, PgID 619 (“CRIMINAL MARITAS”), 641 (“[M]aritas . . . DOL

[28] To avoid unnecessary repetition, the Court will not include in its analysis here the exhibits that implied criminal activity relating to alleged threats, prison time, child support, or tax issues.

informant to keep from being indicted"); ECF 8-4, PgID 655 ("I'd be more concerned about your criminal run, little association leosu."), 660 ("leosu/Maritas' Criminal Record Exposed!" "Maritas' Criminal History Exposed!"), 662 ("documents exposing Maritas' Criminal Records."), 663 ("Maritas' Criminal History Exposed!").

In light of the previous findings of the Court, there is no genuine issue of material fact that Mr. Maritas has a criminal record. The exhibits that refer to Maritas as a criminal or as having a criminal record were therefore not false for defamation and false light purposes. Moreover, the exhibit about Mr. Maritas being a department of labor informant to avoid indictment is supported by evidence offered by the SPFPA Parties. *See* ECF 49-16. And the Maritas Parties raised no argument relating to SPFPA's statement that Mr. Maritas was a department of labor informant. *See* ECF 51, PgID 1596–1603. By extension, the suggestion that LEOSU was "criminal run" was also not false because there is no dispute that Mr. Maritas ran the organization. ECF 8, PgID 542; ECF 8-4, PgID 655; ECF 55, PgID 2084. The Court will therefore dismiss the defamation and false light claims as to the six exhibits that specifically targeted Mr. Maritas as having a criminal record or being a criminal. ECF 8-3, PgID 619, 641; ECF 8-4, PgID 660, 662–63.

The only remaining argument made by the Maritas Parties is that SPFPA suggested in a mass text message that LEOSU had a criminal record. ECF 8-4, PgID 655, 660. Neither party argued that the LEOSU organization had a criminal record. ECF 51, PgID 1602; ECF 55, PgID 2084. Rather, the parties dispute whether the text message suggested that (a) LEOSU itself has a criminal record, or (b) only Mr.

Maritas has a criminal record, but because Mr. Maritas is the organizing director of LEOSU, the two are grouped together. The Court finds the latter to be the most reasonable reading of text message. The message reads, "leosu/Maritas' Criminal Record Exposed!" ECF 8-4, PgID 660. The message refers to one criminal record—the record of Mr. Maritas. The same phrase is substantially repeated later in the message, "Maritas' Criminal History Exposed!" *Id.* There again, only one criminal history is mentioned—the history of Mr. Maritas. Plus, "leosu/Maritas[]" could be read as a name-recognition effort by SPFPA to remind the individuals who received the message that Maritas and LEOSU are associated. The message therefore communicates that Mr. Maritas, who is the organizing director of LEOSU, has a criminal record and a history of crime. And as discussed above, that statement is not false for the purposes of the defamation or false light claims. The Court will therefore dismiss the defamation and false light claims as to the exhibit at ECF 8-4, PgID 660.

In sum, the Court will grant summary judgment to the SPFPA Parties on all but one defamation and false light claim: the statement that "Maritas has long standing tax evasion issues and owes over $100,000 dollars in State and federal taxes." ECF 8-3, PgID 588 (alterations omitted).

II. Tortious Interference Claim

As explained earlier, the Court narrowed the Maritas Parties' tortious interference claim to a claim for interference with an advantageous business relationship with union members. *Maritas II*, ECF 16, PgID 1648, 1653–54. The Court excluded any claim for interference with *potential* union members. *See id.* To

establish a claim for tortious interference with a business relationship, the plaintiff must show (1) "the existence of a valid business relationship or expectancy," (2) "knowledge of the relationship or expectancy on the part of the defendant," (3) "an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy," and (4) "resultant damage to the plaintiff." *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 492 Mich. 40, 45 (2012) (quotation omitted).

The SPFPA Parties argued that the tortious interference claim should be dismissed because the Maritas Parties failed to show the existence of any valid business relationship that LEOSU had at the time of the alleged tort. ECF 49, PgID 1151. The Maritas Parties lodged three arguments in defense. First, they claimed that they had evidence that David Hickey of SPFPA tried to improperly interfere with an entity legally affiliated with LEOSU. ECF 51, PgID 1604–05. That evidence post-dated the filing of the first amended complaint. ECF 51-5, PgID 1624 (dated April 22, 2022). Second, the Maritas Defendants suggested that Dwayne Phillips of SPFPA "admitted" in a deposition that he tortiously interfered with LEOSU's business relationships. ECF 51, PgID 1604 (citing ECF 51-9). And third, the Maritas Defendants lodged several text messages that purportedly showed that SPFPA was circulating defamatory statements to "LEOSU's current membership." *Id.* at 1605. The Court will address each argument in turn.

*A.* *David Hickey Evidence*

First, the evidence related to David Hickey post-dated the filing of the first amended complaint. *Compare Maritas II*, ECF 8 (November 3, 2020), *with* ECF 51-5, PgID 1624 (April 22, 2022). The claim that the SPFPA Parties tortiously interfered with the business relationships of the Maritas Parties could not have been based on an event that occurred more than a year after the allegations were set forth in the complaint. *See also* ECF 51, PgID 1591 ("[A]t the time the discovery was submitted to the [SPFPA Parties], Mr. Hickey had not yet sent the letter to [the Maritas Parties]' affiliated member further tortiously interfering with [the Maritas Parties]' relationships."). Beyond that, the Court previously narrowed the tortious interference claim to involve only the relationships LEOSU had with its *current* union members and not potential members. *Maritas II*, ECF 16, PgID 1648, 1653–54. The letter from Hickey reveals that he was communicating with an organization that had only "*considered* . . . join[ing] with Maritas." ECF 51-5, PgID 1624. And the Maritas Parties never suggested that the letter was also circulated to current union members of LEOSU. *See* ECF 51, PgID 1591–92; 1604–05. Thus, the evidence fails to show that the SPFPA Parties tortiously interfered with an advantageous business relationship with current LEOSU members.

*B.* *Dwayne Phillips Evidence*

In a conclusory fashion, the Maritas Parties contended that Dwayne Phillips "admitted to" tortious interference with an advantageous business relationship in his deposition. *Id.* at 1604 (citing ECF 51-9). Yet the Maritas never stated which specific

portion of the deposition amounted to an admission. *See id.* And review of the deposition testimony reveals only that Phillips admitted to circulating materials about Mr. Maritas "to potential members or the members [SPFPA] already ha[d]." ECF 51-9, PgID 1644–45. He never mentioned whether he circulated that information to current LEOSU members. *See id.* at 1643–45. The evidence therefore fails to show that the SPFPA parties tortiously interfered with an advantageous business relationship with current LEOSU members.

*C. Text Messages*[29]

The Maritas Parties claimed that SPFPA sent "mass text messages . . . containing defamatory statements . . . to []LEOSU's current membership," which was evidence of SPFPA'a tortious interference with an advantageous business relationship. ECF 51, PgID 1605; *see Maritas II,* ECF 8, PgID 543–44 (citing ECF 8-4). To corroborate the claim, the Maritas Parties attached the following text message at ECF 51-6, PgID 1631:

[29] For the reasons stated in the Court's prior Opinion and Order, ECF 69, PgID 2392–99, the Court will limit its discussion to the text message at ECF 51-6, PgID 1361.




Although the Maritas Parties claimed that the message was sent by the SPFPA Parties to "LEOSU's current membership," ECF 51, PgID 160, the exhibit does not show who sent or received the message. *See* ECF 51-6, PgID 1631.

In response, the SPFPA Parties pointed to a discovery request response by the Maritas Parties which stated only that the employees at MGM Springfield Casino were "parties with any advantageous business relationship or expectancy with [the] Maritas [Parties] with which [the] SPFPA [Parties] allegedly interfered." ECF 49, PgID 1151; ECF 49-2, PgID 1168–69 ("MGM Springfield Casino . . . Contract Negotiations to represent union members."). Because the employees at MGM Springfield Casino were only "potential union members" of LEOSU, argued the SPFPA Parties, the Maritas parties failed to allege any individual with whom they had a current business relationship. *Id.* And since the Court narrowed the tortious

interference claim to only current union members, the Maritas Parties "cannot sustain their tortious interference claim." *Id.* at 1152.

The SPFPA Parties are correct. In short, the Maritas Parties failed to point to evidence that would convince "a reasonable jury [to] return a verdict for [them]" on the tortious interference claim. *Anderson*, 477 U.S. at 248. In the first amended complaint, the Maritas Parties alleged that the SPFPA Parties "distribute[d] through posters, flyers, emails, direct mail and text messages . . . defamatory statements about" the Maritas Parties "to LEOSU, *its local union members*, members of other security officer, police officer, security police, special police, protective service officer, security professional unions and SPFPA members LEOSU is seeking to organize and other unrelated third parties." *Maritas II*, ECF 8, PgID 543–44 (emphasis added). Accepting those factual allegations as true, the Maritas Parties successfully pleaded that a valid business relationships existed with their union members. *See Maritas II*, ECF 16, PgID 1648. But at summary judgment, the Court need not accept factual allegations as true. Instead, the Court need only view the facts and draw all reasonable *inferences* "in the light most favorable to the non-moving party." *60 Ivy St. Corp.*, 822 F.2d at 1435 (citations omitted).

Here, the single text message is insufficient evidence to support the tortious interference claim. Two reasons support the finding. First, the exhibit shows neither who sent the message nor who received the message. *See* ECF 51-6, PgID 1631. Thus, the Court would need to infer, based on the exhibit and the allegations of the Maritas Parties alone, that the exhibit was sent by the SPFPA Parties to current LEOSU

members. But that inference would be unreasonable in consideration of all the evidence before the Court. For one, the Maritas Parties pointed to no admissible evidence that shows who the members of LEOSU were at the time the mass text message was circulated, or whether any of those members received or viewed the message. For another, even if the Court were to assume that "[c]learly LEOSU had a relationship with all its members," ECF 51, PgID 1605, nothing in the message suggests that it was sent to current LEOSU members. *See* ECF 51-6, PgID 1631. The Court could reasonably infer that the message was sent by SPFPA based on the language of the message. *Id.* ("SPFPA has been successful in gaining Local 3 the right to a re-run election."). But that inference fails to prove that SPFPA intentionally interfered with current LEOSU members.

Second, even if the Court were to make both assumptions—that the message was sent by SPFPA and that it was received by current LEOSU members—the text message fails to show how any interference on the part of the SPFPA Parties was improper. "Improper interference can be shown by proving '(1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship.'" *Maritas II*, ECF 16, PgID 1644 (quoting *Advoc. Org. of Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 383 (2003)). The Maritas Parties explained that the text message was evidence of improper interference because the statements contained therein were defamatory. ECF 51, PgID 1605 ("Plaintiffs allege the actions of the Defendants which were intentionally done, were

done with malice and unjustified in law as the claims are defamatory as to both Plaintiffs LEOSU and Steve Maritas."). But the Court has already found, above, that the information contained within the message was not defamatory. Thus, the Maritas Parties failed to show how the message supports a finding that the SPFPA Parties improperly interfered with LEOSU's current membership.

In sum, the three pieces of evidence offered by the Maritas Parties fail to show any genuine issue of material fact as to whether the SPFPA Parties tortiously interfered with an advantageous business relationship with current union members. *Maritas II*, ECF 16, PgID 1648, 1653–54. And because the evidence shows no improper interference by the SPFPA Parties, the Court must grant summary judgment to the SPFPA Parties on the tortious interference claim.

III. <u>Digital Millennium Copyright Act Claim</u>

In their final substantive claim, the Maritas Parties complained that the SPFPA Parties made a knowing misrepresentation of copyright claims under the Digital Millennium Copyright Act (DMCA). *Maritas II*, ECF 8, PgID 546–48. The Court will explain why the DMCA does not apply and will then dismiss the claim.

Under the DMCA, 17 U.S.C. § 512(f), "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing" is "liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." To properly notify a service provider of

a claimed infringement under § 512, a person must make a "written communication . . . to the designated agent of a service provider that includes substantially the following" six elements:

> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
>
> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
> (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
>
> (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

§ 512(c)(3)(A). A notification is not a DMCA notice under § 512 if the above elements are not "substantially" included. *Id.* And without a DMCA notice, § 512(f) does not apply. Under § 512(f), liability applies to "[a]ny person who knowingly materially misrepresents *under this section.*" *See ISE Ent. Corp. v. Longarzo*, No. 17-9132, 2018 WL 11346736, at *9 (C.D. Cal. Dec. 11, 2018) ("Since [d]efendants have pointed to evidence that not all of the requirements of § 512(c)(3) were met and since [plaintiff]

has not pointed to any evidence to the contrary, the [c]ourt concludes that [plaintiff]'s § 512(f) claim must fail.").

In support of the DMCA claim, the Maritas Parties offered a letter from Wix, the service-provider company that hosted the "loumustgo.org" website run by the Maritas Parties. *Maritas II*, ECF 8-5. In the letter, Wix stated that it had received a "copyright note related to [the Maritas Parties'] Wix site loumustgo.org." *Id.* at 664. The letter also attached a copy of the copyright note. *Id.* The note stated the following:

- Name of the copyright owner: SPFPA
- Your Organization or Client that is the copyright owner: undefined
- First Name: Dwayne
- Last Name: Phillips
- E-Mail: organize@spfpa.com
- Mailing Address: 2551 Kelly Rd. Roseville, MI 48066
- Phone Number: 5867727250
- Additional Phone Number: 5868725634
- Identify and describe your copyrighted work: Several images are posted without SPFPA's permission taken from our website and photo archive.
- Please provide a link to online presentation of copyrighted work (if available): https://www.loumustgo.org
- Please provide a link (URL) leading to your copyright registration (if applicable): [Blank]
- Please provide a link (URL) to the precise location of the allegedly infringing content on a Wix hosted webize: https://www.loumustgo.org . . .
- Dated: Wed Jul 03 2019 . . .
- Electronic Signature: Dwayne Phillips

*Id.* at 664–65.

Missing from the copyright note are the two most critical elements of the proper notice requirements under § 512(c)(3)(A). First, the copyright note identified no "copyrighted work[s] claimed to have been infringed." § 512(c)(3)(A)(ii); *see Maritas*

*II*, ECF 8-5, PgID 664–65. In fact, the question asking for the link to the relevant "copyright registration[s]" was left blank. *Maritas II*, ECF 8-5, PgID 664. The copyright notice therefore failed to "include[] substantially" the requirements under subsection (ii). § 512(c)(3)(A); *Maritas II*, ECF 8-5, PgID 664–65.

Second, the copyright note failed to identify with any specificity whatsoever "the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material." § 512(c)(3)(A)(iii); *see Maritas II*, ECF 8-5, PgID 664–65. Phillips, the writer of the copyright note, merely stated that "several images" allegedly infringed on SPFPA's copyrighted work, and then listed an entire website as the "precise location of the allegedly infringing content." *Maritas II*, ECF 8-5, PgID 664. Phillips's vague suggestion that there were "several images" on a website that allegedly infringed on an SPFPA copyright thus failed to provide "information reasonably sufficient to permit the service provider to locate the material." § 512(c)(3)(A)(iii). Indeed, based on the information provided, the service provider would have to guess which photos on the website allegedly infringed on an unknown copyright supposedly belonging to SPFPA. *Cf. Schenck v. Orosz*, No. 3:13-CV-0294, 2013 WL 5963557, at *9 (M.D. Tenn. Nov. 7, 2013) ("[W]hen a letter provides notice that can be easily identified by the service provider, the notice substantially complies with the notification requirements.") (quotation omitted). Thus, the copyright notice failed to "include[]

substantially" the requirements under subsection (iii). § 512(c)(3)(A); *Maritas II*, ECF 8-5, PgID 664–65.

In sum, the requirements of two subsections under § 512(c)(3)(A) were not "include[d] substantially" in the Phillips copyright note. The copyright note is not a DMCA notice under § 512. And without a DMCA notice, § 512(f) does not apply. § 512(f); *see ISE Ent. Corp.*, 2018 WL 11346736, at *9. Accordingly, the Court must dismiss the claim.

IV. <u>Permanent Injunctive Relief</u>

Finally, the fifth claim in the Maritas Parties' first amended complaint sought permanent injunctive relief based on their other substantive claims. *Maritas II*, ECF 8, PgID 548 ("Defendants illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of destroying Plaintiffs' goodwill and reputation by use of defamatory statements . . . , placing Plaintiffs in a false light, and interfering with Plaintiffs' contractual or advantageous business relationships or expectancies."). The SPFPA Parties argued that because the substantive claims should be dismissed, the Maritas Parties have "no basis for their final count requesting injunctive relief." ECF 49, PgID 1142.

"[T]he Court must consider four factors when determining whether to grant or deny a permanent injunction." *Laymen Lessons, Inc. v. City of Millersville*, 636 F. Supp. 2d 620, 655 (M.D. Tenn. 2008). The first factor is "the plaintiff's success on the merits." *Id.* Because the Court dismissed all but two claims, the Maritas Parties did not "succe[ed] on the merits" on the dismissed claims. *Id.* The Court will therefore

deny permanent injunctive relief as to the dismissed claims. The Court will not, however, deny permanent injunctive relief as to the claims that it did not dismiss: the defamation and false light claims related to the statement that "Maritas has long standing tax evasion issues and owes over $100,000 dollars in State and federal taxes." ECF 8-3, PgID 588 (alterations omitted).

## CONCLUSION

The Court will grant summary judgment to the SPFPA Parties on all claims except the following: the defamation and false light claims related to the statement that "Maritas has long standing tax evasion issues and owes over $100,000 dollars in State and federal taxes," ECF 8-3, PgID 588 (alterations omitted); and the claim for permanent injunctive relief as to that allegedly false or defamatory statement.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the SPFPA Parties' motion for summary judgment [49] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 30, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2023, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager