# EXHIBIT B

Report and Recommendation of Discovery Master No. 4 re: Plaintiff's Renewed Motion for Default Judgment or Alternative Spoliation Sanctions, dated June 17, 2024, EDMI, Case No. 19-cv-10743

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

INTERNATIONAL UNIONS, SECURITY POLICE AND FIRE PROFESSIONALS OF AMERICA (SPFPA), an International Union, and DAVID L. HICKEY, the International President of the Security Police and Fire Professionals of America,

Plaintiffs,

v.

STEVE MARITAS, an individual, CALVIN WELLS, an individual, and LAW ENFORCEMENT OFFICERS SECURITY UNION, an unincorporated union,

Defendants.

Case No.: 2:19-cv-10743

Hon. Stephanie Dawkins Davis

Magistrate Judge R. Steven Whalen

---

**REPORT AND RECOMMENDATION OF DISCOVERY MASTER No. 4**
**RE: PLAINTIFFS' RENEWED MOTION FOR DEFAULT JUDGMENT OR ALTERNATIVE SPOLIATION SANCTIONS (ECF No. 84)**

## I. <u>Introduction</u>.

In the Court's Order Adopting Report and Recommendation [61] (the "Order" -- ECF No. 64), the Court granted in part Plaintiffs' Motion for Default Judgment or Alternative Spoliation Sanctions (the "Initial Motion" -- ECF No. 29), ordered an expert computer forensic examination of Defendants' Electronic Devices, and denied Plaintiffs' requests for sanctions without prejudice, preserving Plaintiffs'

right to renew or revise their requests for the same or other relief based on the results of the expert's examination and report. ECF No. 64, PageID.2353-54.

Pursuant to the Order and the Report and Recommendation ("R&R No. 1" – ECF No. 61), Avalon Legal ("Avalon") was retained as the electronic discovery vendor. Avalon subsequently collected and imaged multiple types of electronic data and submitted an initial Analysis/Reporting Overview as of 12/19/2022 (ECF No 84-2). Avalon then loaded the email files to a Relativity ECA workspace, filtered by the search terms identified by the Discovery Master based on input from counsel for all parties, and made the workspace available to Defendants' counsel for a privilege and relevancy review. Defendants counsel subsequently completed the privilege and relevancy review, and in December 2023 Avalon issued its final report (ECF No 84-3).

On January 5, 2024, Plaintiffs filed a Renewed Motion for Default Judgment or Alternative Spoliation Sanctions. ECF No. 84 (the "Renewed Motion"). Defendants[1] subsequently filed a response to the Renewed Motion (ECF No. 91) and

[1] The response was filed on behalf of all Defendants. With that exception, all further references to "Defendants" shall mean and include only Defendant Steve Maritas and Defendant Law Enforcement Officers Security Union ("LEOSU"), but not Defendant Calvin Wells. Defendants contend that Mr. Wells is not alleged to have

Plaintiffs filed a reply in support of the Renewed Motion (ECF No. 92). This Report and Recommendation addresses the Renewed Motion.

## II. Background

### a. The Order

The Initial Motion sought sanctions under Federal Rule of Civil Procedure 37(e)(1) and 37(e)(2). ECF No. 61, PageID.2321-24. As noted in R&R No. 1, the threshold question for application of Rule 37(e) is whether: (i) ESI that should have been preserved in the anticipation or conduct of litigation (ii) is lost because a party failed to take reasonable steps to preserve it, and (iii) it cannot be restored or replaced through additional discovery. ECF No. 61, PageID.2324.[2] As to factors (i) and (ii), R&R No. 1 concluded that Defendants failed to preserve (deleted) ESI that would have been responsive to SPFPA's discovery requests concerning Defendants' allegedly defamatory postings, emails and text messages. ECF No. 61,

posted or deleted any material, and Plaintiffs have made no separate arguments or contentions of conduct by Mr. Wells relevant to their motion for spoliation sanctions. Plaintiffs contend, and I agree, that LEOSU is responsible for the spoliation along with Mr. Maritas because Mr. Maritas was at all relevant times acting as its officer and on its behalf.

[2] R&R No. 1 is adopted herein by reference and will not be repeated except for the purpose of providing perspective for the analysis, findings and recommendations of this R&R.

PageID.2317-18 and 2327-28. As for factor (iii), the Court ordered a computer forensic examination of Defendants' devices to determine whether the lost information could be restored or replaced through additional discovery, and in the event the deleted ESI cannot be restored or replaced, to better inform the Court's judgment on the requisite questions of prejudice and intent. ECF No. 64, PageID.2355; *see also* ECF No. 61, PageID.2330-31.

**b. The Computer Forensic Examination**

**i. The Deleted Items**

Following up on its forensic review of Defendants' devices, Avalon produced an initial report summarizing its review of an external hard drive used by Defendants as a backup for various other devices. Avalon found six videos in a Recycle Bin/Folder. ECF No84-2, PageID2764. Three of the deleted video files appeared to have been related to SPFPA. Two of these files were in a computer directory that Defendants titled "E:\FuckSPFPA\" and a third video was titled "Steve Maritas SPFPA.mp4" ECF No84-2, PageID2765. The report states that all these files were deleted on August 19, 2019, months after SPFPA filed its complaint and five months after the Defendants removed the lawsuit to this Court. ECF No. 1. All the deleted

video files were corrupted, and none were retrievable or viewable. ECF No84-2, PageID2765.[3]

Following an initial review of the remaining devices, a narrowing of the search term parameters, and a responsiveness and privilege review of the ESI on the remaining devices, Avalon issued its final report in December 2023. ECF No. 84-3. In that report, Avalon reconfirmed that the only deleted data recovered from Defendants' external hard drive was the corrupted/unviewable video files and irrelevant other documents previously summarized in Avalon's initial report. Avalon did not find and was unable to recover the articles, blogposts, videos, comments, images, photographs, or other documents disseminated to third parties relating to, concerning, or referencing Plaintiffs which Mr. Maritas permanently deleted. ECF No. 61, PageID.2318. *See also*: ECF No. 84-6, PageID.3095 (Avalon email confirming it recovered no deleted items other than those listed in its initial report). Avalon further confirmed that it was not able to view the email automatic deletion settings from the email accounts it reviewed, and that for the deleted data, "it is

[3] Avalon's initial report also noted that it was able to retrieve 153 other deleted documents form the hard drive. After a privilege and responsiveness review, counsel for Defendants identified all these retrieved documents as irrelevant and nonresponsive.

highly unlikely that further data could be recovered after the searches and processes that were performed." ECF No. 84-3, PageID2770-71.

Based on Avalon's computer forensic examination of Defendants' devices, I find that the ESI admittedly deleted by Plaintiff (described in Section 1(c) of R&R No. 1) while under an obligation to preserve it cannot be restored or replaced through additional discovery. ECF No. 61, PageID.2317-21. Consequently, the Court should proceed to an evaluation of prejudice under Rule 37(e)(1), an evaluation of intent to deprive under Rule 37(e)(2), and the appropriateness of a sanction, if any. *See* Section III (a) and (b), below.

**ii. Other Potentially Responsive ESI**

While conducting its forensic computer examination, Avalon not only determined that it could not recover the *deleted* ESI, but it also found that Defendants' devices contained a significant amount of *non-deleted* ESI responsive to the search terms ordered by the Court ("SPFPA", "Hickey", and "Phillips"). ECF No. 81, PageID.2724. Plaintiffs contend that this *non-deleted* ESI likely contained information that should have been produced in the first place, in response to their original discovery requests. Defendants reviewed the *non-deleted* ESI and, following a privilege and responsiveness review, Defendants produced

approximately 1,460 documents. Plaintiffs now contend they should have done better. Although Plaintiffs have not filed a motion to compel production, their Renewed Motion for sanctions seeks production of *all* non-privileged ESI responsive to the search terms ordered by the Court, and not just those responsive to the discovery requests at issue. ECF No. 84, PageID.2743-48.

Plaintiffs' Initial Motion sought spoliation sanctions for Defendants' deletion of ESI responsive to Plaintiffs' Interrogatory No. 2, which asked Defendants to "identify all articles, blogposts, videos, comments, images, photographs, and any other Documents disseminated by any Defendant to any third party relating to, concerning, or referencing Plaintiffs" (the "Content") and their Document Request No. 2, which asked Defendants to produce "Documents and Correspondence . . . sent by any Defendant to any third-party which reference Plaintiffs in any way" (the "Communications"). ECF No. 61, PageID.2317-18.

In its November 7, 2023 Order adopting the Discovery Master's report and recommendation on search terms and scope of the review, the Court ordered Defendants to "COMPLETE their relevancy and privilege review of the documents yielded by application of the search terms in above; PROVIDE Plaintiffs with a privilege log . . . and PRODUCE all ESI not identified on the privilege log within

thirty-five days." ECF No. 81, PageID.2724. Plaintiffs contend that compelled Defendants to produce all non-privileged ESI responsive to the search terms, period. Defendants contend that means they were to produce, from the ESI responsive to the search terms, all non-privileged documents responsive to the discovery requests at issue (meaning the Content and the Communications). ECF No. 91, PageID.3573.

Regarding the *scope* (as distinguished from the *application*) of the Court's November 7, 2023 Order (ECF No. 81), I agree with Defendants. First, the purpose of the forensic examination was to determine whether ESI responsive to Interrogatory No. 2 and/or Document Request No. 2 could be recovered, not to re-open discovery on anything Plaintiffs had or might have requested during discovery. Second, if the Court had intended to require Defendants to produce *all* ESI responsive to the search terms, there would be no reason for it to require Defendants to first complete a relevancy *and* a privilege review before production rather than simply a privilege review. Finally, requiring production of all ESI with the search terms would be substantially overbroad, and would likely include, among other things, inter-company communications about election and operational strategies that would likely be outside the scope of permissible discovery. The Renewed Motion is a motion for spoliation sanctions and not a motion to compel discovery.

Consequently, this R&R will consider Plaintiffs' request for additional production of ESI in that context.

Regarding the *application* of the Court's November 7, 2023 Order (ECF No. 81), Plaintiffs point out that a number of the documents identified as among *non-deleted* ESI appear to be Content responsive to the discovery requests at issue. Avalon also created an Excel document report with a forensic listing of data on (both folders and files) on Defendant's hard drive. *See* Avalon's initial report, ECF No. 84-2, PageID.2765, ¶3 and ECF 84-5, PageID.3090. In December 2023, Avalon applied the Court-ordered search terms to that report and generated a new Excel report containing only the lines with search term hits. *See* ECF No's 84-4 and 84-5. The narrowed Excel report identifies 5,290 forensic file listings from the hard drive, many of which appear to be empty folders or forensic listings of data from the hard drive, and others of which show file name extensions such as .pdf, .jpg, .png, or .mp4, indicating that they are documents, images and/or videos referring to Plaintiffs. Here are a few examples:

- \SPFPA CORRUPTION OQUINN INVESTIGATION.png [1070]
- \SPFPA-ANTHONY-WEINER-SEX-OFFENDER.jpg [1076]
- \spfpa-threatens-its-members-local-506-pg-2.jpg [1077]
- \spfpa-corruption-devon.jpg [1081]

- \spfpa-corruption-maryland.png [1082]
- \SPFPA-CORRUPTION-LOCAL-238.png [1094]
- \SPFPA-CORRUPTION-HICKEY.jpg [1098]
- \HICKEY-RESIGN.png [1886]
- \NLRB-CHARGES AGAINST-SPFPA-SPECTRUM.pdf [2239]
- \SPFPA-Joe-McCray-Wise-Guy.png [2322]
- \SPFPA-THREATS.png [2329]
- \spfpa-trap-video.mp4 [2332]
- \SPFPA-CORRUPTION-LOGO.png [2334]
- \SPFPA-PATRONUS-CONFLICT-OF-INTEREST-REPORT.mp4 [2337]
- \SPFPA-CORRUPTION.png [2339]
- \SPFPA LIES EXPOSED - LIKE CRIMINALS SPFPA HIDES IN THE SHADOWS OF THE DARK.mp4 [2346]
- \2019-01\SPFPA CORRUPTION VIRGINIA SPFPA.png [3837]
- \2019-01\SPFPA CORRUPTION MGM DETROIT CASINO.png [3844]
- \2019-01\SPFPA-CORRUPTION-SPFPA-UNION(2019_02_26 02_38_27 UTC).jpg [3845]
- \2019-01\SPFPA-CORRUPTION-SPFPA-UNION.jpg [3846]
- \2019-01\SPFPA-CORRUPTION-SPFPA-LOCAL-UNIONCORRUPTION (2019_02_26 02_38_27 UTC).jpg [3851]
- \2019-01\SPFPA-CORRUPTION-HICKEY.jpg [3854]
- \2019-01\SPFPA CORRUPTION CARTOON (2019_02_26 02_38_27 UTC).png [3861]

- \2019-01\SPFPA-CORRUPTION RAT.jpg [3865]
- \2019-01\SPFPA CORRUPTION CARTOON.png [3874]
- \2019-02\MGM Springfield Casino Security Officers Tell The CORRUPT SPFPA UNION To Go Away.jpg [4156]
- \2019-02\spfpa-corruption in hickeys union.jpg [4184]

Avalon's New Excel Report, ECF No. 84-4.

The forensic listings of data on the new Excel report that identify empty folders or other miscellaneous data from the hard drive have been identified, and beyond that would have no evidentiary or other value. But those that reflect documents, images and/or videos (the .pdf, .jpg, .png, or .mp4 files) referring to Plaintiffs appear to reflect the existence of Content that is consistent with the type of materials Defendants admittedly published to third parties in the context of union elections. I find that these documents, images, and videos should have been produced by Defendants during discovery in their original responses to the discovery requests at issue. I also find that these documents are within the scope of the Court's November 7, 2023 Order (ECF No. 81) and, to the extent they continue to exist on Defendant's hard drive, should have been produced in response to that Order.

Defendants contend that, to the extent such Content existed on the hard drive, it was among the ESI they screened and already produced. Plaintiffs contend they

were unable to find this Content in the 1,460 documents produced by Defendants following their privilege and responsiveness review. Defendants offered to have the Discovery Master conduct an *in-camera* inspection to determine whether all the documents, images and/or videos on the new Excel report were included within its production. I find it would be more efficient to simply have Avalon generate copies and have Plaintiffs produce the entire set of documents, images and/or videos identified by the new Excel report. Again, this is relevant and responsive Content, and not Communications which could be privileged. To the extent it has already been produced, there will be no harm in producing another copy. To the extent it has not already been produced, it should have. And to the extent a privilege claim could apply, the documents should already be identified on Plaintiffs' privilege log and can be withheld by Avalon.

Consequently, I recommend that the Court enter an order compelling Defendants to produce copies of all non-privileged documents, images and/or videos (the .pdf, .jpg, .png, or .mp4 files) identified on the new Excel report (ECF No's 84-4) to Plaintiffs within one week.

## III. Rule 37Analysis

### a. Rule 37(e)(1)

Based on the findings set forth in Section II.b.i. above and in R&R No.1, Rule 37(e)(1) provides that the Court, upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice. Under Rule 37(e)(1), the Court should next proceed to an evaluation of whether the moving party experienced prejudice resulting from such a non-remediable loss. "Prejudice" can be "properly understood as a party's ability to obtain the proofs necessary for its case . . . which is another way of saying the loss of ESI could negatively impact a party's ability to make its case, or prejudice that party because of the loss of information." *Konica Minolta Bus. Sols., U.S.A. Inc. v. Lowery Corp.*, 2016 WL 4537847, *3 (E.D. Mich. Aug. 31, 2016).

Here, there can be no doubt that Plaintiffs have been prejudiced by Defendants' improper deletion of relevant ESI. The Content and the Communications deleted by Defendants are precisely the kind of proofs necessary for Plaintiffs' case and the loss of such ESI will negatively impact Plaintiffs' ability to make their case. Plaintiffs' primary claim in this case is defamation, ECF No. 13, PageID.402-404, and the first two elements to defamation are "a false and

defamatory statement concerning plaintiff" and "an unprivileged publication to a third party." *Daneshvar v. Kipke*, 266 F. Supp. 3d 1031, 1055 (E.D. Mich. 2017). There could be no evidence more relevant to these claims than the Content, which are the internet posts, videos, and related images Plaintiffs contend to be defamatory, and the Communications, their emails and text messages published to third parties. Likewise, Plaintiffs claim tortious interference with a contract or advantageous business relationship or expectancy. ECF No. 13, PageID.405-406. A key element for such a claim is "intentional and improper interference by the defendant, inducing or causing a breach, disruption, or termination of the contract or the business relationship or expectancy." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 779 F. Supp. 2d 671, 680 (E.D. Mich. 2011). The deleted Content and Communications would have been directly relevant to the issue of whether Defendants intentionally and improperly interfered with Plaintiffs' union election efforts.

Defendants again argue that the deleted information should already be in Plaintiffs' possession and, in any event, can be replaced through discovery from third parties. ECF No. 91, PageID.3575-76. But those arguments have already been rejected by R&R No.1 and the Order adopting it. *See* ECF No. 61, PageID.2326 and

ECF No. 64, PageID.2354.[4] Defendants also contend that there is no prejudice because Plaintiffs already have sufficient evidence to present their claims to a jury. ECF No. 91, PageID.3577-78. But that begs the question. The deleted ESI could help make Plaintiffs' case stronger as to liability and could significantly affect the amount of damages in the event they prevail on the merits.

I find that Plaintiffs have been prejudiced by the loss of the deleted Content and Communications.

Upon a finding of prejudice, the district court may employ curative measures, but is not authorized to order measures greater than necessary to cure the prejudice. Rule 37(e)(1) and 2015 Advisory Comm. Notes. Here, it is hard to fathom what curative measures short of an adequately tailored adverse inference would completely cure the prejudice caused by the loss of directly relevant evidence. But curative measures under subdivision Rule 37(e)(1) do not include adverse

[4] Defendants assert that Mr. Maritas routinely included Plaintiffs as recipients of any email and/or text message containing allegedly defamatory content. ECF No. 30, PageID.840. But Defendants' admitted deletions have deprived Plaintiffs of the ability to test that assertion. Even from the materials that have not been deleted, Plaintiffs point out that they found at least one set of 222 nearly identical text messages with allegedly defamatory content which was not copied to Plaintiffs or any member of their executive team. ECF No. 92, PageID.3798-99 and ECF No. 92-5.

inferences, which are permitted under subdivision Rule 37(e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation. 2015 Advisory Comm. Notes. Further, authority to order measures no greater than necessary to cure prejudice does not require the court to adopt measures to cure every possible prejudicial effect. *Id.*

Considering the above, I recommend that the Court adopt the following curative measures pursuant to Rule 37(e)(1):

(a) the Court should enter an order permitting the parties to present evidence and argument to the jury regarding the loss of the information that was likely included in the deleted ESI;[5]

(b) the Court should consider, with input from counsel for the parties, giving the jury instructions to assist in its evaluation of such evidence and/or argument; and

(c) the Court should enter an order compelling Defendants to pay Plaintiffs' costs and attorney fees incurred in pursuing their Initial Motion, the forensic review, and the Renewed Motion.

---

[5] As noted in the Initial R&R, "the content of the lost information is fairly evident. The purpose of Defendants' websites, social media accounts, and YouTube pages was to compete with the rival union, SPFPA, and those are the very same publications which SPFPA claims to be defamatory." ECF No. 61, PageID.2326. Plaintiffs should be permitted to present evidence of the deletions and argue to the jury that the deleted information was unfavorable to Defendants even in the event that the Court were to decide not to give an adverse inference instruction under Rule 37(e)(2).

**b. Rule 37(e)(2)**

Based on the findings set forth in Section II.b.i. above and in R&R No.1, Rule 37(e)(2) authorizes the Court to courts to use more severe measures to address or deter failures to preserve electronically stored information, but only on finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation. R&R No.1 summarized the relevant standards:

> To obtain sanctions under Rule 37(e)(2), the movant need not show prejudice; however, the court needs to find intent to deprive. *See id.* ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice.").
>
> To show intent, the movant must show ESI was lost due to more than negligence or gross negligence. *Id.*; *see also Applebaum v. Target Corp*., 831 F.3d 740, 745 (6th Cir. 2016) ("A showing of negligence or even gross negligence will not do the trick. . . . [Plaintiff] would not have been able to show any degree of fault for Target's alleged destruction of records, because she cannot show that Target destroyed the records—if they even existed in the first place—after it was put on notice of litigation.") This "intent standard is stringent and does not parallel other discovery standards." *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773 (E.D. Mich. 2019) (internal quotation marks and citations omitted). In

> evaluating a party's intent, "[c]ourts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id.* (citing to the 2015 Advisory Comm. Notes).

ECF No. 61, PageID.2323-24.

As noted above, to evaluate intent, courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant. Here, R&R No.1 found that at least some of the deleted ESI was relevant. ECF No. 61, PageID.2326-27. Plaintiffs argue that Defendants' conduct in deleting the ESI demonstrates clearly that Mr. Maritas acted with the intent to deprive Plaintiffs of the information's use in the litigation. First, Defendants' initial response conceded they "had a duty to preserve the information from the outset of the litigation under Fed. R. Civ. P. 37(E). . . ." ECF No. 30, PageID.836. And at the hearing, counsel for Defendants conceded Maritas was aware of his obligation to preserve evidence. ECF No. 61, PageID.2325.

Defendants contend that deletion was not motivated by an intent to deprive Plaintiffs of information to use in this litigation, but instead he was simply following his previous pattern of practice and procedure. ECF No. 30, PageID.835-36. Specifically, Defendants admitted that, even after the lawsuit was filed and served, Maritas "routinely deleted his inbox as a matter of course and practice" (ECF No.

30, PageID.833), and as for videos, blogposts, and the like, Maritas continued following his "long held practice of post, remove, delete and replace." ECF No. 30, PageID.835.

But Defendants' contention that Mr. Maritas routinely deleted Content, such as videos, blogposts, and the like, is belied by the fact there are *non-deleted* documents, images and/or videos (the .pdf, .jpg, .png, or .mp4 files) referring to Plaintiffs that remain on their hard drive. *See* Avalon's New Excel Report, ECF No. 84-4 and Section II.b.2, above. Further, the only evidence of *deleted* video files found by Avalon shows that they were all deleted on the same date, August 19, 2019, months after Defendants were served with the complaint initiating this action (January 1, 2019). And Defendants' contention that Mr. Maritas routinely deleted Communications is likewise belied by the *non-deleted* ESI. Avalon's analysis of the devices and email accounts revealed that there were over 102,000 *non-deleted* documents with hits using the original 46 search terms (ECF No. 84-9), and over 25,000 *non-deleted* documents with hits using the subsequently narrowed set of three search terms. ECF No. 75, PageID.2637.[6] These facts, along with the timing of the

[6] Most of these documents were Communications, such as emails. No doubt, not all these Communications would have been responsive to the two discovery requests at

deletions, suggest that the deletions were selective and limited rather than routine and universal. These facts also suggest the materials were deleted with an intent to deprive Plaintiffs of information to use in this litigation.[7]

I find that Mr. Maritas, individually and as an agent for and on behalf of SPFPA, deleted ESI with the intent to deprive Defendants of the information's use in this litigation. Upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation, the Court has discretion to adopt any

---

issue. Even while conceding there were 25,000 documents matching the search terms, Defendants point out that approximately 15,000 of these documents were communications with the Department of Labor. Nevertheless, the existence of these non-deleted items belies Mr. Maritas' contention that he routinely and regularly deleted emails and other files.

[7] Plaintiffs further contend that Defendants continued to delete emails even after the Court's Order enjoining Defendants from deleting or altering any ESI, which would also support an inference of an intent to deprive Plaintiffs of information to use in this litigation. ECF No. 84, PageID.2744-45. Avalon's final report found there were 97 "Trash/Deleted" emails from Mr. Maritas' leospba email address with date ranges of 10/25/2022 – 10/31/2022. ECF No. 84-3, PageID.2772. Plaintiffs characterize this as a violation of the Court's Order. ECF No. 84, PageID.2745. However, Mr. Maritas contends that he deleted no such emails and this must be an error. Maritas Affidavit, ¶ 5, ECF No. 91-4, PageID.3611. It is possible that these deletions were inadvertently made, for example, by an inadvertent failure to revise automatic deletion or "junk email" settings. Since Avalon was unable to recover this limited set of emails or the email automatic deletion settings, it is difficult to draw any conclusive inference of intent from these deletions. Consequently, I have not drawn any inference from the 97 "Trash/Deleted" emails in making this R&R.

of the measures set forth in Rule 37(e)(2), subsections (A), (B), or (C), to address a failure to preserve ESI.

To find a remedy that best fits the wrong, the Court should consider what inferences can or should be supported by Defendants' intentional deletion of ESI. First, I do not believe Defendants' conduct supports a conclusive inference one way or another on the ultimate question of whether the deleted ESI was in fact defamatory. As noted above, Defendants point out that Mr. Maritas has not shied away from sharing at least some of the allegedly defamatory Content or Communications with Plaintiffs. To be sure, such Content and Communications may not be flattering to Plaintiffs. However, Defendants have always maintained that they are not defamatory, and Mr. Maritas' deletion of the ESI does not necessarily support an inference that he believed it was.

On this point, an order permitting the parties to present evidence and argument to the jury regarding the loss of the information that was likely included in the deleted ESI should suffice. But since Defendants' conduct does not support a conclusive inference one way or another on the ultimate question of whether the deleted ESI was defamatory, I do not believe the appropriate remedy should be entry of a default judgment under Rule 37(e)(2)(C), as requested by Plaintiffs.

Case 2:19-cv-10743-SJM-DRG ECF No. 98, PageID.4370 Filed 06/17/24 Page 22 of 24

Considering Rule 37(e)(2)(A) and (B), the finding of intent to deprive supports an inference that the lost information was unfavorable to the parties that intentionally destroyed it, Defendants. Further, the fact of the deletions supports an inference that the deleted ESI contained *additional* Content and Communications like those alleged in the complaint and identified by Plaintiffs through discovery. Moreover, Plaintiffs contend and Defendants have not disputed that Plaintiffs' pattern of practice was to disseminate the disputed Content to union members (voters) before contested union elections. The discovery requests at issue were intended to fill the gaps in Plaintiffs' information concerning the extent of Plaintiffs' dissemination of the disputed Content. While some of the information gleaned from the relatively few *non-deleted* ESI produced by Defendants after the forensic review may help fill that information gap, Defendants' original discovery responses stated they had no responsive information because it had all been deleted. This context and the fact of the deletions support an inference that Defendants disseminated the identified and/or deleted Content to all union members in contested elections between SPFPA and LEOSU from 2017 (*see* Amended Complaint, ¶ 18, ECF No.13, PageID.402-03) through September 30, 2022, the date of the Court's Order to preserve ESI.

Considering the above, I recommend that the Court adopt the following measures pursuant to Rule 37(e)(2):

(a) the Court should enter an order permitting the parties to present evidence and argument to the jury regarding the loss of the information that was likely included in the deleted ESI;

(b) the Court should consider, with input from counsel for the parties, giving the jury instructions to assist in its evaluation of such evidence and/or argument;

(c) the Court should enter an order instructing the jury that it may presume that the deleted ESI was unfavorable to Defendants;

(d) the Court should enter an order instructing the jury that it may presume the deleted ESI contained *additional* Content and Communications like those alleged in the complaint and identified by Plaintiffs through discovery;

(e) the Court should enter an order instructing the jury that it may presume that Defendants disseminated the identified and/or deleted Content to all union members in contested elections between SPFPA and LEOSU from 2017 through September 30, 2022; and

(f) the Court should enter an order compelling Defendants to pay Plaintiffs' costs and attorney fees incurred in pursuing their Initial Motion, the forensic review, and the Renewed Motion.

## IV. Conclusion

The Discovery Master makes this Report and Recommendations for the reasons set forth above pursuant to the authority provided in the Court's Order Appointing Discovery Master dated June 29, 2022. ECF No. 58, PageID.2310-11.

Pursuant to that Order, unless the court sets a different time, any objection to this Report and Recommendation must be filed no later than fourteen days after a copy is filed on the docket, and responses to any objections must be filed no later than fourteen days after objections are filed on the docket. Failure to timely object to this Report and Recommendation is a permanent waiver of any objection to it such that the report and recommendations are deemed approved, accepted, and ordered by the Court.

Respectfully submitted,

*/s/ Dennis M. Barnes*

Dennis M. Barnes (P39401)
DENNIS M. BARNES, PLLC
8540 Canton Center Road
Canton, Michigan 48187
(248) 736-4828
Dennis@BarnesADR.com

Date: June 17, 2024