# EXHIBIT C

Report and Recommendation of Discovery Master re: Plaintiff's Motion for Default Judgment or Alternative Spoliation Sanctions, dated September 22, 2022, EDMI, Case No. 19-cv-10743

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

INTERNATIONAL UNIONS, SECURITY POLICE AND FIRE PROFESSIONALS OF AMERICA (SPFPA), an International Union, and DAVID L. HICKEY, the International President of the Security Police and Fire Professionals of America,

Plaintiffs,

v.

STEVE MARITAS, an individual, CALVIN WELLS, an individual, and LAW ENFORCEMENT OFFICERS SECURITY UNION, an unincorporated union,

Defendants.

Case No.: 2:19-cv-10743

Hon. Stephanie Dawkins Davis

Magistrate Judge R. Steven Whalen

---

**REPORT AND RECOMMENDATION OF DISCOVERY MASTER RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT OR ALTERNATIVE SPOLIATION SANCTIONS (ECF No. 29)**

This is a defamation and tortious interference case. Plaintiffs are International Unions, Security Police and Fire Professionals of America, an unincorporated international union which represents security, police, and fire professionals, and its International President, David L. Hickey (together, "SPFPA"). Defendants are a rival union, Law Enforcement Officers Security Union ("LEOSU"), and its founder

and CEO, Steve Maritas. SPFPA claims that LEOSU has engaged in a years-long campaign of publishing defamatory statements on the internet regarding SPFPA.

This Report and Recommendation addresses SPFPA's Motion for Default Judgment or Alternative Spoliation Sanctions. ECF No. 29 (the "Motion").

## I. Background

### a. The Lawsuit

SPFPA originally filed this lawsuit in the Oakland County Circuit Court for the State of Michigan on November 15, 2018. SPFPA served the Defendants with its complaint on January 9, 2019. ECF No. 29-15. On March 12, 1019, Defendants removed the lawsuit to this Court. ECF No. 1.

SPFPA's complaint includes claims for defamation (Counts 1 and 2) and tortious interference with a contract or advantageous business relationship or expectancy (Count 3). ECF No. 13, PageID 402-406. The complaint alleges that "Defendants have published numerous scurrilous, untrue, misleading, and Defamatory Statements against SPFPA and Hickey. Generally, these statements falsely characterize Plaintiffs as, or imply that Plaintiffs are, corrupt, criminal, and otherwise unworthy of support." ECF No. 13, PageID.402-404. SPFPA contends that Defendants disseminate these publications through both multiple

internet websites they operate and control and through individual accounts on websites operated and controlled by a third-party. . ..” ECF No. 13, PageID.401-02. SPFPA further contends that “Defendants also disseminate these publications through emails and text messages sent to SPFPA employees, local SPFPA union members, and members of other security officer, police officer, and fire professional unions.” ECF No. 13, PageID.402.

**b. The Motion**

On September 10, 2020, SPFPA filed the Motion, requesting entry of a default judgment and award of attorney fees against Defendants as a spoliation sanction for the destruction of electronically stored information (“ESI”) relevant to this case during this litigation. ECF No. 29, PageID571-72. Alternatively, SPFPA requests lesser sanctions against Defendants, including an adverse inference jury instruction. *Id*. On October 1, 2020, Defendants filed a response in opposition to the Motion (ECF No. 30), and on October 8, 2020, SPFPA filed a reply in support of the Motion (ECF No. 31).

On June 16, 2022, this case was administratively reassigned from District Judge Stephanie Dawkins Davis to District Judge Stephen J. Murphy, III pursuant to Administrative Order 22-AO-036. On June 29, 2022, the Court entered an order

appointing a Discovery Master to supervise, manage, and make recommendations to the Court regarding the disposition and resolution of discovery-related issues, including the Motion. ECF No.58. Upon consultation with counsel, the Discovery Master scheduled a hearing for the earliest mutually convenient date, September 7, 2022. Having carefully considered the Motion, briefs, and arguments of counsel, the Discovery Master has determined that no further argument of counsel is necessary, and hereby issues this Report and the Recommendations set forth below.

**c. Defendants' deletion of ESI**

In discovery, SPFPA requested various documents, including ESI, pertaining to the allegedly defamatory posts and videos themselves as well as communications to third parties regarding the same. In its First Set of Discovery Requests, for example, SPFPA's Interrogatory No. 2 asked the LEOSU Defendants to, "whether they are still publicly available or not, identify all articles, blogposts, videos, comments, images, photographs, and any other Documents disseminated by any Defendant to any third party relating to, concerning, or referencing Plaintiffs" ("Interrogatory No. 2"). ECF 29-3, PageID.615. SPFPA's Document Request No. 2 asked the LEOSU Defendants to produce "Documents and Correspondence, including, but not limited to blogposts, articles, videos, emails, text messages, and

letters, created/written/published/disseminated/sent by any Defendant to any third-party which reference Plaintiffs in any way" ("Document Request No. 2"). ECF 29-3, PageID.617.

After receiving what they viewed to be unsatisfactory responses to these requests, SPFPA's counsel followed up with Defendants' counsel seeking further clarity. In or around December 2019, counsel for SPFPA confirmed in an email that counsel for Defendants informed him:

- Interrogatory No. 2 -- Mr. Maritas advised that other than those still publicly available, he has permanently deleted all articles, blogposts, videos, comments, images, photographs, or other documents disseminated to all third parties relating to, concerning, or referencing Plaintiffs. . . .

- Document Request No. 2 -- Mr. Maritas advised that he routinely deletes his emails and text messages, and, as a result, he does not have any responsive documents. You advised that, because of this routine deletion, there are no responsive text messages in your clients' possession, but that you would conduct an email search, including Defendants' deleted emails. . . .

ECF 29-5, PageID.632-33.

At his deposition, Maritas admitted he deleted ESI that would have been responsive to SPFPA's discovery requests while this litigation has been pending. SPFPA's counsel asked Maritas about one of the videos it claims to be defamatory (ECF No. 29-11), which was still online while this litigation was pending but has since been deleted. ECF No. 29-2, Maritas Dep., p. 81:16-18. Maritas previously

represented that he is and always has been the only person with access to add/delete videos to/from the website where it appeared. ECF No. 29-3, Defs.' Resps. to Pls.' 1st Set of Disc. Reqs., Resp. to Interrog. No. 4, p. 6. Yet, Maritas testified that he had "no idea how many posts or videos about SPFPA [he has] deleted." ECF No. 29-2, Maritas Dep., p. 86:9-12.

Maritas also directly confirmed that he had deleted emails and text messages relevant to this lawsuit:

> Q: So ever since [you worked for SPFPA] through today, every day or so, according to what you just said, you go through and delete emails?
>
> A: Absolutely.
>
> . . .
>
> Q: Okay. So you had many more emails and text messages that would have been responsive to our request for production of documents, but you can't produce them, and the reason you can't produce them is because you have deleted them; is that right?
>
> A: Safe to say, yes.

ECF No. 29-2, Maritas Dep., p. 102:6-9, 13-18.

In Defendants' response to the Motion, they admit that Defendants have deleted ESI during the pendency of this lawsuit, but that "the vast majority of the deletion occurred before the instant litigation was filed" (and thus before their

obligation to preserve ESI was triggered). ECF No. 30, PageID.831-33 and 835-37.[1] Defendants argue that "Plaintiffs have not established that Defendants have deleted any information during this relevant period [from January 10, 2019 to present]." ECF No. 30, PageID.835. But this is belied by Defendants' admission that, even after the lawsuit was filed and served, Maritas "routinely deleted his inbox as a matter of course and practice" (ECF No. 30, PageID.833), and as for videos, blogposts, and the like, Maritas continued following his "long held practice of post, remove, delete and replace." ECF No. 30, PageID.835.

Defendants also argue that their online publications are public, and the parties have been following each other's activities, so (a) SPFPA should be in possession of every ESI communication made by the Defendants, (b) "Plaintiffs cannot point to a single communication made by Defendants that was deleted which is relevant [and] are not already in possession of Plaintiffs," and SPFPA "has offered no evidence that additional ESI even exists." ECF No. 30, PageID.836 and 838. These contentions do not explain how SPFPA could possibly have possessed Defendants' email or text

[1] SPFPA's Motion is directed to Defendants spoliation during this litigation, after they had notice that the ESI was relevant to the pending litigation. ECF No. 29, PageID.583, ECF No. 31, PageID.983. SPFPA served the Defendants with its complaint on January 9, 2019. ECF No. 29-15.

messages to others. And even if true and supported by evidence, they do not refute Defendants' admission that they have been deleting online publications, emails, and text messages during the course of this litigation. They may or may not relate to the questions of whether Defendants' deletion of ESI was prejudicial, or whether it may be excused or call for a lesser remedy than that requested by SPFPA, as discussed in part below.

## II. <u>Analysis</u>

### a. The Legal Standard

SPFPA seeks sanctions under Federal Rule of Civil Procedure 37(e)(1) and 37(e)(2). Rule 37(e) provides that:

> (E) **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;

> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Sanctions under Rule 37(e)(1) are only available if the moving party experienced prejudice because of a non-remediable loss. "Prejudice" can be "properly understood as a party's ability to obtain the proofs necessary for its case. . . . which is another way of saying the loss of ESI could negatively impact a party's ability to make its case, or prejudice that party because of the loss of information." *Konica Minolta Bus. Sols., U.S.A. Inc. v. Lowery Corp.*, 2016 WL 4537847, *3 (E.D. Mich. Aug. 31, 2016). Rule 37(e)(1)

> does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

2015 Advisory Comm. Notes. Upon a finding of prejudice, the district court may employ curative measures, but is not authorized to order measures greater than necessary to cure prejudice. *Id.*

To obtain sanctions under Rule 37(e)(2), the movant need not show prejudice; however, the court needs to find intent to deprive. *See id.* ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice.").

To show intent, the movant must show ESI was lost due to more than negligence or gross negligence. *Id.*; *see also Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) ("A showing of negligence or even gross negligence will not do the trick. . . . [Plaintiff] would not have been able to show any degree of fault for Target's alleged destruction of records, because she cannot show that Target destroyed the records—if they even existed in the first place—after it was put on notice of litigation.")[2] This "intent standard is stringent and does not

[2] Neither the text of Rule 37(e)(2) nor of the 2015 Advisory Committee Notes place the burden of showing intent on the moving party. They discuss only "findings" by the court.

parallel other discovery standards." *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773 (E.D. Mich. 2019) (internal quotation marks and citations omitted). In evaluating a party's intent, "[c]ourts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id.* (citing to the 2015 Advisory Comm. Notes).

**b. Discussion**

The threshold question for application of Rule 37(e) is whether: (i) ESI that should have been preserved in the anticipation or conduct of litigation (ii) is lost because a party failed to take reasonable steps to preserve it, and (iii) it cannot be restored or replaced through additional discovery. Upon a finding that these elements exist, the Court should then proceed to an evaluation of prejudice under Rule 37(e)(1), an evaluation of intent to deprive under Rule 37(e)(2), and the appropriateness of a sanction, if any.

**i. Should Defendants' ESI have been preserved in the conduct of litigation?**

"As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459

(6th Cir. 2008) (internal quotation marks and citations omitted) ("It is the responsibility of the parties to ensure that relevant ESI is preserved, and when that duty is breached, a district court may exercise its authority to impose appropriate discovery sanctions."). Here, Defendants' response concedes they "had a duty to preserve the information from the outset of the litigation under Fed. R. Civ. P. 37(E). . . ." ECF No. 30, PageID.836. And at the hearing, counsel for Defendants conceded Maritas was aware of his obligation to preserve evidence.

Defendants argue that SPFPA "cannot point to a single communication made by the Defendants that was deleted which is relevant to the claims of the Plaintiffs that are not already in possession of Plaintiffs." ECF No. 30, PageID.836. But that begs the question as to whether Defendants had a duty to preserve their ESI. It also concedes that at least some of the deleted ESI (that which was already in the possession of Plaintiffs) was relevant to the claims at issue in this case. Parties are entitled to conduct discovery both to confirm what they already know, and also to find out what they do not. The very purpose of a duty to preserve evidence is to have it available for review and use in the pending litigation. To the extent SPFPA may now find it difficult or impossible to prove precisely what was deleted or its relevance, that is only because Defendants have handicapped their ability to do so

Case 2:19-cv-10743-SDM-RSW ECF No. 61, PageID.2326 Filed 09/22/22 Page 13 of 24

by deleting such evidence. Defendants' argument, if accepted to excuse their deletion of ESI, would reward them for the very same conduct the spoliation rules seek to deter (and indeed, sanction).

Defendants' contention that that SPFPA cannot identify any relevant ESI not already in SPFPA's possession is an argument that SPFPA has not been prejudiced. As noted above, however neither the text of Rule 37(e)(2) nor of the 2015 Advisory Committee Notes place the burden of showing prejudice or intent on the moving party. While determining the content of lost information may be difficult, this is a case where placing the burden of proving relevance and/or prejudice on the party that did not lose the information would be unfair. Notably, Defendants have submitted no argument or proof establishing that none of the ESI they deleted during this lawsuit was relevant to SPFPA's claims or their defenses.

In any event, here the content of the lost information is fairly evident. The purpose of Defendants' websites, social media accounts, and YouTube pages was to compete with the rival union, SPFPA, and those are the very same publications which SPFPA claims to be defamatory. Defendants can hardly claim the deleted ESI is unlikely to contain any relevant evidence. Likewise, it strains credulity to say

none of the emails or text messages Defendants deleted during this litigation were relevant.

More importantly, as noted in § II.c. above, Maritas admitted he deleted ESI that would have been responsive to SPFPA's discovery requests while this litigation has been pending. SPFPA has established that at least one of the videos they claim to be defamatory (ECF No. 29-11), which was still online while this litigation was pending, has since been deleted. ECF No. 29-2, Maritas Dep., p. 81:16-18. That alone is sufficient to establish that Defendants deleted relevant ESI during this lawsuit.

I find that Defendants' should have preserved their ESI in the conduct of this litigation.

**ii. Has Defendants' ESI been lost because they failed to take reasonable steps to preserve it?**

Rule 37(e) "calls only for reasonable steps to preserve [and] is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve." 2015 Advisory Comm. Notes (giving as examples party's lack of control, or information destroyed by events outside of party's control, such as flood or software attack). Here, the record is devoid of any argument or evidence that Defendants took any steps to preserve their ESI during this litigation. I find that

Defendants' ESI has been lost because they failed to take reasonable steps to preserve it.

**iii. Can Defendants' ESI be restored or replaced through additional discovery?**

Rule 37(e) applies only when the lost ESI cannot be restored or replaced, and directs that the initial focus should be on whether the lost information can be restored or replaced, for example, through additional discovery. "Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere. . . . If the information is restored or replaced, no further measures should be taken." 2015 Advisory Committee Notes.

Here, Defendants' counsel advised SPFPA's counsel in an email that Maritas "permanently deleted" the ESI in question (ECF 29-5, PageID.632-33), and Defendants' discovery responses stated that "to the extent an item has been deleted Defendants do not recall and cannot provide the information." ECF 29-6, PageID.639.

In their response to the Motion, however, Defendants contend "unequivocally" say that the ESI can be restored or replaced through additional discovery. ECF No. 30, PageID.836. Of course, they say the burden of the

additional discovery should have been on SPFPA, which "could have subpoenaed, deposed or otherwise contacted any person within the network of organizations and election locations that Defendants identified in its answers to other discovery questions for the additional ESI." ECF No. 30, PageID.837.

SPFPA responds that this would have been futile. "Defendants "identified" 16 entire local unions, over 100 individuals, and "any other person that has visited" LEOSU Defendants' various websites and social media pages. ECF NO. 29-11, PageID 754-757. There was no practicable way for SPFPA to subpoena what amounts to thousands of potential third parties in what would have likely been ultimately deemed a disallowed fishing expedition." ECF No. 31, PageID.988. As to this point, I agree with SPFPA. Even if such a massive and disproportionate effort had been made, it is unlikely to have reliably identified or recovered all or even most of the deleted ESI, if any at all. Defendants offered no proof as to how many YouTube viewers or weblog browsers download and save what they have viewed. I suspect the percentage would not be significant.

There is another way to determine whether the lost information can be restored or replaced through additional discovery which neither side addressed in their briefs. At the September 7, 2022 hearing, I asked counsel for SPFPA whether they had

sought or conducted an expert forensic examination of Defendants' computers, servers, cell phones and/or other electronic devices capable of electronically sending and/or receiving communications and/or storing ESI. SPFPA's counsel answered that they had not done so, in reliance on Defendants' representations that Maritas had "permanently deleted" the ESI in question. In turn, I asked Defendants' counsel the same question. Defendants' counsel likewise indicated that he had not subjected his clients' electronic devices to any expert forensic examination.

As noted above, the Court's initial focus under Rule 37(e) should be on whether the lost information can be restored or replaced, for example, through additional discovery, and if the information is restored or replaced, no further measures should be taken. Given the potentially dispositive nature of the relief requested by SPFPA's motion (default judgment, adverse inference jury instruction, other curative measures, including monetary sanctions), the Court's ruling should be based on the best available evidence. An expert computer forensic examination of Defendant's electronic devices is likely to better inform the Court whether the lost information can be restored or replaced, and an expert computer forensic examiner may well be able to restore or replace the deleted ESI. To the extent an expert forensic examination of Defendants' electronic devices reveals that the deleted ESI

cannot be restored or replaced, an expert analysis of the manner and extent of the deletions of ESI is likely to better inform the Court's judgment on the requisite questions of prejudice and intent, and to determine the necessity and extent of appropriate curative measures, if any.

## III. Discovery Master's Recommendations

The Discovery Master recommends that the Court:

1. Grant SPFPA's request for a determination that Defendants' should have preserved their ESI in the conduct of this lawsuit and that Defendants' ESI has been lost because they failed to take reasonable steps to preserve it;

2. Order Defendants to identify and preserve all computers, servers, cell phones and/or other electronic devices capable of electronically sending, receiving viewing and/or storing communications and/or ESI used by Defendants from January 9, 2019 to date to communicate with others by means of email, text message, telephone, website, weblog, social media, video sharing platforms (such as YouTube) and any similar website or internet based communication platform ("Electronic Devices");

3. Order that Defendants be enjoined from deleting anything from or altering in any way any of their Electronic Devices pending an expert computer forensic examination of Defendants' Electronic Devices;

4. Order an expert computer forensic examination of Defendants' Electronic Devices, on the following terms:

a) Within one week after entry of this Order, counsel for SPFPA and counsel for Defendants will either (a) select a **neutral** electronic discovery vendor (the "Vendor"), responsible to the Court, to search the electronically stored information ("ESI") on Defendant's Electronic Devices using the keyword search terms and parameters to be determined as set forth in ¶ 4.b, below, or (b) if they cannot agree on the selection of an appropriate Vendor, notify the Discovery Master, in which case the Discovery Master will select the Vendor;

b) Within two weeks after entry of this Order, counsel for SPFPA and counsel for Defendants will mutually agree upon a list of keyword search terms and parameters to be used by the Vendor in searching Defendants' Electronic Devices, or (b) if they cannot agree on a list of search terms and parameters, notify the Discovery Master and provide the Discovery Master with their respective proposed search terms and parameters, in which case the Discovery Master will determine a list of search terms and parameters to be provided to the Vendor;

c) Within three weeks after entry of this Order, Defendants shall produce to the Vendor all of Defendant's Electronic Devices for forensic imaging and review, and for all of Defendants' website, weblog, social media, video sharing platforms (such as YouTube) and any similar website or internet based communication platforms, produce to the Vendor all passwords, usernames, and sufficient information, including but not limited to all information requested by the Vendor to access to the administrative accounts for each such account to enable the Vendor to access activity logs, check for archived emails, postings, and the like, checking for eDiscovery tools added on like "vault", reflecting log ins, possible uploads or download activity, and possible deleted activity, and any other information requested by the Vendor so that the Vendor can access any of Defendant's current or historical ESI online.

d) Order the Parties to provide the Vendor with a copy of this Order and the Discovery Master's name and contact information;

e) Order the Parties and Discovery Master to instruct the Vendor that the Vendor shall conduct electronic searches using the keyword search

Case 1:24-cv-07743-JSA Doc 99-4 ECF filed 10/28/25 PageID: 2834 Page 21 of 24

terms and parameters determined in accordance with ¶ 4.b, above (the "Search Terms"), under the direction of the Discovery Master;

f) Order the Vendor to identify ESI that contains one or more Search Terms (the "Search Hits") and make the results available to counsel for Defendants. This will enable Defendants to identify privileged ESI and assert any privilege claims as may be appropriate. If Defendants withhold any ESI on the basis of privilege, they will advise and work with the Vendor to create a privilege log as discussed in Paragraph 4.h below, which, upon completion, will be shared with counsel for SPFPA. Counsel for Defendants will instruct the Vendor to segregate and quarantine the ESI identified on the privilege log so that SPFPA cannot access or review the privileged ESI. Counsel for Defendants will complete their privilege review within 7 days after receiving the Search Hits from the Vendor. Should SPFPA desire to challenge any of Defendants' privilege claims, they shall submit any such challenges to the Discovery Master for review and decision.

g) After the privileged ESI are quarantined, the Vendor will produce to counsel for Defendants copies of images (in .pdf or similar format) of

the emails and/or documents from the ESI containing the remaining Search Hits.

h) The production of the Defendants' ESI does not waive the protections of the attorney-client privilege, the attorney work product doctrine, the mental impressions of trial counsel or any other such doctrine or rule of law. Any responsive Search Hits withheld by Defendants on the basis of the attorney-client privilege, work product doctrine or any other recognized legal protection will be identified on a privilege log. The production of privileged or work-product protected discovery materials, ESI or those materials not included on the privilege log, whether inadvertent or otherwise, is not a waiver of such protections from discovery in this case. Such materials must be returned to Defendants upon request and/or finding them, with all copies to be destroyed by SPFPA.

5. Order the Vendor to provide the Court with a report, making copies of same available to counsel for all parties and the Discovery Master, evaluating whether Defendants' deleted ESI has been or can be restored or replaced, and

explaining, to the extent possible based on the information made available to the Vendor, the timing, manner, extent, and nature of Defendants' deletions of ESI.

6. Order Defendants, as the parties responsible for deleting ESI notwithstanding their duty to preserve it, to compensate the Vendor for all reasonable charges for the Vendor's time, services, and expenses.

7. Denying the balance of SPFPA's Motion *without prejudice*, preserving SPFPA's right to renew or revise a request for the same or other relief based on the results of the Vendor's examination and report, including a reservation of any claim for redistribution of the Discovery Master's costs and fees (which, under the Court's Order Appointing Discovery Master, are to be split evenly, subject to redistribution by the Court).

## IV. Conclusion

The Discovery Master makes this Report and Recommendations for the reasons set forth above pursuant to the authority provided in the Court's Order Appointing Discovery Master dated June 29, 2022. ECF No. 58, PageID.2310-11. Pursuant to that Order, unless the court sets a different time, any objection to this Report and Recommendation must be filed no later than fourteen days after a copy is filed on the docket, and responses to any objections must be filed no later than

fourteen days after objections are filed on the docket. Failure to timely object to this Report and Recommendation is a permanent waiver of any objection to it such that the report and recommendations are deemed approved, accepted, and ordered by the Court.

Respectfully submitted,

*<u>/s/ Dennis M. Barnes</u>*
Dennis M. Barnes (P39401)
DENNIS M. BARNES, PLLC
8540 Canton Center Road
Canton, Michigan 48187
(248) 736-4828
Dennis@BarnesADR.com

Date: September 22, 2022