IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 24-70277-JAD |
| | ) | |
| LAW ENFORCEMENT OFFICERS SECURITY UNION, | ) ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | X | |
| ERIC E. BONONI, Trustee, | ) ) | |
| | ) | Related to ECF No. 92 |
| Movant, | ) ) | |
| -vs- | ) ) | |
| LAW ENFORCEMENT OFFICERS SECURITY UNION, | ) ) ) | |
| Respondent. | ) ) X | |
| ERIC E. BONONI, Trustee, | ) ) | Related to ECF No. 127 |
| Movant, | ) ) ) | |
| -vs- | ) ) | |
| LAW ENFORCEMENT OFFICERS SECURITY UNION AND INTERNATIONAL UNION, SECURITY, POLICE AND FIRE PROFESSIONALS OF AMERICA, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) X | |

**MEMORANDUM OPINION**

**I.**

Bankruptcy courts are often required to decide not what is ideal, but what the law permits and what the estate's circumstances demand. Eric E. Bononi,

Esq., in his capacity as Chapter 7 Trustee (the "Trustee"), seeks authority to sell certain property of the bankruptcy estate consisting of claims and causes of action (including avoidance, recovery, and preservation remedies under chapter 5 of the Bankruptcy Code, together with related state and federal theories)(collectively, the "Causes of Action") free and clear of liens and interests to the International Union, Security, Police and Fire Professionals of America ("SPFPA"). The proposed purchase price is $145,000 plus potential net recoveries.

A group of non-debtor entities and individuals (the "Non-Debtor Parties") filed an objection. See *Objection and Reservation of Rights to Motion to Sell Property Free and Divested of Liens and Encumbrances*, ECF No. 134 (the "Sale Objection").[1] The Non-Debtor Parties are not creditors of the estate and do not hold claims that will be affected by the distribution of estate property.

The question before the Court is whether Congress has authorized a chapter 7 trustee to monetize litigation claims through a sale under 363(b) of the Bankruptcy Code, and, if so, whether the Trustee has demonstrated sound business judgment, fair process, and statutory compliance sufficient to warrant approval. The Court answers both questions in the affirmative.

When a bankruptcy petition is filed, most of the debtor's property becomes property of the bankruptcy estate, and that property includes causes of action.

---

[1] The Non-Debtor Parties include United Federation LEOS-PBA; LEOS-PBA; PROA; NUSPO; UFSPSO; United Federation K9 Handlers; LEOSU-DC; LEOSU-VA; FPSOA; NUNSO; EOSU-CA; SPSOA; PSONU; LEOSPU; United Federation LEOS-PBA Hawaii, Guam, Saipan, and American Samoa; and Jean-Giles Brikener d/b/a Brik Unlimited LLC. See Sale Objection at 1.

2

<u>Artesanias Hacienda Real S.A. DE C.V. v. North Mill Capital, LLC (In re Wilton Armetale, Inc.)</u>, 968 F.3d 273, 280 (3d Cir. 2020)(citations omitted). Congress defined estate property broadly to include: "all legal or equitable interests of the debtor in property as of the commencement of the case." <u>See</u> 11 U.S.C. § 541(a)(1). The statute further provides that property of the estate includes: "[a]ny interest in property that the trustee recovers under section … 550, 553, or 723 of this title[,]" "[a]ny interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title[,]" and "[a]ny interest in property that the estate acquires after the commencement of the case." <u>See</u> §§ 541(a)(3), (4), & (7).

These provisions confirm that avoidance recoveries and preserved transfers are not abstract statutory powers; once recovered or preserved, they become property of the estate for distribution under the Code's priority scheme. <u>See</u> 11 U.S.C. § 551 (providing that avoided transfers are automatically preserved for the benefit of the estate so that recovered value is not captured by junior interests). Congress then imposed on trustees a mandatory duty to "collect and reduce to money the property of the estate for which such trustee serves[.]" 11 U.S.C. § 704(a)(1). To carry out that duty, Congress authorized trustees to "use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1).

Read together, these provisions reflect a coherent statutory design: litigation claims and recoveries are estate property; trustees must convert estate

3

property to value; and section 363 provides a mechanism for liquidation when supported by sound judgment and adequate safeguards.

The Sale Objection filed by the Non-Debtor Parties asserts that the Trustee cannot transfer avoidance powers or auction off his statutory role. See Sale Objection ¶¶ 31-34. The proposed transaction does neither; it transfers specific litigation claims as estate assets while preserving the estate's economic interest in any net recovery and preserving this Court's supervisory authority over their compromise and administration.

Because courts have long permitted trustees to monetize litigation rights when doing so maximizes value for creditors, this Court finds that the Trustee's proposed sale of the Causes of Action is proper and any objections to the same shall be overruled.

## II.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper.

## III.

The Debtor commenced this case by filing a voluntary petition under chapter 7 of the Bankruptcy Code on July 8, 2024. Eric E. Bononi, Esq. was appointed as the Chapter 7 Trustee.

In administering the bankruptcy estate, the Trustee identified the Causes of Action, which include potential avoidance actions, recovery and preservation remedies under chapter 5 of the Bankruptcy Code, and related equitable and

4

common-law theories. The Trustee investigated these claims and participated in mediation efforts with an intent to monetize the estate's interests.

SPFPA offered to purchase the Causes of Action for $145,000 plus net recoveries, subject to higher and better bids and Court approval. The Trustee represents that the offer constitutes the highest and best value reasonably obtainable for the estate and that SPFPA has acted in good faith.

Under the Purchase Agreement,[2] SPFPA is authorized to prosecute the Causes of Action as assignee of the estate. Any net recovery constitutes property of the estate and must be remitted to the Trustee for distribution in accordance with the Bankruptcy Code. SPFPA will bear litigation costs in the first instance and may seek reimbursement or compensation only pursuant to section 503(b) of the Bankruptcy Code. Any compromise or settlement of the Causes of Action requires prior approval by this Court. See Purchase Agreement at § 5.

The Non-Debtor Parties object to the proposed sale. The Non-Debtor Parties are themselves not creditors, do not hold claims against the estate, and will receive no distribution from estate assets. Their objection arises from their status as litigation targets and from their dissatisfaction that the Trustee elected to pursue a transaction that promises greater recovery for the estate than the proposed "Settlement Agreement and Release[,]"[3] which they prefer.

---

[2] The "Purchase Agreement" is attached as Exhibit 1 to the *Motion to Sell Property Free and Divested of Liens and Encumbrances*, ECF No. 127 (the "Sale Motion").

[3] The "Settlement Agreement and Release" (the "Proposed Settlement") is attached as Exhibit A to the *Motion to Approve Settlement*, ECF No. 92.

Bankruptcy standing is limited to aggrieved persons whose pecuniary interests are directly and adversely affected by the order at issue. In re Combustion Eng'g, Inc., 391 F.3d 190, 214 (3d Cir. 2004). This doctrine narrows participation in bankruptcy proceedings to those with a direct financial stake in the outcome and promotes the efficient administration of the estate.

The Non-Debtor Parties do not satisfy that standard. They possess no ownership interest in the Causes of Action and no right to control their disposition. They are not creditors and have no entitlement to share in estate distributions. Their interest is adversarial rather than pecuniary; they seek to extinguish or limit claims asserted against them. A defendant's desire, in and of itself, to avoid liability does not constitute a legally protected interest for purposes of standing to object to the sale of the Causes of Action.

Courts consistently hold that prospective purchasers and unsuccessful bidders lack standing to challenge bankruptcy sales because the statutory scheme governing estate asset disposition protects the estate and its creditors, not disappointed bidders. See, e.g., Davis v. Seidler (In re HST Gathering Co.), 125 B.R. 466, 467–68 (W.D. Tex. 1991). The same principle applies with even greater force where, as here, the objectors are not merely disappointed bidders but defendants seeking to suppress estate causes of action.

Further, the sale does not alter the Non-Debtor Parties' legal rights. The assignment of the Causes of Action does not expand the claims, modify applicable law, or limit any defenses. The Non-Debtor Parties remain free to assert all substantive defenses in any subsequent litigation. The transaction

6

merely changes the identity and resources of the party prosecuting the claims. A preference that claims not be pursued (or not be pursued by a party capable of funding litigation) does not by itself create a pecuniary interest cognizable under existing bankruptcy standing doctrine. Cf. Truck Ins. Exchange v. Kaiser Gypsum Co., 602 U.S. 268 (2024) (recognizing standing where a bankruptcy order directly affected an insurer's contractual rights and financial obligations). Here, by contrast, the proposed sale does not alter the Non-Debtor Parties' legal rights or defenses but merely permits estate claims to be pursued by an assignee.

Permitting litigation targets to object to the disposition of estate causes of action simply because they prefer an early exit from litigation would invert the Trustee's fiduciary duty and undermine the Code's objective of maximizing value for creditors. The Bankruptcy Code empowers the Trustee to evaluate competing proposals and select the course that best serves the estate. Parties whose only stake is minimizing their own liability fall outside the zone of interests that are sufficient to confer standing to object to the sale.

Notwithstanding the absence of standing, the Court afforded the Non-Debtor Parties a full opportunity to submit a higher and better bid for the Causes of Action. They declined to do so and instead urged approval of the Proposed Settlement, which would yield less value to the estate.

Although the Non-Debtor Parties lack standing, the Court has nevertheless reviewed and considered their written objection in fulfilling the Court's independent duty to evaluate the Trustee's proposed disposition of estate

7

property and to ensure that the transaction is fair, reasonable, and in the best interests of the estate. That analysis follows below.

### IV.

Section 363(b)(1) of the Bankruptcy Code supplies the principal statutory mechanism by which a trustee converts estate property into value. It provides that, after notice and a hearing, a trustee may "use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). This authority implements the trustee's fiduciary obligation to marshal and monetize estate assets, consistent with the trustee's role as "the representative of the estate[,]" 11 U.S.C. § 323(a), and the statutory duty to "collect and reduce to money the property of the estate[,]" § 704(a)(1).

Because the disposition of estate property affects creditor recoveries, the Court must ensure that the proposed transaction reflects sound judgment and fair process. In the Third Circuit, approval requires a demonstrated business justification, adequate notice, fair value, and good faith. See In re Shubh Hotels Pittsburgh, LLC, 439 B.R. 637, 639 (Bankr. W.D.Pa. 2010)("sound business purpose" justifying debtor-in-possession's contemplated action required in § 363 context); In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 149-50 (3d Cir. 1986)(authorization of sale pursuant to § 363(b)(1) requires finding of purchaser's good faith). Good faith "speaks to the integrity of [the purchaser's] conduct in the course of the sale proceedings[,]" id. at 147, and the bankruptcy court must not merely rubber stamp the trustee's proposal, but must independently determine that the transaction serves the estate's best interests.

Consumer News & Bus. Channel P'ship v. Fin. News Network Inc. (In re Fin. News Network Inc.), 980 F.2d 165, 169 (2d Cir. 1992)("the bankruptcy court's principal responsibility . . . is to secure for the benefit of creditors the best possible bid").

Where appropriate, section 363 also permits property to be sold "free and clear of any interest" of another entity if one of the statutory conditions is satisfied. 11 U.S.C. § 363(f). This mechanism allows the trustee to convey estate property unencumbered while preserving any valid interests by transferring said interests to the sale proceeds.

**V.**

Litigation claims and avoidance recoveries fall squarely within the Bankruptcy Code's expansive definition of estate property. Section 541(a)(1) includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Sections 541(a)(3) and (4) include interests recovered or preserved through avoidance and preservation provisions, while section 541(a)(7) encompasses property interests the estate acquires postpetition. Avoidance remedies thus function to recover or preserve value for the estate, and once recovered or preserved, that value belongs to the estate for distribution under the Code's priority scheme. See 11 U.S.C. § 551 (providing that avoided transfers are preserved for the benefit of the estate so that recovered value remains available for equitable distribution).

The trustee is charged with converting that value into a recovery for creditors. Section 704(a)(1) requires the trustee to "collect and reduce to money

9

the property of the estate[.]" Section 363(b) supplies the mechanism for doing so by authorizing the trustee to use or sell estate property outside the ordinary course. Nothing in the statutory text excludes litigation claims from the purview of the liquidation tools available to the trustee.

The Non-Debtor Parties characterize avoidance actions as non-transferable "powers." That characterization misconceives their function. Avoidance authority exists to recover or preserve value for the estate; the economic interest lies in the recovery itself, not in the trustee's office. While the trustee alone holds statutory authority to invoke avoidance remedies, the economic value produced by those remedies belongs to the estate. The transaction proposed here monetizes that economic interest while preserving the estate's entitlement to any net recovery.

This conclusion is reinforced by Congress's express recognition that estate value may be realized through creditor initiative under court supervision. Section 503(b)(3)(B) authorizes administrative expense reimbursement for "the actual, necessary expenses ... incurred by ... a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor[.]" 11 U.S.C. § 503(b)(3)(B). By conditioning recovery on prior court approval and requiring that any recovery be "for the benefit of the estate," the statute confirms that the Bankruptcy Code contemplates circumstances in which parties other than the trustee may, with judicial authorization, pursue recovery of estate value while preserving the estate's entitlement to the proceeds. Read in harmony with sections 541, 363, 551, and 704, this provision reflects a

10

coherent statutory design: estate value should not be lost merely because the fiduciary lacks resources to pursue it, and court-supervised creditor participation may be employed to realize that value for equitable distribution under the Code.

The Third Circuit's decision in <u>Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery</u> addressed whether a bankruptcy court may authorize a creditors' committee to prosecute avoidance actions when the fiduciary refuses. 330 F.3d 548 (3d Cir. 2003) (en banc). In answering that question, the court emphasized that avoidance actions are meant to benefit the estate and its creditors and that court-authorized prosecution may be consistent with the Code's structure and purpose. <u>Id</u>. at 568–69. <u>Cybergenics</u> did not address the sale or assignment of such claims; its reasoning instead underscores that estate benefit and judicial supervision are paramount considerations.

The Third Circuit in <u>In re Wilton Armetale, Inc.</u> further clarified the statutory framework governing estate causes of action. In the bankruptcy context, the relevant inquiry is whether a party has statutory authority to pursue a claim belonging to the estate. 968 F.3d at 283. The Bankruptcy Code centralizes control of estate claims in the trustee to ensure orderly administration and equitable distribution. <u>Id</u>. at 283-84 (" . . . the Bankruptcy Code makes a creditor's derivative causes of action property of the estate. From there, the trustee decides how best to manage them for the benefit of all creditors").

11

At the same time, that authority is not immutable. It is true that once a claim becomes estate property, "the Bankruptcy Code gives the trustee, and only the trustee, the statutory authority to pursue it." Id. at 280. But that authority may be relinquished in defined circumstances. If the trustee abandons the claim, the claim reverts to the prior holder. Id. at 284 (citation omitted). Courts may authorize other parties to pursue estate claims for the benefit of the estate under certain circumstances. Cybergenics at 566-67. These mechanisms reflect the Code's structured flexibility: while the trustee remains the estate's fiduciary representative, control over claims may be relinquished when doing so preserves estate value and protects creditor interests.

From a textual standpoint, section 554 authorizes a trustee, after notice and a hearing, to abandon property that is "burdensome to the estate or … of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). One might argue that abandonment in exchange for consideration is inconsistent with this language because property capable of generating value cannot be inconsequential. That reading, however, is unduly narrow. An asset may possess theoretical value yet remain functionally worthless to a chapter 7 estate if the trustee lacks the resources necessary to realize that value. Litigation claims frequently illustrate this reality. A cause of action may have merit, but if the estate cannot fund investigation, prosecution, and collection, the claim may be burdensome in administration and of inconsequential practical benefit unless the trustee can structure a means to extract its value.

12

Nothing in section 554 suggests Congress intended to prohibit trustees from realizing value under such circumstances. To the contrary, when section 554 is read alongside the Code's broader provisions, a coherent statutory design emerges. Section 541 defines estate property in sweeping terms, including recoveries obtained under section 550 and transfers preserved under section 551. Section 363 authorizes the trustee to "use, sell, or lease" estate property outside the ordinary course of business. Section 704 requires the trustee to collect and reduce estate property to money. Read together, these provisions favor maximization of value for creditors rather than formalistic limitations that would compel trustees to abandon potentially valuable claims without recovery.

Bankruptcy courts likewise look to the substance of a transaction rather than its form. See Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Systems Corp.), 432 F.3d 448, 454 (3d Cir. 2006) (bankruptcy courts have "equitable authority to ensure 'that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.' " (citation omitted)). Whether characterized as abandonment, relinquishment, a structured sale, or court-authorized prosecution for the estate's benefit, the essential inquiry is whether the arrangement preserves and realizes value for the estate while protecting the integrity of the distribution scheme set forth in the Bankruptcy Code.

That is precisely what occurs here. The estate lacks the resources to prosecute the claims independently. A creditor is willing to assume the risk and expense of litigation. Any recoveries will be remitted to the Trustee and

13

distributed in accordance with the Bankruptcy Code. The arrangement therefore transforms claims that were, for all practical purposes, burdensome and of inconsequential value or benefit into immediate cash value of $145,000 plus additional potential recovery for all creditors.

This result cannot be ignored. The Bankruptcy Code does not require trustees to abandon value; it empowers them to realize it for the benefit of creditors. The present transaction operates squarely within that statutory framework. The Trustee remains the estate's fiduciary representative, while the Court approves a structure designed to preserve estate value, ensure judicial oversight, and direct any recoveries to the estate for distribution in accordance with the Bankruptcy Code.

### VI.

To be clear, this Court recognizes that the Court of Appeals for the Third Circuit in <u>Cybergenics</u> wrote that "the fraudulent transfer claims, which state law provided to Cybergenics' creditors, were never assets of Cybergenics," and that the avoidance power itself "was likewise not an asset of Cybergenics." 226 F.3d at 245. That language, however, arose in the context of determining whether certain claims had been transferred in an asset sale, not whether avoidance actions constitute property of the estate or may be transferred by a trustee. The Third Circuit later clarified the limited reach of this passage, explaining that ". . . <u>Cybergenics</u> does not hold that trustees cannot transfer causes of action. It leaves that question open because the asset transfer at issue did not reach the creditors' claims." <u>In re Wilton Armetale, Inc.</u>, 968 F.3d at 285. Courts within

14

and outside the Third Circuit have likewise recognized that the statements in Cybergenics concerning avoidance powers were dicta and did not resolve the transferability question. See Claridge Assocs., LLC v. Schepis (In re Pursuit Capital Mgmt., LLC), 595 B.R. 631, 656–57 (Bankr. D. Del. 2018).

The court in Murray Metallurgical Coal Holdings, LLC undertook one of the most comprehensive examinations of whether avoidance actions constitute property of the estate and whether they may be sold or assigned. 623 B.R. 444 (Bankr. S.D. Ohio 2021). Surveying decades of conflicting authority, the court recognized that some early decisions described avoidance powers as non-transferable statutory rights rather than estate property. See, e.g., Robison v. First Fin. Capital Mgmt. Corp. (In re Sweetwater), 55 B.R. 724, 731 (D. Utah 1985)("The avoiding powers are not 'property' but a statutorily created power to recover property"), aff'd in part and rev'd in part, 884 F.2d 1323 (10th Cir. 1989). Yet Murray explained that subsequent jurisprudence has increasingly treated avoidance actions as claims or causes of action that become part of the estate by operation of section 541(a). 623 B.R. at 508–14. While acknowledging the doctrinal divide, the court concluded that avoidance actions are not merely abstract statutory powers; rather, they are interests brought into the estate by operation of sections 541(a)(1), (a)(3), (a)(4), or (a)(7), depending upon the nature and timing of the transfer at issue. Id. at 513.

Again, section 541(a)(1) includes within the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts have consistently held that causes of action constitute

15

such interests. See, e.g., Parker v. Goodman (In re Parker), 499 F.3d 616, 624 (6th Cir. 2007); Bauer v. Commerce Union Bank, Clarksville, Tenn., 859 F.2d 438, 440–41 (6th Cir. 1988). Avoidance claims have repeatedly been described as statutory causes of action. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 53 (1989). Consistent with this understanding, courts have held that fraudulent transfer claims constitute property of the estate under section 541(a)(1). See Morley v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 431 (1st Cir. 2007). To the extent avoidance actions relate to prepetition transfers, they exist at the commencement of the case and fall comfortably within section 541(a)(1).

Sections 541(a)(3) and (a)(4) reinforce this conclusion. Section 541(a)(3) includes "[a]ny interest in property that the trustee recovers under section … 550," while section 541(a)(4) includes interests preserved for the benefit of the estate under section 551. 11 U.S.C. §§ 541(a)(3) & (4). Section 550, in turn, authorizes recovery of avoided transfers "for the benefit of the estate[.]" 11 U.S.C. § 550(a). Although some courts have reasoned that these provisions bring only recovered property into the estate and not the avoidance action itself, see Moyer v. ABN Amro Mortg. Grp., Inc. (In re Feringa), 376 B.R. 614, 624–25 (Bankr. W.D. Mich. 2007), the Supreme Court has described "the right to recover" an avoidable transfer as property of the estate. United States v. Nordic Vill. Inc., 503 U.S. 30, 37 (1992), superseded by statute on other grounds as recognized in United States v. Miller, 604 U.S. 518, 535 (2025). That reasoning supports the conclusion that avoidance rights themselves constitute estate interests.

16

Section 541(a)(7) further confirms the breadth of estate property by including "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Courts have relied on this provision to hold that causes of action arising from the administration of the estate (including avoidance claims arising postpetition) are property of the estate. In re Murray Metallurgical Coal Holdings, LLC, 623 B.R. at 512–13; Smith v. Morris R Greenhaw Oil & Gas, Inc. (In re Greenhaw Energy, Inc.), 359 B.R. 636, 642 (Bankr. S.D. Tex. 2007). This interpretation harmonizes the statutory scheme by ensuring that property interests created through the operation of bankruptcy law become part of the estate they are designed to benefit.

It also bears emphasis that avoidance actions under sections 547 and 548 are creatures of federal bankruptcy law and come into existence only upon the commencement of a case. Outside of bankruptcy, no creditor or debtor possesses the statutory authority to avoid preferential or fraudulent transfers under those provisions. Because the bankruptcy estate itself is created at filing, and the trustee's avoiding authority becomes exercisable only at that moment, it is both logical and textually consistent to regard these avoidance rights as interests acquired by the estate postpetition.

Treating avoidance rights as estate property under section 541(a)(7) is congruent with the Code's structure and ensures that statutory remedies designed to recapture value for creditors are themselves part of the estate whose value they are intended to restore. This reading also aligns with Congress's recognition in section 503(b)(3)(B) that, with court approval, a creditor may

17

recover property transferred by the debtor "for the benefit of the estate[;]" section 503(b)(3)(B) is clearly a provision that presupposes the existence of an estate-owned avoidance right capable of being prosecuted by a party other than the trustee in appropriate circumstances.

Finally, abandonment jurisprudence further supports the conclusion that avoidance actions are property of the estate. Only property of the estate may be abandoned under section 554. See 11 U.S.C. § 554(a). Courts have held that once a trustee abandons a fraudulent transfer action, another party may pursue it, implying that the claim itself was estate property prior to abandonment. See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999); cf. Hatchett v. United States, 330 F.3d 875, 886 (6th Cir. 2003)(while trustee has exclusive right to bring fraudulent conveyance action during bankruptcy case, once the bankruptcy proceedings conclude, a creditor may assert fraudulent conveyance claims). These authorities reinforce that avoidance actions are estate interests, not merely abstract powers.

Taken together, the statutory text, Supreme Court guidance, and modern appellate authority demonstrate that avoidance actions are not mere statutory powers divorced from property concepts. Rather, they are claims or interests that become part of the bankruptcy estate through the operation of section 541(a). To the extent earlier decisions suggested otherwise, those statements either arose in different contexts or have been clarified as non-binding dicta. Although this conclusion may appear redundant in light of this Court's earlier discussion in Part V above, the Court emphasizes it here given the unsettled jurisprudence

and the importance of grounding the analysis in the text, structure, and purposes of the Bankruptcy Code.

## VII.

The record reflects that the Trustee explored settlement of the claims against the Non-Debtor Parties. The proposed compromise would yield only $140,000 in exchange for a blanket release.

A bankruptcy trustee "has the duty to maximize the value of the estate." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352 (1985). Courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal[,]" considering the probability of success; difficulties in collection; complexity of litigation and its expense, inconvenience, and delay; and the paramount interests of creditors. Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

When disposing of estate assets, bankruptcy courts must secure the best outcome for creditors. See e.g., In re Fin. News Network Inc., 980 F.2d at 169. The comparison between the proffered settlement and sale is straightforward. The settlement would yield $140,000 and extinguish all claims. The sale provides $145,000 immediately and the potential for additional recoveries for the estate. The sale thus yields greater immediate value and preserves upside potential. Approval of the settlement would be inconsistent with the Trustee's fiduciary duty to maximize estate value. Under these circumstances, the settlement will not be approved.

## VIII.

The Bankruptcy Code establishes a comprehensive framework for collecting, preserving, and monetizing estate property for the benefit of creditors. Litigation claims and avoidance recoveries fall within that framework. The Trustee has demonstrated that the proposed sale represents a sound exercise of business judgment, preserves estate benefit, and complies with statutory requirements. Accordingly, the Sale Motion will be granted; and approval of the Proposed Settlement will be denied. Orders shall be entered consistent with this Memorandum Opinion.

Dated: February 27, 2026

_____
Hon. Jeffery A. Deller
United States Bankruptcy Judge

Case Administrator to Mail to:

Debtor
Eric E. Bononi, Chapter 7 Trustee
Kirk B. Burkley, Esq., Counsel for the Debtor & the Non-Debtor Parties
J. David Garcia, Esq., Counsel to the SPFPA
Office of the United States Trustee

FILED
2/27/26 11:57 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA