**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 24-70277-JAD |
| | ) | |
| LAW ENFORCEMENT OFFICERS, SECURITY UNION, | ) | Chapter 7 |
| | ) | |
| | ) | Related to ECF No. 160 |
| Debtor. | ) | |
| _____ | ) X | |
| | ) | |
| | ) | |
| UNITED FEDERATION LEOS-PBA, *et al.* | ) | |
| | ) | |
| | ) | |
| Movants, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| LAW ENFORCEMENT OFFICERS, SECURITY UNION AND INTERNATIONAL UNION, SECURITY, POLICE AND FIRE PROFESSIONALS OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) X | |

## MEMORANDUM OPINION

The matter before the Court consists of the *Motion for Stay Pending Appeal Pursuant to Bankruptcy Rule 8007* (the "Motion," ECF No. 160), filed by United Federation LEOS-PBA; LEOS-PBA; PROA; NUSPO; UFSPSO; United Federation K9 Handlers; LEOSU-DC; LEOSU-VA; FPSOA; NUNSO; EOSU-CA; SPSOA; PSONU; LEOSPU; United Federation LEOS-PBA Hawaii, Guam, Saipan, and American Samoa; and Jean-Giles Brikener d/b/a Brik Unlimited LLC (collectively, the "Movants"). The Motion seeks a stay pending appeal of this

1

Court's *Order of Court* (ECF No. 141) approving the Trustee's[1] sale of certain estate causes of action to the International Union, Security, Police and Fire Professionals of America ("SPFPA") and the Court's related *Order* (ECF No. 139) denying the Trustee's previously proposed settlement.

The Motion is met with opposition by the Trustee and SPFPA. See *Trustee's Response to Motion to Stay Pending Appeal Pursuant to Bankruptcy Rule 8007* ("Trustee's Response"), ECF No. 174; *Response of the International Union, Security, Police and Fire Professionals of America (SPFPA) to Movants' Motion For Stay Pending Appeal Pursuant to Bankruptcy Rule 8007* ("SPFPA Response"), ECF No. 176. The Trustee and SPFPA each contend that the Movants have failed to satisfy the standards governing a stay pending appeal, that the Movants lack standing to challenge the sale in the first instance, and that this Court's prior rulings are firmly grounded in the record, the Bankruptcy Code, and controlling precedent.

For the reasons set forth below, the Court finds that the Motion is without merit and shall be denied.

## I.
## JURISDICTION

This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which vests district courts with original and exclusive jurisdiction over all cases under title 11 and original, but not exclusive, jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under

---

[1] Eric E. Bononi, Esq., in his capacity as Chapter 7 Trustee (the "Trustee").

2

title 11. By standing order of reference entered in this District, such jurisdiction has been referred to the bankruptcy judges of this Court pursuant to 28 U.S.C. § 157(a).[2]

The matter presently before the Court constitutes a core proceeding under 28 U.S.C. § 157(b)(2). More specifically, the Motion concerns the administration of the bankruptcy estate, the approval and implementation of a sale of estate property under 11 U.S.C. § 363, and the enforcement of this Court's prior orders, all of which fall within the scope of 28 U.S.C. § 157(b)(2)(A), (N), and (O). As such, this Court has the statutory authority to hear and determine the Motion on a final basis.

## II.
## BACKGROUND

This bankruptcy case was commenced on July 8, 2024, when the Debtor, Law Enforcement Officers Security Union, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Upon the filing of the petition, Eric E. Bononi, Esq. was duly appointed as the Chapter 7 Trustee and charged with administering the estate in accordance with his statutory duties under 11 U.S.C. § 704.

Among the assets identified by the Trustee (and by one of the estate's principal creditors, SPFPA) are certain claims and causes of action, including potential avoidance claims and related theories. These claims constitute property

---

[2]See *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (W.D. Pa. Oct. 16, 1984), available at https://www.pawd.uscourts.gov/sites/pawd/files/general-orders/bankruptcy_standing_order.pdf .

of the estate and represent a potentially significant source of recovery for creditors.

Among those creditors is SPFPA, which has filed a proof of claim in the amount of $2,296,688.20. See Amended Claim No. 3-2.[3] Other creditors include Mr. David L. Hickey, who has filed a claim in the amount of "[a]t least $2,658,337.67" (Claim No. 2-1), and Mr. Joseph McCray, who has filed a claim in an amount of "[a]t least $1,000,000.00" (Claim No. 1-1).

Mr. Hickey and Mr. McCray are affiliates of SPFPA. Each of the claims asserted by SPFPA, Hickey, and McCray arise out of alleged tortious conduct by the Debtor and its president, Mr. Steven Angelo Maritas. A summary of the underlying litigation and resulting judgments is of record and is attached to the *Court Ordered Third Status Report* docketed at ECF No. 145. The pecuniary stake that these creditors hold in the disposition of the estate's causes of action is therefore direct and substantial.

Unlike the Trustee, who necessarily operates within the slim financial constraints typical of a chapter 7 estate, SPFPA has represented that it possesses the necessary resources to investigate and prosecute the estate's claims vigorously. The record further reflects that SPFPA contends that there are at least $1.8 million in potentially avoidable transfers. See *The SPFPA's Objection to the Motion to Approve Settlement* ¶¶ 8-15, 22 & Ex. 14, ECF No. 99.

---

[3] The proofs of claim filed in this case are located on the Claims Register accessible via the Court's CM/ECF system.

4

Following his appointment, the Trustee undertook an investigation into the Debtor's financial affairs, including an examination of prepetition transfers and transactions involving the Debtor and affiliated entities and individuals. That investigation included the retention of a forensic expert and culminated in mediation with the Movants. Notably, however, as acknowledged by the Movants on the record at the January 20, 2026 hearing, SPFPA was not invited to participate in that mediation, notwithstanding SPFPA's status as the estate's largest creditor at that time[4] and its ability to pursue the causes of action in a manner the estate itself could not. See Transcript of Jan. 20, 2026 Hr'g ("Jan. 20 Tr.") 9:17-24, ECF No. 177. The Court observes that, had the objective been a comprehensive economic resolution, the estate's principal creditor (and its affiliates) should have been included in the negotiations. Instead, the record suggests an effort to secure a broad release from a resource-constrained Trustee without the participation of the creditors whose recovery interests were (and are) most directly affected.

The mediation without the participation of SPFPA ultimately resulted in a proposed "settlement" pursuant to which the Movants agreed to pay $140,000 to the estate in exchange for a broad release of claims held by the estate against them (the "Proposed Settlement"). See Motion to Approve Settlement ("9019 Motion") ¶ 9, ECF No. 92. On October 7, 2025, the Trustee filed a motion under

---

[4] SPFPA originally filed a proof of claim on December 31, 2024 in the amount of "[a]t least $3,658,337.67." Claim 3-1 ¶ 7. SPFPA recently amended its claim on March 13, 2026 to $2,296,688.20. Amended Claim 3-2.

Federal Rule of Bankruptcy Procedure 9019 seeking approval of the Proposed Settlement (i.e. the 9019 Motion).

SPFPA timely objected to the 9019 Motion, arguing, among other things, that the Proposed Settlement was economically inadequate and would extinguish potentially valuable causes of action for a sum that failed to reflect their possible value. Stated in other words, the economic disparity between the competing positions became the central issue in the case. SPFPA maintained that investigation had identified approximately (or at least) $1.8 million in potentially avoidable transfers, while the Proposed Settlement would have extinguished all such claims for $140,000. The Court does not determine at this juncture whether SPFPA's valuation will ultimately prove correct.  However, the record made clear that the estate's causes of action against the Movants could not responsibly be treated as trivial or conclusively resolved by a settlement negotiated in the absence of the estate's principal creditor.

The Court conducted a hearing on the 9019 Motion on January 20, 2026. During that hearing, the Trustee indicated that SPFPA had presented a competing proposal, offering to purchase the estate's causes of action for $145,000, which exceeded the Proposed Settlement by $5,000.  Jan. 20 Tr. 3-4.

The emergence of this higher and better offer materially altered the posture of the case. The Trustee advised the Court that he would proceed by way of a sale motion rather than continue to pursue approval of the Proposed Settlement. The Court emphasized that a chapter 7 trustee's duty is to maximize value for creditors and that a pathway yielding greater recovery warranted pursuit. The

Court further noted that, if the matter proceeded as a sale, the process could be structured to allow for an auction with competitive bidding.

Thereafter, on January 23, 2026, the Trustee filed a motion to sell the causes of action to SPFPA pursuant to 11 U.S.C. § 363(b) & (f) (the "Sale Motion," ECF No. 127). The Sale Motion proposed a transaction valued at $145,000 plus remittance to the estate of any net recoveries obtained through prosecution of the causes of action, thereby undisputably guaranteeing a minimum recovery greater than that offered under the Proposed Settlement while at the same time preserving the potential for substantially greater recoveries for the estate. See Sale Motion ¶ 7 & Ex. 1 ¶5.

Notice of the proposed sale and any related auction procedures was served upon all parties on the mailing matrix, and the Trustee duly advertised the sale in accordance with this Court's Local Bankruptcy Rules, including publication on the Court's EASI website and in the Indiana Gazette and Indiana Law Journal. Despite having participated in the earlier mediation process and being fully aware of the competing sale, the Movants did not submit a competing higher bid or otherwise seek to improve upon SPFPA's proposal.

Instead, the Movants filed an objection to the Sale Motion, briefly and generically asserting that SPFPA was not a good faith purchaser and that the proposed sale was otherwise improper. See *Objection and Reservation of Rights to Motion to Sell Property Free and Divested of Liens and Encumbrances* (the "Objection to Sale"), ECF No. 134. The Objection to Sale, however, did not articulate any facts suggesting that the sale process itself was tainted. It

7

contained no allegations of fraud, collusion, duress, improper influence, or any other misconduct on the part of the Trustee or the purchaser that tainted the sale itself. Nor did it assert that the procedures employed by the Trustee chilled bidding or otherwise impaired the fairness of the process.

Rather, the Objection to Sale rested solely on generalized and understated assertions not relevant to the sale process. In this regard, the Movants suggested that SPFPA is a rival labor organization to the Debtor (and certain of the Movants) and raised vague concerns regarding the potential confidentiality of records, and in this regard referenced unspecified obligations under labor law. These assertions were neither supported by citation to any legal authority nor tied to any provision of the Sale Motion or the proposed transaction. As such, the face of the objection failed to provide a cognizable challenge to the integrity of the sale process or to the Trustee's exercise of his business judgment.

These deficiencies in the objection are further informed by the Movants' posture in the case. The Movants are insiders of the Debtor and are among the primary targets of the very causes of action being sold. Their interests are therefore not aligned with maximizing value for the estate, but instead with minimizing or avoiding their own potential exposure. That context appropriately frames the Court's consideration of their objection.

The Court conducted a hearing on the Sale Motion and the 9019 Motion on February 24, 2026. At that hearing, the Trustee confirmed that SPFPA's proposal constituted the highest and best offer available to the estate and that,

8

in his business judgment, the sale transaction was superior to the Proposed Settlement. Transcript of Feb. 24, 2026 Hr'g ("Feb. 24 Tr.") 4:6-24, ECF No. 147.

At the hearing, the Court also inquired into the Movants' status and interests. The Movants acknowledged that they are not creditors of the estate and, therefore, do not possess a pecuniary interest in the outcome of the sale. See Feb. 24 Tr. at 5-6. When asked whether they intended to submit a higher competing bid for the causes of action, they declined to do so. Id. Based on this record, the Court ruled on the record that the Movants lacked standing to object to the Sale Motion and approved the sale. The Court also denied approval of the Proposed Settlement, as the Trustee appropriately declined to pursue it further in light of the higher and better offer presented by SPFPA.

Following the hearing, the Court entered the *Order of Court* approving the sale (the "Sale Order," ECF No. 141) and issued a comprehensive *Memorandum Opinion* (the "Opinion," ECF No. 140). In that Opinion, the Court found, among other things, that the sale was authorized under the Bankruptcy Code, that the Trustee had exercised sound business judgment, that SPFPA qualified as a good faith purchaser; that the consideration was fair, reasonable, and in the best interests of creditors; and that the Movants lacked standing because they were not creditors and held no pecuniary interest in the estate.

In addition, although the Court found that the Movants lacked standing, the Court nevertheless considered the substance of their written objection and determined that it lacked merit. Thus, the Court's ruling did not rest solely on standing.

Thereafter, on March 13, 2026, the Movants filed notices of appeal from the Sale Order and the denial of the 9019 Motion. On March 17, 2026, they filed the instant Motion seeking stay pending appeal. By that time, however, the sale had already closed. As reflected in the Trustee's *Report of Sale* filed at ECF No. 169, the transaction approved by the Court on February 27, 2026 was consummated and the purchase price was received by the estate on March 12, 2026 (which was one day prior to the filing of the appeals).

The Trustee and SPFPA each filed responses opposing the Motion, arguing that the Motion lacks meaningful legal analysis, fails to engage this Court's prior reasoning, and reflects an effort by insider targets of the estate's claims to impede the prosecution of the same. The Court held a hearing on the Motion on April 7, 2026 and the Motion is now ripe for disposition.

### III.
### STANDARD FOR STAY PENDING APPEAL

A stay pending appeal is an extraordinary remedy that is not granted as a matter of right. Rather, it is an exercise of judicial discretion that requires a careful balancing of competing interests. The party seeking a stay bears the burden of establishing that the circumstances justify the disruption of an otherwise operative court order. As the Supreme Court has explained, a stay is an "intrusion into the ordinary processes of administration and judicial review" and is therefore reserved for those cases in which the movant makes a compelling showing. Nken v. Holder, 556 U.S. 418, 427 (2009)(quoting Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)).

In determining whether a stay pending appeal is warranted, courts apply a four-factor test. The movant must demonstrate: (1) a likelihood of success on the merits of the appeal; (2) that the movant will suffer irreparable injury absent a stay; (3) that issuance of the stay will not substantially injure other interested parties; and (4) that the public interest favors the granting of a stay. Hilton v. Braunskill, 481 U.S. 770, 776 (1987). These factors are not rigid prerequisites but interrelated considerations that must be balanced together in light of the specific facts and circumstances of the case.

In the bankruptcy context, the United States Court of Appeals for the Third Circuit explained the application of this test in In re Revel AC, Inc., 802 F.3d 558 (3d Cir. 2015). There, the Third Circuit emphasized that the first two factors (i.e., likelihood of success on the merits and irreparable harm) are the "most critical." Id. at 568. The Court further explained that these two factors function as threshold requirements.  If the movant fails to satisfy either one, the inquiry ordinarily ends, and a stay should be denied without further analysis. Id. at 571.

With respect to the likelihood of success factor, the movant is not required to demonstrate that success on appeal is more likely than not. However, the movant must show that the appeal presents a substantial case on the merits, such that the likelihood of success is "significantly better than negligible but not greater than 50%[.]" Id. at 568-69 & 571. A mere possibility of success or the existence of a non-frivolous argument is insufficient. Rather, the movant must identify legal or factual errors in the underlying decision that are sufficiently serious to warrant appellate intervention.

The irreparable harm factor likewise imposes a demanding standard. The movant must demonstrate that, absent a stay, it will suffer harm that is both likely and irreparable (meaning harm that cannot be adequately remedied by a later award of damages or by reversal on appeal). Id. at 569 & 571. Speculative or contingent harms do not suffice, nor does the ordinary burden of litigation. The harm must be immediate, concrete, and of such a nature that it cannot be undone.

If, and only if, the movant satisfies these two threshold factors, the Court proceeds to consider the remaining factors: the potential harm to other parties and the public interest.[5] These factors require the Court to assess the broader consequences of granting or denying a stay, including the impact on the administration of the bankruptcy estate and the interests of creditors. Id. at 569. In the bankruptcy context, courts are particularly mindful of the need for prompt and efficient administration of estates and the importance of finality in court-approved transactions.

## IV.
## APPLICATION

### A.
### Likelihood of Success on the Merits

The Movants have failed to demonstrate a likelihood of success on the merits of their appeal. Their Motion contains only a threadbare analysis of this

---

[5] The Court concludes in this *Memorandum Opinion* that the Movants failed to meet their burden as to the first two factors (e.g., likelihood of success and irreparable injury). However, for purposes of completeness the Court examined the remaining two factors (e.g., the balance of harms and public interest) and concludes that these factors also militate against granting the Motion.

critical factor and falls well short of the showing required under controlling Third Circuit precedent.

In support of this factor, the Movants devote only a limited portion of their Motion to articulating the grounds upon which they contend the Sale Order should be reversed. Paragraph 51 of the Motion states, in conclusory fashion, that "multiple grounds exist to overturn the Sale Order, including, *but not limited to*, the good faith status of SPFPA as a purchaser of the Debtor's assets." Motion ¶ 51 (italics in the original).[6] Beyond this generalized assertion, however, the Motion identifies only one purported basis for reversal (namely, a challenge to SPFPA's good faith) and does not address any other aspect of the Movants' prior Objection to Sale or this Court's Opinion.

This omission is significant. The Court issued a comprehensive Opinion addressing the Movants' objection and setting forth its reasoning in detail. Yet the Motion does not engage that analysis in any meaningful way. It does not identify specific findings that are clearly erroneous, does not challenge the Court's application of controlling law, and does not articulate how or why the Court's reasoning is incorrect. Instead, it offers only generalized disagreement

---

[6] The Court notes that in paragraph 51 of the Motion, the Movants cite to paragraphs 51 through 68 of their Objection to Sale.  The gist of those allegations is that SPFPA and the litigation targets are rival unions (or affiliates of rival unions), that there are concerns regarding confidentiality, and that there is acrimony and competition for membership between the parties that forms the basis of SPFPA's alleged "motivation" to enter into the sale transaction with the Trustee. While such allegations are an interesting read, none of the allegations concern any conduct of SPFPA during the course of the sale proceeding that could disqualify a good faith finding under the Third Circuit's decision in In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d Cir. 1986)(identifying the type of conduct during the course of sale proceedings that would preclude a finding of good faith for purposes of 11 U.S.C. § 363(m)). Of course, what the Movants conveniently omit from their litany of alleged "motivations" is the fact that the SPFPA is a creditor of this estate, having filed a proof of claim in an amount of nearly $2.3 million dollars, and would like to be paid.

and invites the Court to infer, without guidance, what arguments might exist. The Court declines that invitation. It is not the role of the Court to construct arguments on a party's behalf or to search the record for theories that have not been meaningfully presented. To the extent the Movants intended to rely on arguments not developed in their Motion, those arguments are deemed abandoned for purposes of this analysis.

Even taking the Movants' limited assertions at face value, they do not establish a likelihood of success under the governing standard. The Movants rely on formulations suggesting that a "substantial possibility" of success or the presence of a "serious legal question" is sufficient. Motion ¶¶ 49-50. That is not the law in this Circuit. Under In re Revel AC, Inc., the movant must demonstrate that its likelihood of success is "significantly better than negligible but not greater than 50%[.]" 802 F.3d at 568-69 & 571. This standard requires more than the mere existence of a disputable issue; it requires a meaningful showing that the appeal has materially significant merit. The Movants have not come close to meeting that burden.

The Movants' likelihood of success is independently undermined by their lack of standing. Appellate standing in bankruptcy is limited to "persons aggrieved[,]" which are those whose pecuniary interests are directly and adversely affected by the order at issue. In re Combustion Eng'g, Inc., 391 F.3d 190, 214 (3d Cir. 2004). The Movants do not satisfy this standard. They are not creditors of the estate, do not hold claims against the estate, and are not entitled to any distribution. Their asserted interest arises solely from their status as

14

targets of the causes of action being sold and their desire to avoid or limit potential liability. That interest is adversarial, not pecuniary, and does not confer standing.

This conclusion is reinforced by binding Third Circuit precedent. In Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.), the Court of Appeals made clear that "creditors have standing to appeal, but disappointed prospective purchasers do not." 181 F.3d 527, 531 (3d Cir. 1999).

This Court surmises that the Movants take issue with the Court's characterization of them as "disappointed bidders." But the undisputed record reflects that the Movants affirmatively pursued a settlement with the Trustee that would have resulted in the extinguishment of the estate's claims against them in exchange for payment. As the Third Circuit has recognized, the disposition of estate claims through settlement is, in substance, a sale of estate property subject to the Court's oversight. See Myers v. Martin (In re Martin), 91 F.3d 389, 394–95 (3d Cir. 1996)(settlements "involve the disposition of assets of the estate"); Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999)(trustee's act of agreeing to settle claims constituted a sale of that claim)(citing In re Telesphere Commc'ns, Inc., 179 B.R. 544, 552 n. 7 (Bankr. N.D. Ill. 1994)("There is no difference in the effect on the estate between the sale of a claim (by way of assignment) to a third party and a settlement of the claim with the adverse party.")); see also  Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C.

15

(In re VCR I, L.L.C.), 922 F.3d 323, 327 (5th Cir. 2019)(settlement is in reality a purchase).

What appears to animate from the Movants' position is not any cognizable defect in the sale process, but rather dissatisfaction with the Trustee's decision to pursue a higher and better transaction with SPFPA instead of the Proposed Settlement that would have released the Movants from liability for less value. They appear to suggest, albeit obliquely, that the Trustee's refusal to press forward with that settlement (and his support for the competing sale) somehow constitutes bad faith.

That suggestion is squarely foreclosed by controlling Third Circuit authority. In In re Martin, the Third Circuit Court of Appeals made clear that a chapter 7 trustee is not obligated to champion a settlement that is no longer in the best interest of the estate and, indeed, would risk breaching her fiduciary duties if she did so. The Third Circuit emphasized that a trustee "has a fiduciary relationship with all creditors of the estate" and is charged with the duty to "collect and reduce to money the property of the estate" and to "maximize the value of the estate." 91 F.3d at 394 (citations omitted). The trustee is therefore "bound to be vigilant and attentive in advancing the estate's interests" and must act to "realize from the estate all that is possible for distribution among the creditors." Id. (citations and brackets omitted).

Consistent with those duties, the Third Circuit expressly held that a trustee may decline to advocate in favor of a previously negotiated settlement if changed circumstances demonstrate that the settlement is no longer in the best

interests of the estate. As the Court explained, "we reject the proposition that a trustee is required to champion a motion to approve a stipulation that is no longer in the best interest of the estate." Id. at 394. Far from constituting bad faith, such conduct reflects the trustee's faithful discharge of her statutory obligations. Indeed, the Third Circuit cautioned that to require a trustee to proceed with a value-diminishing settlement would create "a serious question of breach of a fiduciary responsibility to all creditors." Id. at 395.

That is precisely the situation presented here. Faced with a higher and better offer (i.e., one that provided more immediate value and preserved the potential for substantially greater recoveries), the Trustee appropriately informed the Court of the changed circumstances and supported a transaction that maximized value for the estate. That conduct was not only permissible; it was required. The Movants' suggestion that such conduct evidences bad faith turns Martin on its head.

To be sure, the Third Circuit's opinion in O'Brien arguably suggests a narrow pathway under which standing may exist where a disappointed bidder challenges the "intrinsic fairness" of the sale. 181 F.3d at 531. But that pathway is exceedingly limited and, as courts have emphasized, is implicated only where the objector alleges concrete facts suggesting that the sale itself was tainted by fraud, collusion, mistake, or other inequitable conduct that undermined competitive bidding and the estate's ability to realize fair value. See, e.g., Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111

17

F.3d 269, 273–74 (2d Cir. 1997). That limited exception is of no avail here, and the record makes clear why.

At the hearing on the Sale Motion, counsel for the Movants did not assert standing based on any alleged defect in the integrity of the sale process. When directly pressed by the Court on the issue of standing, counsel articulated a wholly different theory—namely, that the Movants were parties to a proposed settlement and were targets of the causes of action being sold:

| | |
|---|---|
| THE COURT: | So if [the Movants are] not Creditors, what's their standing to object to the Sale? |
| MR. BURKLEY: | Well, one, they are the parties that entered into the 9019 that is held in abeyance. |
| THE COURT: | They are welcome to bid. |
| MR. BURKLEY: … | And they are also the targets of these [claims.] |
| THE COURT: | They're welcome to bid. So what's their standing? |
| MR. BURKLEY: | I believe that's what their standing is, Judge. They have a pecuniary interest in this Hearing because they are the targets of this litigation. There's actions that are sought to be assigned against them. And that they are also the parties to another Pleading that is on for today that certainly is impacted by this Sale. |

Feb. 24 Tr. at 5-6.

Notably absent from this exchange, and from the Movants' written Objection to Sale, is any complaint implicating the integrity of the sale process.[7]

---

[7] The Court notes that the Movants' objection suggested that the sale to SPFPA does not benefit the bankruptcy estate because SPFPA, as purchaser, stands to recover if it is successful in prosecuting the assigned causes of action. That contention is misplaced. A fundamental purpose of the Bankruptcy Code is to maximize value for the benefit of creditors. See, e.g., 11 U.S.C. § 704(a)(1). SPFPA is itself a creditor of this estate, as are Messrs. Hickey and McCray, and thus any recovery obtained through the prosecution of these claims redounds to the benefit of the entire creditor body (and to cover administrative expenses such as the Trustee's fees). The Movants' argument improperly assumes that value is diminished simply because a creditor participates in the recovery process, when in fact the transaction ensures both an immediate cash

At no time did the Movants allege lack of notice, lack of opportunity to bid, fraud, collusion, bid chilling, or any inequitable overreaching adversely affecting the sale. Nor did the Movants allege any conduct that could plausibly suggest that the auction process was manipulated or that the estate was deprived of the benefits of a fair and competitive market. Instead, the arguments of counsel and the written objection were silent as to the very categories of misconduct that cases like O'Brien and Colony Hill recognize as potentially sufficient to confer standing to a disappointed bidder.

That silence is not merely a pleading deficiency; it is dispositive. It is well-settled in the Third Circuit that "when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered . . . on appeal." Int'l Fin. Corp. v. Kaiser Grp. Int'l Inc (In re Kaiser Grp. Int'l Inc.), 399 F.3d 558, 565 (3d Cir. 2005). The Movants cannot now attempt to recast their position through generalized invocations of "intrinsic unfairness" untethered to any factual predicate preserved before this Court.

Moreover, even setting waiver or forfeiture aside, the Movants' objection suffers from a more fundamental defect: it is wholly conclusory. As the Supreme Court has made clear, a pleading must contain more than "labels and conclusions" or a "formulaic recitation" of a claim; it must allege sufficient factual

---

payment to the estate and the potential for additional recoveries that would not otherwise be realized given the Trustee's resource constraints. Nor is SPFPA "usurping" estate causes of action for its own unilateral benefit. To the contrary, the Sale Order expressly provides that any such actions shall be brought in this Court, with any proceeds subject to the oversight of the Trustee and the Court in accordance with the Bankruptcy Code. Sale Order at 2. In these circumstances, the transaction is entirely consistent with both the Trustee's duty to maximize value and the core purposes of the bankruptcy process.

matter to state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Bare assertions devoid of factual enhancement (what the Supreme Court in Twombly described as "naked assertion[s]") do not suffice. Twombly at 557. Here, the Movants' passing references to "bad faith" or "unfairness" are precisely the sort of unadorned, conclusory allegations that fail to cross the line from conceivable to plausible. They identify no facts, no actors, no conduct, and no mechanism by which the sale process was allegedly compromised.[8]

To permit such skeletal assertions to suffice would effectively collapse the narrow "intrinsic fairness" exception into the rule itself, allowing any disappointed party to manufacture standing through the incantation of talismanic phrases. The law requires more. Because the Movants neither pleaded nor preserved any plausible challenge to the integrity of the sale process, their attempt to invoke the "intrinsic fairness" exception fails as a matter of law.

Of course, equally telling is the nature of the Movants' grievance in this case. The Court finds it notable that the Movants attempt to characterize as "intrinsically unfair" a process that yielded more value for the bankruptcy estate than the very transaction they themselves negotiated and advanced. The

---

[8] The Trustee expressly represented in the Sale Motion and at the sale hearing that the proposed purchaser, SPFPA, was a good faith purchaser within the meaning of 11 U.S.C. § 363(m). Sale Motion ¶ 9; Feb. 24 Tr. at 4:16-19. No party with standing challenged that representation. The record also reflects that no person or entity (including the Movants who lacked standing) asserted fraud, collusion, or any other impropriety in the sale process. See, e.g., Miomni Sports, Ltd. v. SBC Nev., LLC (In re Miomni Gaming, Ltd.), BAP No. NV-23-1126-BNF, 2024 WL 1911092, at *6–7 (B.A.P. 9th Cir. May 1, 2024) (affirming good faith finding where trustee's representations were unopposed and no evidence of fraud, collusion, or misconduct was presented).

Proposed Settlement would have resolved the estate's claims for $140,000. The sale approved by this Court generated a higher and better offer ($145,000 plus net recoveries), thereby increasing immediate value and preserving substantial upside for creditors. That result is the hallmark of a fair and properly functioning bankruptcy sale process, not evidence of any infirmity. As the Seventh Circuit Court of Appeals has observed, objections by non-bidders or unsuccessful participants premised on alleged defects in an auction process ring hollow where the challenged conduct increases the price realized for the estate and thus benefits creditors rather than harms them. See In re New Energy Corp., 739 F.3d 1077, 1079 (7th Cir. 2014)(a transaction which increases the price realized by the estate would help creditor recovery and "would [be] a reason to confirm the sale rather than set it aside"); see also Stark v. Moran (In re Moran), 566 F.3d 676, 682 (6th Cir. 2009)(frustrated bidder standing not accorded when "none of the relief [the frustrated bidder] requests on appeal could possibly increase any creditor's recovery").

Here, the Movants' position suffers from that same defect described by the court in New Energy. What the Movants label as "unfairness" is, in substance, dissatisfaction that the Trustee and the Court refused to accept a lower-value resolution that would have extinguished claims against the Movants at a discount. The Bankruptcy Code does not countenance such a result sought by the Movants. The absence of any allegations of sale process-related misconduct, coupled with the undisputed fact that the approved transaction represents a

higher and better outcome for the estate, renders the Movants' invocation of "intrinsic fairness" entirely unfounded.

Not to be lost in this discussion is the fact that the Court's prior ruling did not rest solely on the Movants' lack of standing. In its Opinion approving the sale, the Court expressly considered the substance of the Movants' written Objection to Sale and addressed their arguments on the merits. After doing so, the Court concluded that those arguments were without merit, independent of the Movants' standing deficiency. Thus, even if the Movants could overcome the threshold issue of standing, which they cannot, their underlying arguments would not warrant reversal.

The Movants' sole allegation in its Motion, that SPFPA does not qualify as a good faith purchaser, fails both as a matter of law and on the record developed in this case. The governing standard is set forth in binding Third Circuit precedent. In In re Abbotts Dairies of Pennsylvania, Inc., the Court of Appeals held that the requirement of good faith under section 363(m) is directed to the integrity of the sale process, not the subjective motivations of the purchaser. 788 F.2d 143, 147 (3d Cir. 1986).

As the Third Circuit explained: "The requirement that a purchaser act in good faith… speaks to the integrity of his conduct in the course of the sale proceedings." Id. (citations omitted). "Typically, the misconduct that would destroy a purchaser's good faith status… involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id. (citations omitted); see also Schepis v. Burtch (In

re Pursuit Capital Mgmt., LLC), 874 F.3d 124, 135-37 (3d Cir. 2017)(discussing standards for challenging good faith).

These principles are controlling and define the relevant inquiry. The focus is on whether the sale process itself was tainted by misconduct; not on whether the purchaser has strategic or adversarial motivations in acquiring the asset.

Measured against this standard, the Movants' argument is not merely unpersuasive, it is non-existent. Neither their objection to the sale nor their Motion identifies any facts that would support a finding under Abbotts that good faith is lacking. The record, moreover, affirmatively demonstrates that the sale process was conducted with integrity, transparency, and in furtherance of the Trustee's fiduciary duties. Notice was properly given, the sale is arms-length, the sale was advertised, and all parties (including the Movants) were afforded an opportunity to participate in bidding. The Movants, however, declined to make a further bid beyond the Proposed Settlement. A party cannot elect not to participate in a competitive process and then seek to invalidate its outcome.

In sum, this Court did not abuse its discretion in deferring to the Trustee's legitimate business judgment by approving the sale and rejecting the settlement. In re Martin, 91 F.3d at 395 ("under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification")(citing Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 516 (7th Cir. 1991)).

The Court makes an additional observation. A bankruptcy court may approve a section 363 sale even in the absence of a finding of good faith because

the good faith inquiry is relevant to the applicability of section 363(m)'s protections on appeal, not to the underlying authority to approve the sale in the first instance. See In re Primel, 629 B.R. 790, 798-800 & 803 (Bankr. W.D. Pa. 2021) (explaining that any perceived requirement of a good faith finding as a prerequisite to sale approval reflects a misreading of Abbotts Dairies).

The fact remains that the Sale Order is independently supported by the Trustee's sound business judgment. The Trustee elected to pursue a transaction that yielded greater value to the estate than the alternative proposed by the Movants, thereby fulfilling his statutory duty to maximize recoveries for creditors. There is no genuine dispute that SPFPA is unaffiliated with the Trustee (and neither is it affiliated with the Debtor) and acted as an arm's-length purchaser. The sale was conducted following proper notice and with a full and fair opportunity for competitive bidding. Nor is there any dispute that the consideration offered by SPFPA is fair and reasonable. Indeed, it exceeds the amount initially offered by the Movants themselves in the Proposed Settlement. Finally, neither the Movants nor any party with standing has alleged, much less pointed to the existence of any evidence suggesting, the existence of fraud, collusion, or any attempt by SPFPA to obtain a grossly unfair advantage in the sale process. Under these circumstances, even apart from section 363(m), the sale readily satisfies the requirements for approval under section 363(b), and the Movants' focus on good faith is misplaced.

Accordingly, this Court concludes that the Movants' showing on likelihood of success consists merely of conclusory assertions and a fundamental

24

misapprehension of the Trustee's duties under controlling law. Their arguments do not have a "significantly better than negligible" chance at success; they are devoid of merit.

Under <u>Revel AC</u>, the failure of the Movants to demonstrate a likelihood of success on appeal is dispositive. This first, and most critical, factor weighs decisively against the issuance of a stay.

**B.**
**Irreparable Harm**

The Movants likewise fail to demonstrate that they will suffer irreparable harm absent the issuance of a stay. Their argument on this factor centers primarily on the contention that, without a stay, their appeal may be rendered moot under 11 U.S.C. § 363(m), which they characterize as "quintessential" irreparable harm. Motion ¶ 39. While the Court acknowledges the importance of preserving appellate rights, the Movants' argument does not withstand scrutiny when considered in light of the record and governing law.

At the outset, section 363(m) reflects Congress's policy judgment that bankruptcy sales to good faith purchasers should be afforded finality. That policy promotes participation in asset sales and maximizes value for creditors. But the existence of section 363(m) does not automatically entitle a party to a stay. If it did, stays would issue in virtually every case involving a sale of estate property, thereby undermining the finality the statute is designed to protect.

The procedural posture of this case is worth noting. As reflected in the Trustee's *Report of Sale*, the transaction approved by this Court on February 27, 2026, was consummated and the purchase price was received by the estate

before the Movants filed the instant Motion. Thus, at the time the Movants sought relief, the transaction they seek to stay had already closed.

A stay pending appeal is inherently prospective in nature; it is designed to preserve the status quo pending appellate review. The Movants did not seek such relief until after the status quo had changed. Courts sitting in equity do not reward such delay. Where a movant fails to act with diligence to prevent the very circumstance it later invokes as harm, the resulting prejudice does not constitute irreparable injury warranting extraordinary relief.

To the extent section 363(m) may now bear on the scope of appellate relief, that circumstance does not alter this conclusion. The Movants had notice of the Sale Order but did not immediately seek a stay before the time period set forth in Bankruptcy Rule 6004(h) expired.[9] Any limitation on appellate remedies resulting from the consummation of the transaction is therefore a consequence of their own inaction, not a basis for relief. Moreover, section 363(m) is not

---

[9] Federal Rule of Bankruptcy Procedure 6004(h) provides that "[u]nless the court orders otherwise, an order authorizing the . . . sale . . . of property . . . is stayed for 14 days after the order is entered." The Sale Order was entered on February 27, 2026; accordingly, the Bankruptcy Rule 6004(h) stay expired on March 13, 2026. The Movants did not file their Motion for Stay Pending Appeal until March 17, 2026 (after the expiration of the automatic Rule 6004(h) stay). The Court further notes that the Sale Motion contemplated a closing within ten (10) days of entry of the Sale Order, but the Sale Order itself provided that closing "shall occur within thirty (30) days" of its entry. See Sale Motion ¶ 17; Sale Order at 3. The record reflects that the purchaser, SPFPA, remitted the remaining purchase price on March 12, 2026, one day prior to the expiration of the Rule 6004(h) stay. The Court expresses no view as to the legal significance of that timing other than to observe that the purchaser tendered payment before the Bankruptcy Rule 6004(h) stay expired. In any event, the timing of the closing does not alter the Court's analysis. Because the Motion for Stay Pending Appeal was filed after the expiration of the Rule 6004(h) stay, and because the Court concludes (for the reasons explained in this *Memorandum Opinion*) that the Movants have not satisfied the applicable standard for a stay pending appeal, the Motion must be denied regardless of the timing of SPFPA's actual payment of the sales proceeds.

jurisdictional and does not categorically foreclose the availability of appellate relief. MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288 (2023).

Even assuming that the protections of 11 U.S.C. § 363(m) apply to the consummated sale, the Movants' premise that denial of a stay results in "irreparable" injury is misplaced. Courts have long recognized that the relationship between mootness doctrines and the irreparable injury prong has generated substantial discussion. The decision by retired United States Bankruptcy Judge Thomas P. Agresti in In re Countrywide Home Loans, Inc. expressly acknowledges this divide, noting that while a "majority view" holds that the mere "risk of mootness," standing alone, does not constitute irreparable harm, a "significant, minority view" permits consideration of mootness as a potential injury, albeit only after a careful examination of the nature of the underlying rights at stake and the surrounding facts. 387 B.R. 467, 476–77 (Bankr. W.D. Pa. 2008) (discussing Williams v. Republic (In re Cujas), 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007), and ACC Bondholders Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 361 B.R. 337 (S.D.N.Y. 2007)).

What Countrywide makes clear, consistent with Third Circuit guidance, is that stay determinations must reflect individualized considerations relevant to the case at hand. See Republic of the Phil. v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991). Consistent with this approach, there is no per se rule equating the potential for mootness with irreparable injury. Rather, the inquiry remains an equitable, fact-intensive one, requiring courts to assess not only whether appellate rights might be affected, but whether the alleged harm is truly

incapable of remediation. See Countrywide, 387 B.R. at 476–77 (emphasizing that even where mootness is considered, courts must "go one step further" and evaluate the nature of the harm and balance it against competing interests (quoting Cujas, 376 B.R. at 487)).

Viewed through that lens, the "harm" or "injury" identified by the Movants here is not the loss of any substantive right, but the prospect that they will be required to defend against claims pursued by SPFPA. That is not an injury that is "irreparable." As the Supreme Court has made clear, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974); accord Countrywide, 387 B.R. at 474–75 (relying on Bannercraft to reject litigation cost as a basis for irreparable harm). Nor does the possibility that appellate review may proceed after the challenged conduct has occurred render the appeal meaningless, where courts remain capable of fashioning relief. See, e.g., In re Grand Jury Investigation, 445 F.3d 266, 270–73 (3d Cir. 2006) (holding that compliance with a discovery order does not moot an appeal because effective relief, such as return or suppression, remains available); Countrywide, 387 B.R. at 476 (relying on Grand Jury Investigation to reject mootness-based irreparable harm).

Here, the Movants retain all of their substantive defenses to any claims that may be asserted against them and will receive a full and fair opportunity to litigate those defenses in the appropriate forum. Under these circumstances, any asserted injury tied to section 363(m) mootness is not irreparable because it does

not extinguish rights, foreclose defenses, or prevent meaningful appellate or merits review. Instead, it reflects only the ordinary burdens attendant to litigation, which are burdens that courts have consistently held are insufficient to justify the extraordinary remedy of a stay. Ports Am. Gulfport, Inc. v. Johnson, Civil Action No. 22-455, 2022 WL 742440, at *4 (E.D. La. Mar. 11, 2022)(explaining that the expense and inherent risks of litigation, standing alone, fall short of establishing irreparable harm warranting injunctive relief). Accordingly, section 363(m), even if applicable, does not transform routine litigation exposure into irreparable harm.

The Movants also assert that a stay is necessary to prevent SPFPA from obtaining confidential or proprietary information and to ensure compliance with federal labor law. Motion ¶ 56. These arguments are conclusory and unsupported. Neither the Movants' Objection to Sale nor the present Motion articulates a legal basis demonstrating that the Sale Order authorizes unlawful conduct or alters the parties' substantive rights. To the extent future disputes arise regarding confidentiality or discovery, established procedural mechanisms (such as motions for protective orders) are available to address those concerns.

Similarly, to the extent the Movants raise concerns regarding privilege, those concerns are also misplaced. While a trustee may control and, where appropriate, waive the debtor's privileges, Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985), nothing in the Sale Order purports to waive any privileges belonging to third parties. Such privileges, if they exist, remain with their holders and are unaffected by the transaction. The Sale Order

addresses only privileges belonging to the estate and does so in a manner consistent with the Trustee's authority.

In sum, the Movants have not demonstrated that they will suffer irreparable harm absent a stay. Their reliance on section 363(m) is unavailing in light of the timing of their Motion, the nature of the alleged injury, and the continued availability of meaningful relief. Under Revel AC, this failure is independently dispositive.

## C.
### Balance of the Harms

The balance of harms weighs decisively against the issuance of a stay. In assessing this factor, the Court must examine the nature and magnitude of the injury that the Movants will suffer absent a stay and compare it against the harm that would be imposed on the estate and other parties if a stay were granted. Where, as here, the Movants' asserted harms are speculative and remediable, and the countervailing harms are concrete and immediate, this factor strongly favors denial of the requested relief.

As discussed above, the Movants' asserted injury consists primarily of the possibility that their appeal may be adversely affected by the operation of section 363(m), and the prospect that they will be required to defend against claims pursued by SPFPA. Neither of these asserted harms is irreparable. The potential application of section 363(m) reflects a statutory policy favoring finality, not a cognizable injury in and of itself. Likewise, exposure to litigation is a routine consequence of the judicial process and does not constitute a harm that warrants the extraordinary remedy of a stay.

30

By contrast, the harm to the estate from the imposition of a stay is both real and substantial. The Trustee has a statutory duty to administer the estate expeditiously and to maximize value for creditors. Delaying the consummation and implementation of the sale frustrates that duty. It postpones the estate's receipt and use of the $145,000 purchase price (an amount already greater than the Proposed Settlement) and delays the potential realization of additional recoveries that may be obtained through prosecution of the claims.

Delay also carries inherent risks that are particularly acute in the context of litigation in that it erodes the estate's ability to timely assert claims. Congress has imposed a firm limitations period on avoidance actions, providing that such actions must be commenced "(A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee . . . if such appointment or such election occurs before the expiration of the period specified in subparagraph (A)[,]" whichever is later. 11 U.S.C. § 546(a)(1). Here, the bankruptcy case was commenced on July 8, 2024, and the statutory clock is already running. As that deadline approaches, delay materially constrains the SPFPA's ability to continue to investigate, prepare, and timely file avoidance actions to protect the bankruptcy estate. A stay pending appeal would not simply pause the administration of the estate, it would risk compressing the already limited window Congress has provided for commencing such lawsuits.

In this light, the Court cannot ignore the practical effect of the Movants' requested relief. The opposition to the Sale Motion and the Motion for Stay Pending Appeal, if granted, would operate to delay the prosecution of claims that

are subject to a finite statutory limitations period. Whether intended or not, such delay would have the effect of "boxing in" the commencement of the avoidance actions into an increasingly narrow timeframe, thereby diminishing the value of the estate's claims and undermining the Trustee's ability to maximize recoveries for creditors. The Bankruptcy Code does not favor such an outcome, and the Court declines to endorse a course of action that would place the estate at risk of losing valuable claims through the mere passage of time.

The passage of time may also impair the availability and reliability of evidence, including documents and witness testimony. Memories fade, records become more difficult to obtain, and the ability to reconstruct financial transactions diminishes. These risks are not speculative; they are a well-recognized consequence of delay and directly affect the value of the causes of action for purposes of prosecution and collection. A stay would therefore threaten to erode the very asset that the Trustee is obligated to preserve and monetize.

These concerns regarding the loss of evidence are not merely theoretical in this case. The record reflects that SPFPA has asserted (and supported with attached materials) that certain of the Movants have previously been found by the United States District Court for the Eastern District of Michigan to have engaged in spoliation of evidence. See SPFPA Response 16–17 & Ex. 1. While this Court does not rely on that determination as dispositive of any issue presently before it, the allegation, grounded in a prior judicial finding, underscores the concrete risk that further delay may impair the evidentiary record. In such

32

circumstances, the prospect of delay carries heightened concern, as it may compound existing evidentiary deficiencies and further diminish the estate's ability to realize value from its claims. See Abbo-Bradley v. City of Niagara Falls, 293 F.R.D. 401, 409 (W.D.N.Y. 2013)(spoliation of evidence "is sufficient to establish irreparable harm").[10]

The prejudice to SPFPA, as purchaser and one of the estate's principal creditors, is similarly significant. SPFPA has agreed to acquire the causes of action and to undertake the risk and expense of prosecuting them, with the potential for substantial additional recoveries for the estate. A stay would delay SPFPA's ability to proceed, thereby increasing litigation costs and uncertainty while postponing any potential recovery. Given SPFPA's status as a primary creditor, such delay directly impacts a party with a significant economic stake in the outcome of this case.

Moreover, the structure of the approved transaction underscores the asymmetry of harm. The sale guarantees a minimum recovery of $145,000—$5,000 more than the Proposed Settlement—while preserving the possibility of significantly greater recoveries, potentially in excess of $1.8 million. A stay would not merely preserve the status quo; it would delay and potentially diminish this enhanced recovery structure. The Movants, who have no entitlement to any

---

[10] Abbo-Bradley was not a case addressing stay pending appeal under the Federal Rules relevant sub judice. Rather, the case discussed the four-part test for obtaining injunctive relief. This distinction is of no moment. Nken v. Holder, 556 U.S. 418, 434 (2009)(same factors apply when analyzing a stay pending appeal and preliminary injunction "not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined").

distribution from the estate, would benefit from that delay, while the estate and its creditors would bear the cost.

The Movants' own conduct further weighs against a finding that the balance of harms favors a stay. They were afforded a full and fair opportunity to participate in the sale process and to submit a competing bid. They declined to do so. Having elected not to participate in the process designed to maximize value, the Movants cannot now claim that they will be unfairly harmed by its outcome. Any prejudice they face is, in substantial part, the result of their own strategic choices.

In sum, the Movants have not identified any concrete harm that would result from denial of a stay, while the estate and its creditors face real and immediate prejudice from delay. The balance of harms therefore weighs strongly against the issuance of a stay pending appeal.

## D.
## Public Interest

The public interest weighs against the issuance of a stay. In the bankruptcy context, the public interest is closely tied to the efficient administration of bankruptcy estates, the maximization of value for creditors, and the finality of court-approved transactions. Congress has made clear, particularly through section 363(m), that finality in bankruptcy sales is a critical component of the system as it promotes confidence in the process and encourages participation by good faith purchasers.

Granting a stay in these circumstances would undermine those objectives. The Sale Order reflects a process that was open, noticed, and advertised in

34

accordance with this Court's Local Bankruptcy Rules, and that resulted in a higher and better offer for the benefit of the estate. To stay the Sale Order based on speculative concerns and undeveloped arguments would introduce uncertainty into the sale process and disincentivize participation by parties willing to invest resources to acquire and pursue estate assets. That outcome would run counter to the core purposes of the Bankruptcy Code.

The Movants contend that the public interest favors a stay to ensure compliance with federal labor law and to prevent the alleged misuse of confidential information. Motion ¶ 56. As discussed above, these concerns are not supported by any articulated legal basis and do not arise from the terms of the Sale Order itself. The purchaser, like all litigants, remains bound by applicable law, and any disputes regarding discovery or the use of information may be addressed through established procedural mechanisms. The speculative possibility of future legal disputes does not implicate a public interest sufficient to warrant the extraordinary remedy of a stay.

To the contrary, the public interest is affirmatively served by allowing the Sale Order to proceed. The transaction ensures an immediate and enhanced recovery for the estate (in an amount of at least $145,000, which exceeds the Proposed Settlement) and preserves the potential for substantially greater recoveries through prosecution of the claims. It reflects the Trustee's faithful execution of his statutory duties and this Court's oversight of a fair and competitive process. Permitting that process to move forward promotes confidence in the integrity of the bankruptcy system and reinforces the principle

that value-maximizing transactions, once properly approved, should not be lightly disturbed.

Finally, the public interest disfavors permitting non-creditor litigation targets to delay the administration of an estate through the assertion of speculative harms and undeveloped legal theories. The Bankruptcy Code is designed to benefit creditors and to facilitate the orderly resolution of claims; not to provide a tactical mechanism by which defendants may impede the prosecution of estate causes of action. Denying the requested stay in these circumstances is therefore consistent with both the Code's statutory framework and the broader public interest.

**V.**
**CONCLUSION**

The Movants have failed to carry their burden on any of the factors required to obtain a stay pending appeal. They have not demonstrated a likelihood of success on the merits—having offered only undeveloped and conclusory arguments that do not engage controlling law or this Court's prior analysis. They have not established irreparable harm, as their asserted injury reduces to the ordinary burden of defending litigation and, in any event, arises from their own failure to seek timely relief before the sale closed. The balance of harms weighs decisively against a stay, as delay would prejudice the estate and a primary creditor. And the public interest favors finality, the integrity of the sale process, and the efficient administration of bankruptcy estates.

In these circumstances, the extraordinary relief requested is not warranted. The *Motion for Stay Pending Appeal Pursuant to Bankruptcy Rule 8007* shall therefore be DENIED.

An appropriate Order shall be issued.

Dated: April 17, 2026

The Honorable Jeffery A. Deller
United States Bankruptcy Judge

Case Administrator to Mail to:

Debtor
Eric E. Bononi, Chapter 7 Trustee
Kirk B. Burkley, Esq., Counsel to the Debtor and the Movants
J. David Garcia, Esq., Counsel to the SPFPA
Office of the United States Trustee

FILED
4/17/26 1:40 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA